Original - Court
1st Copy- Defendant

2nd Copy - Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>24-004233-CZ<br>Hon.John H. Gillis, Jr. |
|---|---|---|

Court telephone no.: 313-224-5243

| Plaintiff's name(s), address(es), and telephone no(s)<br>OZORMOOR, JOSEPH | v | Defendant's name(s), address(es), and telephone number(s)<br>SHELLPOINT MORTGAGE SERVICING, DBA FOR<br>NEW REZ, LLC |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no<br>JOSEPH OZORMOOR<br>469 LABELLE ROAD<br>GROSSE POINTE FARMS, MI 48236 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐_____ Court, where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>3/20/2024 | Expiration date*<br>6/19/2024 | Court clerk<br>Twyonna Adams |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01 (3/23)**          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

| | | |
|---|---|---|
| JOSEPH OZORMOOR | ) | |
| | ) | |
| Plaintiff Pro Per | ) | |
| v | ) | Case No.:-CZ |
| | ) | |
| SHELLPOINT MORTGAGE SERVICING, A DBA FOR | ) | HON. |
| NEW REZ, LLC; | ) | |
| | ) | |
| U.S. BANK TRUST NATIONAL ASSOCIATION AS | ) | |
| TRUSTEE  FOR BINOM SECURIT IZATION TRUST | ) | |
| 2022 RPL1; | ) | **COMPLAINT** |
| | ) | |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC; | ) | |
| | ) | |
| J.P. MORGAN MORTGAGE ACQUISITION CORP.; | ) | |
| | ) | |
| LOANCARE, LLC A/K/A NEW RESIDENTIAL | ) | |
| MORTGAGE, LLC, A DIVISION OF NEW REZ , LLC; | ) | |
| | ) | |
| NEW REZ, LLC, A DIVISION OF NEW RESIDENTIAL | ) | |
| INVESTMENT CORP; | ) | |
| | ) | |
| NEW RESIDENTIAL INVESTMENT CORP. A/K/A | ) | |
| RITHM CAPITAL CORP. | ) | |
| | ) | |
| Joint and Several Defendants | ) | |
| | ) | |

Joseph Ozormoor, Plaintiff Pro Per
469 LaBelle Road
Grosse Pointe Farms, MI 48236
(313) 924-5319 / (313) 949-2656 (mobile)
jtozormoor@comcast.net

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint.

**PRELIMINARY STATEMENT**

1.     Plaintiff Joseph Ozormoor (Plaintiff) brings this lawsuit pro se to recover compensatory, exemplary, and statutory damages and for injunctive relief against Shellpoint

1

24-004233-CZ FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   3/19/2024 10:59 PM   Twyonna Adams

Mortgage Servicing, U.S. Bank Trust National Association as sole trustee of BINOM Securitization Trust 2022 RPL1, Rushmore Loan Management Services, LLC, J.P. Morgan Mortgage Acquisition Corp, LoanCare, LLC, New Rez, LLC, and New Residential Investment Corp. a.k.a. Rithm Capital Corp. (collectively "Defendants"), jointly and severally, for violations of law and Plaintiff's contractual rights that have caused financial and emotional harm to Plaintiff in the servicing of his home mortgage loan modified under the Home Affordable Modification Program ("HAMP").

2.       This action involves the willful and knowing failure by Defendants to credit to Plaintiff's modified mortgage loan account more than half of the earned $10,000 HAMP pay-for-performance principal-balance-reduction incentives (HAMP incentives) he is entitled to by virtue of his mortgage loan never becoming delinquent after modification, resulting in inaccurate principal balance which prevented Plaintiff from refinancing the modified loan when mortgage rates fell well below the HAMP-fixed rate of 4.75% due to Defendants' failure to provide an accurate estimate of the payoff balance.

3.       Plaintiff brings this action to recover compensatory and exemplary damages for breach of contract and the covenant of good faith and fair dealing against Defendants for non-compliance with the terms of Plaintiff's mortgage loan Modification Agreement.

4.       Plaintiff brings this action also to recover compensatory and statutory damages for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (as amended) and the implementing regulations, 12 C.F.R. § 1024.35, which require mortgage servicers to respond to borrower's communications about errors in his account within 30 days by either correcting the errors in the accounts or explaining why the account information was not in error. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35.

5.       Plaintiff brings this action also to recover compensatory and statutory damages for

2

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. and the Michigan Collections Practices Act ("MCPA"), MCL 445.252, both of which prohibit debt collectors from using any false, deceptive or misleading representations or means in connection with the collection of any debt.

6.     Plaintiff brings this action also to recover compensatory and statutory damages for violations of the Michigan Mortgage Brokers, Lenders and Servicers Licensing Act ("MBLSLA"), MCL § 445.1651 which prohibits fraud, deceit, or material misrepresentation in connection with a mortgage transaction by a broker, lender or servicer.

7.     Plaintiff brings this action also to recover compensatory and exemplary damages for fraudulent misrepresentation and concealment by Defendants of the amount of HAMP incentives to which Plaintiff is entitled and Plaintiff's eligibility to receive the sixth year HAMP incentives, and for conversion of Plaintiff's HAMP incentives to Defendants' use and benefit.

8.     Plaintiff brings this action also to recover compensatory and exemplary damages for unjust enrichment of Defendants at Plaintiff's expense due to HAMP incentives not credited to Plaintiff's loan and extra interest collected and accruing on the loan as a result, and for injunctive relief enjoining Defendants from carrying forward the errors in Plaintiff's loan account.

9.     Proximate damages sustained by Plaintiff as a result of Defendants' willful and knowing conduct described herein include: (i) loss of $5,166.66 in HAMP incentives not applied to reduce the principal balance of Plaintiff's modified mortgage loan resulting in a higher principal balance; (ii) extra interest cost due to the amount of incentives not applied to reduce the principal balance, totaling about $2,068.47 as of the filing date of this action; (iii) prevented reduction in interest cost of the modified loan, estimated at $142,279.26 at maturity, due to Defendants' failure to provide an accurate estimate of the payoff balance to refinance the loan in January 2021 at a rate

3

of 2.5%, compared to the HAMP-fixed rate of 4.75%; and (iv) emotional distress manifested by extreme frustration and anger in being prevented by Defendants from significantly reducing the interest cost of the modified loan through refinancing while rates were much lower than the HAMP-fixed rate of 4.75%, and unsettling anxiety about the errors in the principal balance becoming permanent without remediation and restitution for interest overpayments because of frequent transfers of ownership and servicing of the mortgage that thwarted, frustrated and impeded Plaintiff's efforts to bring action against Defendants to remediate the errors.

## JURISDICTION AND VENUE

10.    The underlying real estate transaction in this action was entered into in the City of Grosse Pointe Farms in Wayne County in the state of Michigan and involves a residential property located in the City of Grosse Pointe Farms in Wayne County in the state of Michigan and the amount in controversy is in excess of $25,000.00.

11.    The Court has subject matter jurisdiction of all the claims, including the RESPA claim, 12 U.S,C. §2614, and the FDCPA claim, 15 U.S.C. § 1692k(d), and personal jurisdiction of Defendants because they conduct business throughout the United States, including the City of Grosse Pointe Farms in Wayne County, Michigan and their voluntary contact with Plaintiff to collect mortgage loan debts in Michigan made it foreseeable that Defendants will be summoned to a Michigan court. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Thus, this Court has jurisdiction to hear this case against Defendants and is the proper venue for the lawsuit.

## PLAINTIFF

12.    Plaintiff Joseph Ozormoor is a citizen of the state of Michigan and a signatory on a promissory note for a loan from GMAC Mortgage, LLC for the purchase of a residential property located at 469 LaBelle Road in Grosse Pointe Farms, Michigan, 48236 (the "Property").

4

13.     Plaintiff is a natural person and consumer as defined in RESPA, § 2602(5), the FDCPA, § 1692a(3); and the Michigan Collections Practices Act, MCL 445.251(d).

## DEFENDANTS

14.     Defendant Shellpoint Mortgage Servicing ("Shellpoint"), a servicing dba of New Rez, LLC a/k/a NewRez, is a nationwide residential mortgage servicer with its business address as P.O. Box 10826, Greenville, SC 29603-0826. Shellpoint has been servicing Plaintiff's HAMP modified mortgage loan since October 25, 2023.

15.     Defendant U.S. Bank Trust National Association (USBTNA) is a Delaware Corporation  with its headquarters in St. Paul, MN. USBTNA is the current holder of Plaintiff's mortgage loan since about October 25, 2022 in its sole capacity as trustee of BINOM Securitization Trust 2022 RPL1 (BINOM), a Delaware statutory loan securitization trust.  At all times relevant to this litigation,  USBTNA retained Shellpoint to service Plaintiff's loan.

16.     Defendant Rushmore Loan Management Services, LLC ("Rushmore") is a nationwide residential mortgage servicer based in Irvine, CA. At all times pertinent in this Complaint, Rushmore was the servicer of Plaintiff's mortgage loan until October 25, 2022.

17.     Defendant J.P. Morgan Mortgage Acquisition Corp (JP Morgan) is a New York corporation in the mortgage banker and loan correspondence business, based in New York, NY 10179. Upon information and belief, J.P. Morgan purchased the legal title to Plaintiff's modified mortgage loan on June 17, 2021. At all times relevant in this Complaint,  J.P. Morgan retained Rushmore to service Plaintiff's mortgage loan from August 2, 2021 until October 25, 2022.

18.     Defendant LoanCare, LLC (LoanCare) a/k/a New Residential Mortgage, LLC, a division of New Rez, LLC (NewRez) with its headquarters in Virginis Beach, VA and serviced Plaintiff's HAMP-modified mortgage loan from June 1. 2019 till August 2, 2021.

5

19.     Defendant New Rez, LLC a/k/a NewRez, dba Shellpoint Mortgage Servicing, is a division of New Residential Investment Corporation (NRIC) and a nationwide mortgage originator and servicer with its headquarters in Fort Washington, PA. Upon information and belief, beginning on June 1, 2019, NewRez acquired the assets of Ditech Financial Services which acquired the assets of Ally Financial f/k/a GMACM, the original owner of Plaintiff's mortgage loan, and thereby became the owner of Plaintiff's HAMP-modified mortgage loan.

20.     Defendant New Residential Investment Corp. (NRIC) is a mortgage investment trust. Upon information and belief, NRIC changed its name to Rithm Capital Corp. (RCC) effective August 2, 2022.

21.     Defendants Shellpoint, LoanCare, NewRez and NRIC a/k/a RCC are affiliated entities and at various times pertinent to this litigation operated as NRIC a/k/a RCC "umbrella enterprise" with regard to the servicing of Plaintiff's HAMP-modified mortgage loan. Thus, an act by any of the entities with regard to Plaintiff's loan constitutes an act by the "umbrella enterprise".

22.     Upon information and belief, at all times relevant in this litigation, Defendants Shellpoint, Rushmore, and LoanCare were acting as agents of the respective holders of Plaintiff's mortgage loan who retained them as servicers of the mortgage loan and were acting within the course and scope of their agency with the full knowledge and consent of the respective principals.

23.     At all times relevant in this litigation, Shellpoint, Rushmore, NewRez and LoanCare transacted business in the State of Michigan by use of the mail as "servicers" of Plaintiff's HAMP-modified "federally related mortgage loan" as those terms are defined in RESPA, 12 U.S.C. §§ 2602(1) & 2605(i)(2), and the MBLSLA, MCL 445.1651a, and as "debt collectors" of the Plaintiff's mortgage "debt" as those terms are defined in the FDCPA, 15 U.S.C. §§ 1692a(5) and (6) and the MCPA, MCL 445.251(b).

6

**BACKGROUND FACTS**

24.     On October 1, 2003, Plaintiff obtained a $250,000 loan from GMAC Mortgage, LLC (GMACM) for the purchase of a residential property in the City of Grosse Pointe Farms in Wayne County, Michigan. The loan was secured by a mortgage on the property.

25.     In June 2009, Plaintiff applied to GMACM for a modification of the mortgage loan under the federal Home Affordable Modification Program (HAMP) governed by the Treasury's Making Homes Affordable Guidelines Supplemental Directive 09-01 (MHA Directive 09-01).

26.     GMACM approved Plaintiff's mortgage for a HAMP modification in January 2010 while the mortgage was current with a principal balance of $218,076.71 and suspended the original monthly mortgage payment of $1478.85, effective February 1, 2019 and instituted a Trial Period Plan (TPP) monthly payment of $1155.07, effective March 1, 2010.

27.     On June 9, 2010, GMACM offered Plaintiff a loan Modification Agreement (the Agreement) that extended the maturity date of the modified loan from November 1, 2033 to June 1, 2050, and increased the unpaid principal balance by $3084,43 from $218,076.71 to $221,161.14. The Agreement does not explain how the TPP monthly payment of $1155.07, slightly less than the original monthly mortgage payment of $1478.85 by only $323.78, resulted in an increase of $3084.43 in the principal balance after four TPP payments.

28.     A "Summary" of the modified mortgage attached to the Agreement guarantees under the heading of "BORROWER INCENTIVES" that:

> "As long as your mortgage does not become 90 days delinquent, we will apply your monthly accrued benefit to your mortgage loan and reduce your principal balance after the first through the fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current."

The amount of the monthly or annual HAMP accrued benefit was not specified in the Summary. Plaintiff and GMACM signed the Agreement to become effective on July 1, 2010, and on the written-in condition that the Agreement is subject to the governing HAMP guidelines and law. (*Exhibit 1: Loan Modification Agreement*).

29.     On February 1, 2013, GMACM sold the right to service Plaintiff's modified mortgage loan to Green Tree Servicing, LLC (Green Treen), which later merged with Ditech Mortgage Corporation, f/k/a Ally Financial f/k/a GMACM, to form Ditech Financial Services, LLC (Ditech), effective August 31, 2015.

## GENERAL ALLEGATIONS

30.     On April 8, 2016, Ditech sent Plaintiff the 2015 year-end history of his HAMP-modified mortgage showing an unpaid principal balance of $169,188.28, greater than the unpaid principal balance of $168,421.47 in the April 2016 mortgage statement issued on March 11, 2016 by the year-to-date three principal payments of $766.71 (*Exhibit 2: 2015 Year-End History of Modified Loan and April 2016 Mortgage Statement*), but not providing any information on HAMP incentives applied to the loan principal. Consequently, Plaintiff requested Ditech for information regarding the HAMP pay-for-performance incentives applied to reduce the principal balance of his modified loan, since the modified loan was never delinquent after the HAMP modification. (*Exhibit 3: Ditech's Acknowledgment of Receipt of HAMP Incentives Inquiry*).

31.     Ditech responded to Plaintiff's inquiry with a letter dated June 9, 2016, (*Exhibit 4: Ditech's June 9, 2016 Response to HAMP Incentives Inquiry*), stating that a review of the modified loan account indicated that HAMP benefits were credited to the account in the amount of $916.67 on the 1st and 4th anniversaries of the TPP execution date and in the amount of $1,000 on the 2nd, 3rd and 5th TPP anniversaries. Ditech also stated that the record indicates that notification of the

8

6th year incentive was sent on June 16 and July 11, 2015 to inform Plaintiff that in order to receive the 6th year incentive, he was required to complete and return a Dodd Frank Certification (DFC) form enclosed with the notification, but that the DFC form was never received and the incentive was not credited to Plaintiff's account.

32.     Plaintiff protested to Ditech customer service office that he had never received communications from his loan servicers regarding the HAMP incentives and that the only condition required in his loan Modification Agreement for eligibility to receive the HAMP incentives is that the modified loan must not become 90 days delinquent. Plaintiff demanded that Ditech honor the terms of his loan Modification Agreement and the HAMP guidelines governing the HAMP incentives.

33.     On May 15, 2019 Ditech notified Plaintiff that the servicing of his HAMP-modified loan was being transferred to LoanCare, LLC, effective June 1, 2019, and that any questions about the account should be directed to LoanCare in Virginia Beach, VA. (*Exhibit 5: May 15, 2019 Notice of Servicing Transfer to LoanCare, LLC*).

34.     On June 28, 2019, soon after the notice of servicing transfer to LoanCare, LLC. New Rez, LLC a/k/a NewRez sent Plaintiff a "Welcome to NewRez" letter (*Exhibit 6: NewRez' June 28, 2019 "Welcome to NewRez" Letter*) that identified NewRez as the lending affiliate of New Residential Mortgage, LLC, the company that owns the right to service Plaintiff's mortgage loan, previously identified by Ditech as LoanCare, LLC. Thus, New Rez, LLC confirmed in its June 28, 2019 letter to Plaintiff that LoanCare, LLC is a/k/a New Residential Mortgage, LLC, a division of New Rez, LLC for purposes of servicing Plaintiff's HAMP-modified mortgage loan.

35.     In December 2020, Plaintiff sought to refinance his HAMP-modified loan at the prevailing historically low mortgage rates to reduce the interest cost of the loan. Accordingly,

9

Plaintiff secured offers for a refinance rate of 2.5% / 2.875% from mortgage lenders (*Exhibit 7: Dec. 2020 to Aug. 2021 Refinance Rate Quotes from Lenders*), which would reduce the interest cost of his loan at the HAMP-fixed rate of 4.75% by at least $142,300 at maturity on June 1, 2050.

36.     Consequently, on December 17, 2020, Plaintiff sent an urgent request by email to NewRez / LoanCare for a determination of the correct principal balance of his mortgage loan needed to refinance the mortgage. NewRez/LoanCare acknowledged receipt of the email and stated that it had forwarded the request to its specialists experienced in resolving Plaintiff's issue. On March 3, 2021, when no further response was received from NewRez/LoanCare, Plaintiff sent a second urgent request by email to NewRez/LoanCare to demand a determination of the correct principal balance of his HAMP-modified loan. (*Exhibit 8: Dec. 2020 and Mar, 2021 Requests to NewRez / LoanCare to Correct Errors in Loan Principal Balance*).

37.     Early on March 5, 2021, Plaintiff received letter dated January 15, 2021 from Elton Spruill of LoanCare's Office of the Customer asserting that Ditech's letter of June 9, 2016 to Plaintiff indicated that previous incentives were applied to Plaintiff's account and that notices of the 6th year incentive were sent to Plaintiff in June and July 2015 with an enclosed DFC form to fill out and return, but that the completed DFC form was not returned. (*Exhibit 9. Jan. 15, 2021 LoanCare's Response to NOE*)

38.     The assertion in Elton Spruill's letter that submission of a completed DFC form is a condition for eligibility to receive the 6th year HAMP incentive prompted Plaintiff to research MHA guidelines on HAMP loan modifications. The research revealed that MHA Directive 09-01 guaranteed HAMP borrowers a fixed annual HAMP incentive of $1,000 from the first through the fifth anniversary of the TPP execution date if the modified loan did not become 90 days delinquent, and that MHA Directive 14-05 increased the incentive to $5,000 for the sixth year, as long as the

modified loan remained current throughout the year. (*Exhibit 10: Excerpts of MHA Directive 09-01 and MHA Directive 14-05*).

39.　　Additionally. Plaintiff discovered in his research of the MHA guidelines that MHA Directive 10-11 issued on September 21, 2010 implemented a DFC requirement as a condition for new HAMP borrowers to receive financial assistance from the MHA programs, but exempted HAMP modifications in existence prior to the implementation of the DFC requirement from the impact of the requirement. (*Exhibit 11: MHA Directive 10-11*).

40.　　Consequently, on March 5, 2021, Plaintiff responded to Elton Spruill's letter dated January 15, 2021 to notify LoanCare that according to MHA Supplemental Directive 10-11 HAMP loan modifications existing prior to the implementation of the DFC requirement on September 21, 2010 are not subject to the DFC requirement and that Plaintiff's Modification Agreement became effective as of July 1, 2010 before the implementation of the DFC requirement and is as such not subject to the DFC requirement.

41.　　On May 27, 2021, Denise Hoggard of LoanCare's Office of the Customer responded to Plaintiff and repeated Elton Spruill's assertion that the predecessor servicer (Ditech) indicated in its letter of June 9, 2016 that earlier incentives were applied to Plaintiff's loan account and that "in order to receive the 6th year incentive, Plaintiff was required to submit a DFC . . . "; and that "due to not receiving the required DFC, the 6th year HAMP incentive was not credited toward Plaintiff's principal balance". *Exhibit 12: May 27, 2021 LoanCare's Response to Second NOE*).

42.　　Shortly thereafter, Plaintiff received notice from J.P. Morgan Mortgage Acquisition Corp (J.P. Morgan) that Plaintiff's mortgage loan has been sold to J.P. Morgan effective June 17, 2021, but that Plaintiff should continue to send the mortgage payments to the current servicer, LoanCare. (*Exhibit 13: July 6, 2021 Notice of Sale of Ownership to JP Morgan*).

43.    About a month later, LoanCare sent Plaintiff notice dated July 15, 2021 stating that the servicing of Plaintiff's HAMP-modified mortgage loan was being transferred to Rushmore Loan Management Services, LLC (Rushmore) effective August 2, 2021. (*Exhibit 14: July 15, 2021 Notice of Servicing Transfer to Rushmore.*

44.    On July 25, 2021, Plaintiff sent notice by certified mail to Rushmore in advance of the proposed transfer of servicing to warn Rushmore that there was an outstanding NOE served on LoanCare concerning errors in the principal balance of Plaintiff's HAMP-modified loan and that Rushmore should discuss the NOE with LoanCare and obtain copies of correspondences exchanged between Plaintiff and LoanCare regarding the NOE.

45.    On August 5, 2021 Rushmore sent Plaintiff a "Welcome" letter to confirm the transfer of the servicing of Plaintiff's mortgage loan to Rushmore effective August 2, 2021 and another letter to acknowledge the receipt of Plaintiff's letter of July 25, 2021 regarding the outstanding NOE served on LoanCare that promised a response to the NOE within 30 days. Rushmore also identified J.P. Morgan as the current owner of Plaintiff's loan. (*Exhibit 15: Aug. 5, 2021 Rushmore's "Welcome" and Confirmation of NOE Letters*).

46.    On September 30, 2021, Rushmore responded to the NOE served on LoanCare on July 25, 2021 and acknowledged that Plaintiff's "loan was approved for the HAMP" and that "the conditions within the modification advised that as long as the modified loan does not become 90 days delinquent, accrued monthly benefits would be applied to reduce the principal balance after each of the first through fifth anniversaries of the month in which the TPP agreement was executed". Rushmore indicated that additional information was needed to complete investigation of Plaintiff's concerns and that they had reached out to the prior servicer to escalate the matter for further review. (*Exhibit 16: Sept. 30, 2021 Rushmore's Response to July 25, 2021 NOE*).

12

47.     After not hearing further from Rushmore since September 30, 2021, Plaintiff sent a renewed NOE to Rushmore on February 21, 2022 to request an investigation and correction of the errors in the principal balance of his mortgage loan due to the failure to credit all of the accrued HAMP incentives to Plaintiff's loan principal balance and to determine the amount of interest overpayments due to the failure to apply the HAMP incentives to reduce the loan principal balance. Plaintiff informed Rushmore in the letter that MHA Directive 10-11 that implemented the DFC requirement for MHA programs on September 21, 2010 exempted from the DFC requirement HAMP mortgage loan modifications in existence prior to the implementation date and that Plaintiff's loan modification was already in existence before September 21, 2010.

48.     On April 11, 2022, Rushmore responded to Plaintiff's NOE of February 21, 2022 and stated that their record shows that a predecessor servicer, Ditech, had addressed Plaintiff's concerns with their response of June 9, 2016 that indicated that HAMP incentives were received and applied towards the principal balance according to the HAMP Agreement, and additionally that a DFC required from Plaintiff was not received by Ditech and, therefore, the sixth year HAMP incentive was not applied to Plaintiff's modified loan Principal balance. (*Exhibit 17: April 11, 2022 Rushmore's Response to Feb. 21, 2022 NOE*).

49.     On April 18, 2022, Plaintiff responded to Rushmore's April 11, 2022 letter and disputed Rushmore's explanation of why the 6th year HAMP incentive was not credited to Plaintiff's loan account. Plaintiff insisted that according to MHA Directive 10-11 the DFC requirement does not apply to Plaintiff's HAMP modification.

50.     On April 28, 2022 Rushmore acknowledged receipt of Plaintiff's April 18, 2022 letter disputing Rushmore's April 11, 2022 response to Plaintiff. Rushmore indicated that Plaintiff's inquiry was under further review. (*Ex. 18: Rushmore's Resp. to April 18, 2022 NOE*).

51.     On May 10, 2022, Rushmore replied further to Plaintiff's April 18, 2022 letter and stated that Plaintiff's letter was duplicative of his NOE of April 11, 2022 and that Rushmore had fully complied with their obligation to respond to Plaintiff's NOE on April 11, 2022 and that Plaintiff should contact his attorney for assistance on filing a lawsuit related to the HAMP modification issues as Rushmore is unable to assist him regarding the matter. (*Exhibit 19: May 10, 2022 Rushmore's 2nd Response to April 18, 2022 NOE*).

52.     On October 12, 2022, Rushmore notified Plaintiff that the servicing of his mortgage loan was being transferred to Shellpoint Mortgage Servicing (Shellpoint), with its business headquarters in Greenville, SC, effective October 25, 2022. (*Exhibit 20: Oct. 4, 2022 Rushmore's Notice of Transfer of Servicing to Shellpoint*).

53.     On October 22, 2022, the Plaintiff sent notice to Shellpoint in advance of the transfer of the servicing of his HAMP-modified mortgage loan to it, to inform it of an outstanding NOE concerning the principal balance of the mortgage loan about to be transferred to Shellpoint from Rushmore and suggested that Shellpoint should ask Rushmore for all the correspondence exchanged with Plaintiff regarding the NOE.

54.     On October 31, 2022, Shellpoint, identifying itself as a division of NewRez, sent Plaintiff a letter from a Dallas, TX office confirming that the owner of Plaintiff's mortgage loan has entrusted Shellpoint to service the loan and that the transfer to Shellpoint from Rushmore Loan Management Services became effective October 25, 2022. (*Exhibit 21: October 31, 2022 Shellpoint's "Welcome to Shellpoint" Letter*).

55.     On November 21, 2022, Plaintiff sent Shellpoint a detailed NOE/QWR pursuant to RESPA, 12 U.S.C. 2605(e), regarding errors in Plaintiff's loan principal balance due to accrued HAMP principal-balance-reduction incentives not credited to Plaintiff's loan account. and

demanded an investigation to determine the correct principal balance of the loan account and the amount of excess interest collected on the loan due to the accrued HAMP incentives not credited to the principal balance, as well as the correct monthly mortgage statement and the correct pay off balance of the loan. Plaintiff also asked for the identity of the current and previous holders of the loan, and the date each holder obtained their ownership of the loan.

56.     On November 22, 2022 Shellpoint's office in Greenville, SC responded to Plaintiff's letter of October 22, 2022 regarding the outstanding NOE/QWR served on the prior servicer and claimed that a review of the correspondence with the prior servicer indicated that the issue had been addressed, and that in order to complete additional research, it would require new information or supporting documentation in dispute of the prior servicer's response. Regarding the 6th year HAMP incentive of $5,000, Shellpoint stated that it received documentation that a prior servicer attempted to reach Plaintiff regarding a DFC form required by HAMP. Shellpoint said it could not guarantee that HAMP will still accept the DFC form and issue the incentive. Shellpoint asked Plaintiff to complete and return a DFC form enclosed in the letter to initiate a request for the incentive on Plaintiff's behalf. (*Exhibit 22: Nov. 22, 2022 Shellpoint's Response to Oct. 25, 2022 NOE*).

57.     On December 8, 2022 Plaintiff replied to Shellpoint's letter of November 22, 2022 with copies of correspondences exchanged with prior servicers of his loan, including Ditech, NewRez/LoanCare, and Rushmore, regarding the HAMP incentives not credited to Plaintiff's mortgage loan. Plaintiff informed Shellpoint that the DFC requirement does not apply to Plaintiff's HAMP modification according to MHA Directive 10-11 which implemented the DFC requirement and exempted HAMP modifications in existence prior to the implementation from its requirement, and that Plaintiff's loan modification was effected on July 1, 2010 prior to the implementation of the DFC requirement on September 21, 2010 and accordingly not subject to the DFC requirement.

58.    On December 14 and 16, 2022, Shellpoint's Livonia, Michigan office sent letters to Plaintiff acknowledging receipt of Plaintiff's unidentified "recent inquiry". The letters identified BINOM Securitization Trust 2022 RPL1 as the current holder of Plaintiff's mortgage loan and indicated they were working to gather the rest of the information requested in Plaintiff's inquiry and would forward the information to as soon as possible. (*Exhibit 23: Dec. 14, 2022 Shellpoint's 2nd Response to Oct. 25, 2022 NOE*).

59.    On December 21, 2022, Shellpoint's Livonia, Michigan office sent another letter to Plaintiff that was addressed to "Dear Executor" and expressed "deepest sympathies for your recent loss", and demanded that in order to process the request on the account serviced by Shellpoint the death certificate should be forwarded to Shellpoint. (*Exhibit 24: Dec. 21, 2022 Letter from Shellpoint's Office in Livonia, MI*).

60.    On December 27, 2022, Shellpoint's Livonia, MI office sent Plaintiff another letter, said to be in response to unidentified "recent inquiry' regarding the account serviced by Shellpoint on behalf of BINOM, and indicated that Shellpoint is "working to gather the requested information and will forward it as soon as possible". (*Exhibit 25: Dec. 27, 2022 Letter from Shellpoint's Office in Livonia, MI*).

61.    On January 3, 2023, Shellpoint's Greenville, SC office sent Plaintiff a letter acknowledging receipt of Plaintiff's correspondences dated November 21 2022 and December 8, 2022. The letter stated that Shellpoint had reviewed documentation indicating that a prior servicer attempted to reach Plaintiff regarding a DFC form required by HAMP. The letter stated that Shellpoint cannot guarantee that HAMP will still accept and issue the 6th year HAMP incentive but that Shellpoint will submit a request on behalf of Plaintiff. Shellpoint asked Plaintiff to complete and return the enclosed DFC form. (*Exhibit 26: Shellpoint's Response to Oct. 25, 2022 NOE*).

62.     On January 11, 2023, Plaintiff responded to the January 3, 2023 letter of Shellpoint from the Greenville, SC office with a renewed NOE/QWR concerning errors in the principal balance of his HAMP-modified mortgage loan. Plaintiff enclosed a copy of Ditech's June 9, 2016 letter showing that some HAMP incentives due on Plaintiff's modified loan were not credited in to Plaintiff's loan principal balance on the first, fourth and sixth anniversaries of the TPP execution date and resulted in errors in the loan principal balance. Plaintiff attached a copy of MHA Directive 10-11 which exempts HAMP loan modifications in existence prior to the implementation of the DFC requirement from the requirement. Plaintiff pointed out to Shellpoint that Plaintiff's HAMP modification took effect on July 1, 2010 prior to the implementation of the DFC on September 21, 2010 and is therefore not subject to the DFC requirement. Plaintiff requested Shellpoint to take immediate action to correct the errors in Plaintiff's loan principal balance and to reimburse the interest overpayments due to the failure to fully credit the earned HAMP incentives to the principal balance. (*Exhibit 27: Jan. 11, 2023 Reply to Shellpoint with Renewed NOE/QWR*).

63.     Shellpoint willfully failed to correct the errors in Plaintiff's mortgage loan and instead sent frivolous letters to Plaintiff demanding "a death certificate in order to  process the request" to correct the errors in Plaintiff's loan balance (*Exhibit 28: Shellpoint's Demands for Death Certificate in Response to NOE*), and in the meantime Shellpoint willfully and knowingly continues to send to Plaintiff through the mail inaccurate monthly mortgage statements and to collect through the mail higher monthly payments on the HAMP-modified loan from Plaintiff than it should.

64.     MHA Directive 09-01 requires that each servicer (and any sub-servicer it uses) must be aware of, and in full compliance with, all federal, state, and local laws including, but not limited to, the RESPA and the FDCPA that apply to any of its practices related to the HAMP. See *Exhibit 10. Pg. 12.*

17

65. MHA Directive 09-01 provides that when a transfer of servicing includes mortgages modified under the HAMP, the transferor servicer must advise the transferee servicer that loans modified under the HAMP are part of the portfolio being transferred and must confirm that the transferee servicer is aware of the special requirements for these loans, and agrees to assume the additional responsibilities associated with servicing them. See *Exhibit 10, pg. 21.*

66. Plaintiff tried numerous times unsuccessfully to resolve the errors in the accounting of the principal balance of his HAMP-modified loan in good faith reliance on Defendants' professional expertise, contractual obligations under the loan Modification Agreement and statutorily imposed duties under the MHA HAMP guidelines.

67. Defendants willfully and knowingly failed to honor their contractual obligations under the Modification Agreement and their statutory duties under the MHA HAMP guidelines by not applying all earned HAMP incentives to the principal balance of Plaintiff's loan and by misrepresenting the condition for his eligibility to receive the 6th year HAMP incentive.

68. As a result of Defendants' willful and knowing failure to make appropriate corrections of errors in Plaintiff's loan account despite Plaintiff's NOEs/QWRs clearly describing the errors in the loan principal balance, Plaintiff suffered and continues to suffer economic and emotional harm which entitles him to seek damages against Defendants, jointly and severally.

69. Plaintiff's effort to bring action against Defendants has been deliberately continuously thwarted and frustrated by Defendants' frequent transfers of the servicing of his mortgage loan that compelled Plaintiff to keep renewing the NOE/QWR requests with every new servicer. Accordingly, Plaintiff is entitled to equitable tolling of the statute of limitations for all the causes of action in this Complaint.

## COUNT I
### Breach of Contract and the Covenant of Good Faith and Fair Dealing

(Claim jointly and severally against Shellpoint Mortgage Servicing; U.S. Bank Trust National Association; Rushmore Loan Management Services; J.P. Morgan Mortgage Acquisition Corp; LoanCare; New Rez; and New Residential Investment Corp a/k/a Rithm Capital Corp.)

70.     Plaintiff herein incorporates by refence the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

71.     At all times pertinent to this litigation, Defendants were in a contractual relationship with Plaintiff as owners and/or servicers of his HAMP-modified mortgage loan and owed him a duty of good faith and fair dealing with regard to the servicing of his modified loan.

72.     As set out in ¶¶ 28 and 38 above, the HAMP Modification Agreement and the MHA Directives guarantee to Plaintiff as a HAMP borrower a fixed annual HAMP incentive of $1,000 on the first five anniversaries of the TPP execution date and a $5,000  incentive on the 6th anniversary, as long as the modified loan does not become 90 days delinquent.

73.     As set out in ¶¶ 64-65 above, MHA Directive 09-01 requires each servicer and its sub-servicer to be aware of and in full compliance with all the laws that apply to any of its practices related to the HAMP and to advise a transferee servicer that HAMP-modified loans  are part of the portfolio being transferred and to confirm that the transferee servicer is aware of the special requirements for these loans, and agrees to assume the additional responsibilities associated with servicing them.

74.     As revealed in Ditech's June 9, 2016 letter described in ¶ 31 above, only $916.67 of the $1,000 annual incentives guaranteed to HAMP borrowers in MHA Directive 09-01was credited to the principal balance of Plaintiff's modified loan by the first and the fourth anniversaries of the TPP on March 28, 2011 and February 28, 2014, and the 6th year incentive of $5,000 guaranteed by MHA Directive 14-05 was not credited to the loan by March 31, 2016.

75.     Defendants breached their contractual obligations to Plaintiff and the covenant of good faith and fair dealing with him by failing to apply all the accrued HAMP incentives guaranteed to Plaintiff in the HAMP Modification Agreement and by the MHA Directives to reduce the principal balance of his modified loan.

76.     As a proximate result of Defendants' breach of the Modification Agreement and failure to comply with the MHA guidelines, Plaintiff sustained significant financial losses consisting of $5,166.66 in HAMP incentives never applied to reduce the principal balance of the loan, the continuing interest assessed on the HAMP incentives never applied to reduce the principal balance, thus far reaching more than $2,100.00 as of the date of filing this Complaint (exact amount to be determined at trial) and prevented reduction in interest cost of the loan due to Defendants' failure to provide an accurate principal balance needed to refinance the loan in January 2021 at a fixed rate of 2.5%, compared to the HAMP-fixed rate of 4.75%, totaling $142,309.00 by June 1, 2050 (exact amount to be determined at trial).

77.     Michigan law, MCL 600.5807(5), provides a period of limitations of 10 years for action to recover damages founded on a covenant in a deed or mortgage of real estate. Accordingly, Plaintiff can maintain his action against Defendants for breach of contract and the covenant of good faith and fair dealing since March 1, 2014.

78.     Accordingly, Defendants are jointly and severally liable to Plaintiff in compensatory damages of not less than $149,500.00 (exact amount to be determined at trial) for breach of contract and the covenant of good faith and fair dealing, and in exemplary damages of not less than $149,500.00 for disregarding the provisions of MHA guidelines in servicing Plaintiff's HAMP-modified mortgage loan, plus the costs for bringing this action.

## COUNT II
### Violation of RESPA 12 U.S.C. § 2605 et seq. and
### Implementing Regulations X, 12 C.F.R. 1024.35(a)

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; Rushmore Loan Management Services; LoanCare, LLC and New Rez, LLC dba Shellpoint Mortgage Servicing)

79.     Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

80.     RESPA, 12 U.S.C.§2605(e)(2),  requires that no later than 30 days after the receipt from any borrower of any qualified written request (QWR) that includes a statement of the reasons for the belief of the borrower that the account of the borrower is in error, the mortgage loan servicer shall: (A) make appropriate corrections in the account of the borrower and transmit to the borrower a written notification of such correction, which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower; or (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) a statement of the reasons why the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an employee or  office or department of the servicer who can provide assistance to the borrower.

81.     RESPA implementing regulation, Regulation X (Reg. X), 12 C.F.R. §1024.35(a), provides in pertinent part that a qualified written request (QWR) that asserts an error relating to the servicing of a mortgage loan is a notice of error (NOE) and a servicer must comply with requirements applicable to a notice of error with respect to such QWR. Reg. X defines error to include the failure to provide an accurate payoff balance amount upon a borrower's request, §1024.35(b)(6); the failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer, §1024.35(b)(8); and any other error relating to the servicing of a borrower's mortgage loan, §1024.35(b)(11).

82.     Reg. X, 12 C.F.R. §1024.35(e)(1), requires that a servicer must respond to a borrower's NOE by either: (A) correcting the error(s) identified by the borrower and providing the borrower with a written notification of the correction, or (B) conducting a reasonable investigation and providing the borrower with a written notification that includes the statement that no error has occurred, a statement of the reason(s) for this determination, §1024.35(e)(1)(i),

83.     Reg. X, 12 C.F.R. §1024.35(e)(3)(i)(C), requires that a servicer must comply with the requirements of §1024.35(e)(1) no later than 30 days, excluding legal public holidays, Saturdays and Sundays, after the servicer receives the NOE.

84.     As set out in ¶¶ 36, 47, 55, 57 and 62 in this Complaint, Plaintiff sent Defendants detailed QWR/NOE regarding errors in the principal balance of his HAMP-modified loan and excess interest assessed on the principal balance due to Defendants' failure to apply accrued HAMP incentives totaling $5,166.66 to reduce the principal balance of the modified loan, as confirmed by Ditech's letter described in ¶ 31 of this Complaint.

85.     Defendants violated RESPA, 12 U.S.C.§2605(e)(2)(A), and Reg. X, 12 C.F.R. §1024.35(e)(3)(i)(C), by failing to make appropriate correction of the errors in Plaintiff's modified loan account clearly identified in his NOE/QWR and by failing to provide the correct principal balance of the modified loan upon request and make necessary adjustments in the account to ensure that Plaintiff will not continue to pay excess interest on his loan.

86.     Defendants violated RESPA, 12 U.S.C.§2605(e)(2)(B), and Reg. X, 12 C.F.R. §1024.35(e)(3)(i)(C), by failing to provide Plaintiff after receiving the NOE/QWR with any explanation of the reason(s) to believe Plaintiff's loan account is correct as stated by Defendants.

87.     Section 2605(f) of RESPA provides that whoever fails to comply with any provision of the section shall be liable to the borrower for each such failure in the following amounts: (1) In

the case of any action by an individual, in an amount equal to the sum of (A) any actual damages

to the borrower as a result of the failure; and (B) any additional damages, as the court may allow,

in the case of a pattern or practice of noncompliance with the requirements of this section in an

amount not to exceed $2,000; plus, in the case of a successful action under the section, the costs of

the action.

88.      As a result of Defendants' violations of RESPA, 12 U.S.C.§2605(e) and Reg. X,

Plaintiff sustained substantial financial damages, including the loss of accrued HAMP incentives

in the amount of $5166.66, excess interest payment assessed on the incentives not applied to reduce

the principal balance totaling not less than $2,100.00 from March 31, 2011 up till the date of filing

of this Complaint (exact amount to be determined at trial) and prevented reduction in interest cost

of the loan totaling not less than $142,300.00 at the loan maturity date on June 1, 2050 (exact

amount to be determined at trial) as a result of Defendants' failure to provide accurate principal

balance needed to refinance the loan in January 2021 at a fixed rate of 2.5%, compared to the

HAMP-fixed rate of 4.75%.

89.      Defendants' failures to correct the errors in the principal balance of Plaintiff's

HAMP-modified mortgage loan after being served with his NOE/QWR clearly describing the errors

demonstrate a pattern and practice of conduct of non-compliance with the servicer provisions of

RESPA and Reg. X in willful disregard for Plaintiff's rights under RESPA, thus entitling Plaintiff

to recovery of a statutory penalty of $2,000 pursuant to 12 U.S.C. 2605(f)(1)(B).

90.      RESPA provides in 12 U.S.C. 2614 that an action pursuant to 12 U.S.C.§2605 may

be brought within 3 years from the date of the occurrence of the violation. In addition, Michigan

law, MCL 600.5807(5),  provides a period of limitations of 10 years for any action to recover

damages founded on a covenant in a deed or mortgage of real estate. Furthermore, the statute of

limitations for an action under RESPA has been held to be subject to equitable tolling. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). Equitable tolling applies to a statute of limitations period when inequitable circumstances prevent a plaintiff from suing before the statutory period runs. Defendants' practice of frequent transfers from one servicer to another of the servicing of Plaintiff's modified mortgage loan frustrated and thwarted Plaintiff's efforts to bring action sooner against Defendants, thus entitling Plaintiff to equitable tolling of the statute of limitations for this RESPA action against all Defendants.

91.    Accordingly, Plaintiff brings this action against Defendants, jointly and severally, pursuant to 12 U.S.C. § 2605(f) for violations of RESPA, 12 U.S.C.§2605(e)(2), and 12 C.F.R. § 1024.35 to recover (1) compensatory damages against Defendants, jointly and severally, of at least $149,500.00 (exact amount to be determined at trial) sustained as a result of the violations of RESPA; (2) statutory penalty of $2,000 against Defendants, jointly and severally, for a pattern and practice of willful noncompliance with the servicer provisions of RESPA in response to Plaintiff's NOEs/QWRs; and (3) the costs incurred in bringing this action.

## COUNT III
### Violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692P, and Michigan Collection Practices Act (MCPA), MCL 445.251 *et seq*.

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; Rushmore Loan Management Services; LoanCare, LLC, New Rez LLC dba Shellpoint Mortgage Servicing and Rithm Capital Corp. a/k/a New Residential Investment Corp.)

92.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

93.    The FDCPA, 15 U.S.C. § 1692(e)(2), provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any

debt.". Specifically, §1692e(2)(A) provides that a debt collector may not falsely represent the character, amount, or legal status of the debt.

94.    The Michigan Collections Practices Act (MCPA), MCL 445.252(e) prohibits a debt collector from making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt.

95.    The MCPA, MCL 445.252(f)(ii) prohibits a debt collector from misrepresenting in a communication with a debtor the legal rights of the debtor.

96.    Defendants violated the FDCPA, 15 U.S.C. 1692e(2)(A), and the MCPA, MCL 445.252(e), by willfully and knowingly sending Plaintiff through the mail monthly mortgage statements stating inaccurate principal and interest payments in excess of amounts properly and correctly due on the loan, and collecting from Plaintiff through the mail inaccurate monthly principal and interest payments in excess of the amounts properly and correctly due from him.

97.    Defendants further violated the FDCPA, 15 U.S.C. 1692e(2)(A), and the MCPA, MCL 445.252(f)(ii) by willfully and knowingly making false and misleading representations in written responses to Plaintiff's NOEs/QWRs, described in ¶¶ 36, 47, 55, 57 and 62, that Plaintiff is not eligible to receive the 6th year HAMP incentive without a completed DFC form.

98.    As a result of Defendants' willful and knowing violations of the FDCPA and the MCPA, Plaintiff suffered financial losses of not less than $149,500.00 (exact amount to be determined at trial), consisting of (i) HAMP incentives in the amount of $5,166.66 not credited to reduce the principal balance of Plaintiff's modified loan and the excess interest assessed on the HAMP incentives not credited to reduce the principal balance of the loan, of not less than $2,100.00 (exact amount to be determined at trial) from March 31, 2011 till the time of filing this Complaint, plus (ii) prevented reduction in interest cost of the modified loan in the amount of not less than

$142,300.00 (exact amount to be determined at trial) from January 1, 2021 until the loan maturity date of June 1, 2050 (exact amount to be determined at trial) as a result of Defendants' failure to provide an accurate principal balance needed to refinance the HAMP-modified mortgage in January 2021 at the fixed rate of 2.5%.

99.     FDCPA § 1692k provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person in an amount equal to the sum of: (i) any actual damages sustained by such person as a result of such failure, (ii) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000, and (iii) in the case of any successful action to enforce the foregoing liability, the costs of the action and reasonable attorney fees.

100.     Michigan Collection Practices Act (MCPA), MCL §445.257, provides that: (1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of the act may bring action for damages or other equitable relief; (2) In an action brought pursuant to subsection (1), if the court finds for the petitioner, recovery shall be in the amount of the actual damages or $50.00, whichever is greater. If the courts finds that the method, act, or practice was a willful violation, the court may assess a civil fine of not less than 3 times the actual damages or $150.00, whichever is greater, and shall award reasonable attorney's fees and court costs incurred in connection with the action.

101.     The FDCPA, 15 U.S.C. §1692n, provides that the act does not annul, alter, or affect or exempt any person subject to the act from complying with state laws with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of the act and then only to the extent of the inconsistency. For purposes of this section, a state law is not inconsistent with the act if the State law affords the consumer greater protection than the FDCPA.

26

102.    Accordingly, Plaintiff brings this action pursuant to the FDCPA, 15 U.S.C. §1692n, and MCPA, MCL §445.257(2), for: (1) a judgment against Defendants, jointly and severally, for willful and knowing violations of the FDCPA and the MCPA alleged in this Complaint; (2) a permanent injunction against future violations of the FDCPA and the MCPA by Defendants; (3) statutory fines pursuant to MCPA. MCL §445.257(2) against Defendants of not less than three times the actual damages sustained by Plaintiff, or $448,500.00 (exact amount to be determined at trial), for willful violations of MCL 445.252(e) and (f)(ii); and recovery of the costs of bringing this action.

### COUNT IV
### Violation of the Michigan Mortgage Brokers, Lenders and Servicers Licensing Act (MBLSLA), MCL 445.1672(b)

(Claim against Defendants Shellpoint Mortgage Servicing; Rushmore Loan Management Services; LoanCare, LLC; New Rez, LLC and New Residential Investment Corp. a/k/a Rithm Capital Corp.)

103.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

104.    The MBLSLA, MCL 445.1672(b) prohibits fraud, deceit, or material misrepresentation in connection with any transaction governed by the act.

105.    Defendants willfully and knowingly made false and misleading representations to Plaintiff, as set out in ¶¶ 36 -63 of the Complaint, that all the earned HAMP incentives in the first five years of Plaintiff's mortgage modification were applied to Plaintiff's principal balance and that Plaintiff's eligibility to receive the 6th year HAMP incentive amount of $5,000 depends on the submission of a DFC by Plaintiff contrary to MHA Directive 10-11 that implemented the DFC and exempted HAMP modifications such as Plaintiff's HAMP modification from that requirement, which constitute material misrepresentations in the servicing of Plaintiff's mortgage loan in violation of the MBLSLA, MCL 445.1672(b).

27

106.    Defendants willfully and knowingly communicated to and collected from Plaintiff inaccurate  monthly mortgage payments based on inaccurate mortgage principal balance, despite having been given notice by Plaintiff of errors in the principal balance due to accrued HAMP incentives not credited to the principal balance, which constitutes material misrepresentation in the servicing of Plaintiff's mortgage loan in violation of the MBLSLA, MCL 445.1672(b)

107.    As a result of Defendants' violations of the MBLSLA, MCL 445.1672(b), Plaintiff suffered financial damages of not less than $149,500.00 (exact amount to be determined at trial), consisting of the loss of $5166.66 in accrued HAMP incentives not credited to the loan principal balance and interest paid on the HAMP incentives not credited to the principal balance, resulting in interest overpayments of $2,100.00 (exact amount to be determined at trial) from March 31, 201 until the time of the filing of this Complaint, plus prevented reduction in interest cost of the loan of not less than $142,300.00 at the maturity of the loan on June 1, 2050 (exact amount to be determined at trial), due to lost opportunity to refinance the modified loan in January 1, 2021 at a fixed rate of 2.5%, compared to the HAMP fixed rate of 4.75%, as a result of Defendants' failure to provide an accurate estimate of the loan principal balance needed to refinance the loan.

108.    The MBLSLA, MCL 445.1681(1), provides that any person may bring an action to obtain (a) a declaratory judgment that a method, an act or practice is a violation of this act; (b) an injunction against a person who is engaging in or is about to engage in a method, act or practice in violation of the act; and (c) recover actual damages or $250, whichever is greater, together with the costs of bringing the action. MCL 445.1681(1)(c).

109.    Accordingly, Plaintiff brings this action against Defendants, jointly and severally, pursuant to the MBLSLA, MCL 445.1681(1), for (a) a declaratory judgment that Defendants' actions described above are in violation of the MBLSLA, MCL 445.1672(b); (b) an order enjoining

Defendants from continuing the actions described above in violation of the MBLSLA; and (c) recovery of actual damages of not less than $149,500.00 (exact amount to be determined at trial) sustained by Plaintiff as a result of Defendants' violations of MCL 445.1672(b), plus (c) the costs incurred in bringing this action.

**COUNT V**
**Fraudulent Misrepresentation and Concealment**

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; Rushmore Loan Management Services; LoanCare and New Rez, LLC dba Shellpoint Mortgage Servicing).

110.    Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

111.    At all times relevant in this litigation, Defendants owed Plaintiff a duty as servicers of his HAMP-modified mortgage loan to not conceal or fraudulently misrepresent material facts in communications to him about the mortgage loan.

112.    Defendants breached that duty on more than one occasion in responding to Plaintiff's QWR/NOE regarding the HAMP incentives guaranteed in his loan modification, by willfully and intentionally not acknowledging that the accrued HAMP incentives applied to Plaintiff's loan on the first and fourth anniversaries of the TPP were less than the guaranteed amount and that MHA Directive 10-11 exempts Plaintiff's HAMP modification from the DFC requirement for eligibility to receive HAMP incentives, which constitutes willful concealment and fraudulent misrepresentation of material facts about the incentives guaranteed to Plaintiff in his HAMP loan modification.

113.    Defendants knew, by virtue of Ditech's letter of June 9, 2016 (¶ 31) and the duty imposed by MHA Directive 09-01 on servicers of HAMP-modified loans (¶ 65), that their representations to Plaintiff about the HAMP incentives guaranteed on his HAMP-modified loan

were false when they made them, or made them recklessly without any knowledge of their truth and as positive assertions.

114. Defendants concealed and misrepresented material facts about the HAMP incentives guaranteed on Plaintiff's modified mortgage loan with the intention that Plaintiff would rely on their misrepresentations to believe that the accounting of the principal balance of the modified loan is correct as reported in the monthly statements and thus refrain from taking any adverse action against Defendants; and Plaintiff relied upon their misrepresentations and made higher interest and principal payments on his modified loan than he should have.

115. As a result of Defendants' concealment and fraudulent misrepresentations of the HAMP incentives due on Plaintiff's modified loan, Plaintiff incurred financial losses to the benefit of Defendants of not less than $149,500.00 (exact amount to be determined at trial), consisting of $5,166.66 in HAMP incentives not credited to the principal balance and not less than $2.100.00 in interest on the incentives from March 31, 2011 to the date of filing this Complaint, and prevented reduction in the interest cost of the modified loan of $142,300.00 (exact amount to be determined at trial) at maturity on June 1, 2050, due to Defendants' failure to provide an accurate estimate of the principal balance to refinance in January 2021 at the rate of 2.5%, compared to the HAMP-fixed rate of 4.75%.

116. Michigan statue provides a period of limitations of six years for a fraud claim. MCL 600.5813. Where fraudulent concealment by a defendant is involved, as in the present case, the statute of limitations is subject to equitable tolling. See *Mills v. Equicredit Corp.*, 294 F.Supp.2d 903, 908 (E.D.Mich.2003); *Borg v. Chase Manhattan Bank*, 247 Fed.Appx. 627, 635 (6th Cir. 2007). In addition, Defendants' frequent transfers of the servicing of the Plaintiff's modified loan without correcting the errors in the loan account, requiring Plaintiff to keep sending

a QWR/NOE to each transferee servicer, frustrated and impeded Plaintiff's effort to bring action against Defendants. Therefore, the limitations period for Plaintiff's action for concealment and fraudulent misrepresentation is subject to equitable tolling.

117.    Accordingly, Plaintiff brings this action against Defendants, jointly and severally, for recovery of (1) compensatory damages for fraudulent misrepresentation and concealment of material facts resulting in financial damages to Plaintiff of not less than $149,500.00 (exact amount to be determined at trial), and (2) exemplary damages of not less than the compensatory damages, to compensate Plaintiff for emotional distress and anxiety caused by Defendants' willful, knowing and deceitful actions in violation of the MHA guidelines in servicing Plaintiff's modified loan.

## COUNT VI
### Statutory Conversion, MCL § 600.2919a

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; U.S. Bank Trust National Association as Trustee of BINOM; Rushmore Loan Management Services; J.P. Morgan Mortgage Acquisition Corp; LoanCare, LLC; New Rez, LLC dba Shellpoint Mortgage Servicing; and New Residential Investment Corp. a/k/a Rithm Capital Corp.).

118.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

119.    At all times relevant to this litigation, Defendants owed Plaintiff a duty under Michigan law, MCL 600.2919a, to not convert Plaintiff's property to their own use and benefit.

120.    Defendants breached this duty on more than one occasion by failing to correct the errors in Plaintiff's HAMP-modified mortgage loan account due to their failure to credit all of the earned HAMP incentives to the loan account to promptly and appropriately reduce the principal balance of the loan despite repeated demands in writing by Plaintiff as set out in ¶¶ 36, 47, 55, 57 and 62 above, and by preventing a reduction in the interest cost of the loan due to Defendants' failure to provide the accurate principal balance of the loan needed to refinance the loan at a fixed

rate of 2.5%, compared to the HAMP-fixed rate of 4.75%, as alleged in ¶¶ 35-37 above.

121.    Defendants' failure to correct the errors in Plaintiff's HAMP-modified loan, resulting in a higher principal balance and higher interest cost for the use and benefit of Defendants at the expense of Plaintiff, constitutes an unlawful conversion of Plaintiff's property to Defendants' own use and benefit.

122.    Michigan law, MCL 600.2919a(1)(a), provides in pertinent part that a person damaged as a result of another person's converting property to the other person's own use may recover three times the actual damages sustained, plus costs.

123.    MCL 600.2919a(2) provides that the remedy by this section is in addition to any other right or remedy the person may have at law or otherwise.

124.    Accordingly, pursuant to MCL 600.2919a(1)(a), Plaintiff brings this action for statutory conversion of Plaintiff's property against Defendants, jointly and severally, to recover statutory damages against Defendants in an amount not less than three times the sum of (i) the amount of the uncredited HAMP incentives of $5,166.66, (ii) the interest on the uncredited incentives of $2,100.00 (exact amount to be determined at trial) from March 31, 2011 up to the time of the filing of this complaint, and prevented reduction in interest cost of the mortgage in the amount of $142,100.00 from January 1, 2021 till the maturity date of the modified loan on June 1, 2050 (exact amount to be determined at trial), or a total of not less than $448,500.00 (exact amount to be determined) in statutory damages; plus the cost incurred in bringing this action.

## COUNT VII
### Unjust Enrichment

(Claim jointly and severally against Defendants Shellpoint; U.S. Bank Trust National Association as Trustee of BINOM; Rushmore; J.P. Morgan Mortgage Acquisition Corp; LoanCare, LLC; New Rez, LLC dba Shellpoint Mortgage Servicing; and New Residential Investment Corp. a/k/a Rithm Capital Corp. LLC)

125.     Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

126.     At all times pertinent in this action, Defendants owed a legal duty to Plaintiff of good faith and fair dealing to not act unfairly or unduly take advantage of him or commit wrongful acts with respect to the servicing of his mortgage loan in order to unjustly enrich themselves at the expense of Plaintiff's financial interest.

127.     Under MHA Directive 09-01 and the HAMP guidelines, Plaintiff was entitled to $10,000 in accrued HAMP principal-balance-reduction incentives to be applied to his modified mortgage loan by virtue of his modified mortgage loan remaining current through the sixth anniversary of the TPP execution date ending March 31, 2016.

128.     As disclosed in Ditech's letter of June 9, 2016, more than half of the accrued HAMP incentives totaling 5,166.66 due on Plaintiff's modified loan account was not applied to reduce the principal balance of the loan resulting in higher interest payments and enriching Defendants at Plaintiff's expense.

129.     In December 2020 Plaintiff demanded that Defendants correct the errors identified in his mortgage loan account to provide the correct principal balance needed to refinance the modified mortgage loan.

130.     Defendants failed to correct the errors in Plaintiff's loan account and prevented Plaintiff from refinancing his modified mortgage loan at a fixed rate of 2.5% in January 2021 to reduce the interest cost of the loan, compared to the HAMP fixed rate of 4.75%.

131.     As a result of Defendants' failure to correct the error in the principal balance of Plaintiff's mortgage loan, Defendants  unjustly enriched themselves at the expense of Plaintiff by the sum of (i) $5,166.66 in accrued HAMP incentives not applied to reduce the principal balance

of the modified loan, (ii) the interest on the HAMP incentives not applied to reduce the principal balance amounting to not less than $2,100.00 to date (exact amount to be determined at trial), and (iii) prevented reduction in the interest cost of the modified loan amounting to $142,100.00 at maturity of the loan on June 1, 2050 (exact amount to be determined at trial), as a result Defendants' failure to provide an accurate estimate of the payoff balance needed to refinance the loan in January 2021 at a fixed rate of 2.5%, compared to the HAMP-fixed rate of 4.75%.

132.    Under Michigan doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Krammer Asphalt Paving Co., Inc. v. East China Twp. Sch.*, 443 Mich. 176, 185; 504 N.W.2d 635 (1993).

133.    Michigan law, MCL 600.5807(5), provides a period of limitations of 10 years for an action to recover damages founded on a covenant in a deed or mortgage of real estate, as in the present case. Accordingly, Plaintiff can bring this action for recovery of compensatory damages against Defendants for their unjust enrichment at Plaintiff's expense in the servicing of Plaintiff's HAMP-modified mortgage loan since March 31, 2016.

134.    Accordingly, Plaintiff brings this action for unjust enrichment against Defendants, jointly and severally, for recovery of compensatory damages in an amount not less than $149,500.00 (exact amount to be determined at trial); and the cost incurred in bringing this action.

## **PRAYER FOR F RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court for the following relief:

1)    Grant judgment in favor of Plaintiff and against Defendants, jointly and severally, on Counts I-VII of the Complaint.

2)    Enjoin Defendants from continuing to act in further violation of RESPA, the FDCPA, the MBLSLA, and Plaintiff's rights and interests in his HAMP-modified mortgage loan.

3)    Award statutory penalty in favor of Plaintiff against Defendants, jointly and severally, in the amount of $2,000 pursuant to RESPA, 12 U.S.C. §2605(f)(1)(B) for willful disregard for Plaintiff's rights under RESPA in Count II of the Complaint

4)    Award compensatory damages in Counts I-II, IV-V and VII of the Complaint in favor of Plaintiff against Defendants, jointly and severally, of not less than $149,500.00 (in accordance with proof) for Plaintiff's losses sustained due to Defendants' actions.

5)    Award exemplary damages in Counts I and V against Defendants, jointly and severally, of not less than $149,500.00 (in accordance with proof) to compensate Plaintiff for emotional distress and anxiety caused by Defendants' willful, knowing and deceitful actions in disregard of provisions of the MHA guidelines in servicing Plaintiff's HAMP-modified mortgage loan.

6)    Award statutory damages in in Counts III and VI in favor of Plaintiff against Defendants, jointly and severally, of not less than $448,500.00 (in accordance with proof) pursuant to FDCPA, 15 U.S.C. §1692n and MCPA. MCL §445.257(2), for willful violations of MCPA. MCL 445.252(e) and (f)(ii) and pursuant to MCL 600.2919a for statutory conversion of Plaintiff's property.

7)    Award in favor of Plaintiff against Defendants, jointly and severally, the cost for bringing this action to be determined at trial, plus any other relief the court deems appropriate and just under the circumstances

Respectfully submitted:

s/ Joseph T. Ozormoor (P42462)
Plaintiff Pro Per
469 LaBelle Road
Grosse Pointe Farms, MI 48236
(313) 924-5319 / (313) 949-2656 (mobile)
jtozormoor@comcast.net

Dated March 18, 2024

3/19/2024 10:59 PM   Twyonna Adams

Cathy M. Garrett   WAYNE COUNTY CLERK

24-004233-CZ  FILED  IN MY OFFICE

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

| | |
|---|---|
| JOSEPH OZORMOOR )<br><br>Plaintiff Pro Per )<br>v )<br><br>SHELLPOINT MORTGAGE SERVICING, A DBA FOR )<br>NEW REZ, LLC; )<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION AS )<br>TRUSTEE  FOR BINOM SECURITIZATION. TRUST )<br>2022 RPL1; )<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC; )<br> )<br>J.P. MORGAN MORTGAGE ACQUISITION CORP.; )<br> )<br>LOANCARE, LLC, A/K/A NEW RESIDENTIALMORTG )<br>LLC, A DIVISION OF NEW REZ , LLC )<br> )<br>NEW REZ, LLC, A DIVISION OF NEW RESIDENTIAL )<br>MORTGAGE INVESTMENT CORP; )<br> )<br>NEW RESIDENTIAL MORTGAGE INVESTMENT )<br>CORP. A/K/A RITHM CAPITAL CORP. )<br> )<br>Joint and Several Defendants )<br> ) | Case No.:-CZ<br><br>HON.<br><br><br>**INDEX OF EXHIBITS** |

Joseph Ozormoor, Plaintiff Pro Per
469 LaBelle Road
Grosse Pointe Farms, MI 48236
(313) 924-5319 / (313) 949-2656 (mobile)
jtozormoor@comcast.net

## INDEX OF EXHIBITS

1.  Exhibit 1:   HAMP Loan Modification Agreement
2.  Exhibit 2:   Ditech's 2015 End of Year History of Loan and April 2016 Statement
3.  Exhibit 3:   Ditech's Acknowledgment of Receipt of HAMP Incentives Inquiry
4.  Exhibit 4:   Ditech's June 9, 2016  Response to HAMP Incentives Inquiry
5.  Exhibit 5:   Ditech's May 15, 2019 Notice of Servicing Transfer to LoanCare, LLC

1

6.  Exhibit 6:      NewRez' June 28, 2019 "Welcome to NewRez" Letter

7.  Exhibit 7:      Dec. 2020 to Aug. 2021 Refinance Rate Quotes from Lenders

8.  Exhibit 8:      Dec. 2020 and March 2021 Requests to NewRez/LoanCare to Correct
                    Errors in the Loan Principal Balance.

9.  Exhibit 9:      Jan. 15, 2021 LoanCare's Response to NOE

10. Exhibit 10:     Excerpts of MHA Directive 09-01 and MHA Directive 14-05

11. Exhibit 11:     Excerpt of MHA Supplemental Directive 10-11 of Sept. 21, 2010

12. Exhibit 12:     May 27, 2021 LoanCare's Response to Second NOE

13. Exhibit 13:     July 6, 2021 Notice of Sale of Ownership to JP Morgan

14. Exhibit 14:     July 15, 2021 Notice of Servicing Transfer to Rushmore

15. Exhibit 15:     Aug. 5, 2021 Rushmore's "Welcome" and Confirmation of NOE Letters

16. Exhibit 16:     Sept. 30, 2021 Rushmore's Response to July 25, 2021 NOE

17. Exhibit 17:     April 11, 2022 Rushmore's Response to Feb. 21, 2022 NOE

18. Exhibit 18:     April 28, 2022 Rushmore's Response to April 18, 2022 NOE

19. Exhibit 19:     May 10, 2022 Rushmore's 2nd Response to April 18, 2022 NOE

20. Exhibit 20:     Oct. 4, 2022 Rushmore's Notice of Transfer of Servicing to Shellpoint

21. Exhibit 21:     Oct. 31, 2022 Shellpoint's "Welcome to Shellpoint" Letter

22. Exhibit 22:     Nov. 22, 2022 Shellpoint's Response to Oct. 25, 2022 NOE

23. Exhibit 23:     Dec. 14, 2022 Shellpoint's 2nd Response to Oct. 25, 2022 NOE

24. Exhibit 24:     Dec. 21, 2022 Letter from Shellpoint's Office in Livonia, MI

25. Exhibit 25:     Dec. 27, 2022 Letter from Shellpoint's Office in Livonia, MI

26. Exhibit 26:     Jan. 3, 2023 Shellpoint's Response to Oct. 25, 2022 NOE

27. Exhibit 27:     Jan. 11, 2023 Reply to Shellpoint with Renewed NOE/QWR

28. Exhibit 28:     Shellpoint's Demands for Death Certificate in Response to NOE

**EXHIBIT 1**

HAMP Mortgage Loan Modification Agreement

6/9/2010

**GMAC** Mortgage

JOSEPH T. OZORMOOR
NENITA OZORMOOR
469 LABELLE ROAD
GROSSE POINTE FARMS MI 48236

RE:   Account Number
      Property Address    469 LABELLE ROAD
                          GROSSE POINTE FARMS MI 48236

Dear JOSEPH T. OZORMOOR  NENITA OZORMOOR

**Congratulations!** You are eligible for a Home Affordable Modification. As previously described, if you comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage. The approval is subject to the receipt of the signed and notarized loan modification agreement and any attachments and receipt of clear title, if applicable.

**How to Accept This Offer:**

**STEP 1**  **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

To accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 6/16/2010. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2**  **CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

**REQUIRED: We are still in need of the following documentation to execute the modification agreement:**
  •  Unemployment & Supplemental Unemployment Benefit Award Letter.
To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

We look forward to hearing from you no later than 6/16/2010.

Sincerely,

Loan Servicing
Enclosures

| SUMMARY | Here is a summary of your modified mortgage. |
|---|---|

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we will defer collection of and not collect interest on $28472.43 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $0.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. *GMAC Mortgage, LLC* will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that GMAC Mortgage, LLC must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $572.10. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $3613.29. You may pay this amount over a 5 year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now, please send the check to GMAC Mortgage, LLC, PO Box 79162, Phoenix AZ 85062-9162. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at [1-888-714-4622].

**BORROWER INCENTIVE.** As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

Investor Loan # ▮▮▮▮▮▮▮

**After Recording Return To:**
GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID: A1

This document was prepared by GMAC Mortgage, LLC

_____**[Space Above This Line For Recording Data]**_____

# MODIFICATION AGREEMENT

Borrower ("I"): JOSEPH T. OZORMOOR NENITA OZORMOOR
Lender ("Lender"): GMAC Mortgage, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 10/24/2003
Loan Number: ▮▮▮▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"):  469 LABELLE ROAD
GROSSE POINTE FARMS MI 48236

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument), dated the same date as the Note, and if applicable, recorded on with Instrument Number in Book and/or Page number of the real property records of WAYNE County, MI.  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 469 LABELLE ROAD  GROSSE POINTE FARMS MI 48236, which real property is more particularly described as follows.  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's Successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

### (Legal Description – Attached as Exhibit if Recording Agreement)

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations.**  I certify, represent to Lender and agree:

   A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.    I live in the Property as my principal residence, and the Property has not been condemned;

   C.    There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.    I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

_____
If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I."  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E.  · Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

F.  If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Agreement;

B.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 07/01/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 07/01/2010.

A.  The new Maturity Date will be: 06/01/2050.

B.  The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $221161.14 (the "New Principal Balance").

C.  $28472.43 of the New Principal Balance shall be deferred (the Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $192688.71. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 6/1/2010 and the first new monthly payment on the Interest Bearing Principal will be due on 07/01/2010. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 2.00000% | 6/1/2010 | 583.51 | $572.10, adjusts annually after year 1 | 1155.61, adjusts annually after year 1 | 07/01/2010 | 06/01/2015 |
| 3.00000% | 06/01/2015 | 677.90 | Adjusts Annually | Adjusts Annually | 07/01/2015 | 06/01/2016 |
| 4.00000 | 06/01/2016 | 777.54 | Adjusts Annually | Adjusts Annually | 07/01/2016 | 06/01/2017 |
| 4.75000 · | 06/01/2017 | 855.01 | Adjusts Annually | Adjusts Annually | 07/01/2017 | 06/01/2050 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.
B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.
C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.
D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.
E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.
F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents, except that the Note, and the payment obligation created thereunder, are not enforceable against me personally.
G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.
H. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.
I. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.
J. That MERS holds only legal title to the interests granted by the Borrower in the mortgage, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of lender including, but not limited to, releasing and canceling the mortgage Loan.

including, but not limited to, releasing and canceling the mortgage Loan.

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal) *Joseph T Ozormoor* *Subject to him and applicable laws*

JOSEPH T. OZORMOOR

Date 6/15/10

Witness

Print Name Nenita Ozormoor

(Seal)

NENITA OZORMOOR

Date 6/15/10

Witness

Print Name JOSEPH OZORMOOR

(Seal) _____

Date _____

Witness _____

Print Name _____

(Seal) _____

Date _____

Witness _____

Print Name _____

GMAC Mortgage, LLC

By: Kristi M. Cava

Limited Signing Officer

Date _____

SHERYL A. GROW
NOTARY PUBLIC – MICHIGAN
WAYNE COUNTY,
ACTING IN THE COUNTY OF Wayne
MY COMMISSION EXPIRES 01/15/2014

Date: 6/9/2010               Loan# ▇▇▇▇▇▇

Borrower's Name: JOSEPH T. OZORMOOR .NENITA OZORMOOR

Lender's Name and Address: GMAC Mortgage, LLC
                                  3451 Hammond Ave
                                  Waterloo, IA 50702

### IMPORTANT INFORMATION ABOUT
### YOUR LOAN MODIFICATION WHICH FEATURES A BALLOON PAYMENT
### Please Read Carefully

This disclosure describes the features of your loan modification.

### How Is Your Interest Rate and Initial Payment Determined?

- According to your mortgage payment calculated for long-term affordability, your modified loan will now be a balloon mortgage.
- The amount of the initial monthly payment on your modified loan will be based on three factors:

  - the interest rate reflected in the agreement;
  - the current balance of the loan; and
  - the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 480 months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $28472.43 will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

### How Your Monthly Payment Can Change- Balloon Payment

You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

THE MODIFIED TERM OF THE LOAN IS  MONTHS AS A RESULT, YOU WILL BE REQUIRED TO PAY THE ENTIRE REMAINING UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST OWING WHEN THE TERM OF YOUR LOAN EXPIRES, OR WHEN YOU PAY OFF THE MODIFIED LOAN, WHICH WILL BE WHEN YOU SELL OR TRANSFER AN INTEREST IN YOUR HOUSE, REFINANCE THE LOAN, OR WHEN THE LAST SCHEDULED PAYMENT IS DUE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

Example of Balloon Payment

- <<Amortization Extension Only>> The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Interest Rate | 7.7500% |
| Remaining Loan Term | 20 years |
| Remaining Amortization Schedule | 40 years |
| Monthly Principal and Interest Payment | $658.07 |
| Balloon Payment Due | $94,115.71 |

In the example above, the outstanding loan balance of $x,xxx.xx would be due and payable at the end of 20 years.

- <<Amortization Extension and Principal Deferment>> The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Amount Forborne) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Remaining Loan Term | 20 years |
| Remaining Amortization Schedule | 40 years |
| Monthly Principal and Interest Payment | $498.55 |
| Balloon Payment Due | $94,115.71 |

In the example above, the outstanding loan balance of $94,115.71 would be due and payable at the end of 20 years, which represents the unpaid loan amount resulting from the extended amortization and the $25,000 of loan balance that did not accrue interest.

This summary is intended for reference purposes only. Important information relating specifically to your loan modification will be contained in the loan modification documents, which alone will establish your rights and obligations under the loan modification plan. This disclosure does not address any other payments that may be required under the terms of your loan, for example, monthly escrow payments

THE PURPOSE OF THIS DISCLOSURE IS TO PROVIDE VARIOUS DETAILS ON THE TYPE OF LOAN MODIFICATION FOR WHICH YOU HAVE EXPRESSED INTEREST. THE DISCLOSURE DOES NOT CONSTITUTE A COMMITMENT ON THE PART OF THE LENDER TO MODIFIY YOUR LOAN.

Receipt of a copy of this Disclosure is hereby acknowledged.

6/15/10
- /Date

6/15/10
Date

_____
Date

_____
Date

JOSEPH T. OZORMOOR (Subject to HAMP & Applicable laws)

MENITA OZORMOOR

//

_____

_____

**EXHIBIT 4**

June 9, 2016 Ditech's Response to HAMP Incentives Inquiry



Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
(800) 643-0202
Fax: (866) 870-9919
HAMPDisputes@ditech.com

June 9, 2016

JOSEPH OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS MI  48236

RE:  Ditech Financial LLC ("Ditech")
     Account Number:
     Case Reference #: CASEMGMT-11071

Dear Joseph Ozormoor:

Ditech Financial LLC ("Ditech") has completed a review of the above-referenced inquiry or dispute case number. Ditech has determined the following:

In response to your recent Home Affordable Modification Program (HAMP) inquiry, Ditech Financial LLC has reviewed your account.  Your account was modified under HAMP effective July 01, 2010. According to the agreement, the interest rate on your modified loan will be adjusted as noted in the enclosed Modification agreement in section 3.C.

In addition, as long as the mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period plan is executed.  It has been identified that the following accrued monthly benefits were remitted and credited to your account as follows:

- 03/28/2011, HAMP incentive was received in the amount of $916.67 and applied towards the principal balance

- 03/30/2012, HAMP incentive was received in the amount of $1,000 and applied towards the principal balance

- 02/28/2013, HAMP incentive was received in the amount of $1,000 and applied towards the principal balance

- 02/28/2014, HAMP incentive was received in the amount of $916.67 and applied towards the principal balance

- 02/28/2015, HAMP incentive was received in the amount of $1,000 and applied towards the principal balance

It has been identified that a 6th year HAMP incentive notification was sent to you on June 16, 2015 and July 11, 2015.  As indicated on these notifications, in order to receive this incentive you were required to return the completed Dodd-Frank Certification (Form 720) enclosed with the notification.  To date, we have not received this form and the 6th year incentive has not been credited toward your principal balance.

On August 31, 2015, Green Tree Servicing LLC and Ditech Mortgage Corporation joined to form Ditech Financial LLC, known as Ditech.  Therefore, Green Tree and Ditech are one in the same. The merger did not alter or change the original contract since this was not an actual servicing transfer.

Dispute Resolution Letter, 03/04/2016                                    LTR-181

We believe this resolved all concerns that you had expressed to Ditech.  If you have any additional questions, you may contact your assigned Single Point of Contact, Shaboria N., at 1-800-643-0202 extension 85458.  For any additional questions, please call us toll-free at (800) 643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT; Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error, or Request for Information:  P.O. Box 6176, Rapid City, SD 57709-6172.

Respectfully,

Ditech

/ars/38/𝒜ℛ𝒮

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Dispute Resolution Letter, 03/04/2016

LTR-181

May 15, 2019 Ditech's Notice of Servicing Transfer to LoanCare, LLC

**EXHIBIT 5**



PO Box 15009
Tempe, AZ 85284-0109

Phone: 1-800-643-0202
Fax: 1-866-870-9919
ditech.com

May 15, 2019

\*\*\*\*\*\*\*\*\*\*\*\*\*AUTO\*\*ALL FOR AADC 481
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LA BELLE RD
GROSSE POINTE FARMS, MI 48236-2830

RE:  Ditech Financial LLC ("Ditech")
     Account Number: ███████

Dear Valued Customer(s):

### NOTICE OF SERVICING TRANSFER

The servicing of your mortgage account is being transferred, effective with your payment due 6/1/2019. This means that after this date, a new servicer will have the right to collect your mortgage account payments. If your new servicer will accept payments prior to this date, it will be noted below. Nothing else about your mortgage account will change.

Ditech is now collecting your payments. Ditech will stop accepting payments received from you after May 31, 2019.

LoanCare, LLC ("LoanCare, LLC") will collect your payments going forward. Your new servicer will start accepting payments received from you on June 1, 2019.

If you have established automatic payments with Ditech, to avoid disruption to you, LoanCare, LLC will continue to debit those automatic payments from the account you provided to Ditech. If you want LoanCare, LLC to stop or change these automatic payments, please call LoanCare, LLC at 800-410-1091.

**All payments made on or after June 1, 2019 should be sent to LoanCare, LLC at this address:**

P.O. Box 37628
Philadelphia, PA 19101-0628

If you have any questions for either your present servicer, Ditech, or your new servicer, LoanCare, LLC, about your mortgage account or this transfer, please contact them using the information below:

Current Servicer:
Ditech
Customer Service
1-800-643-0202
P.O. Box 15009
Tempe, AZ 85284-0109

New Servicer:
LoanCare, LLC
Customer Service
800-410-1091
P.O. Box 8068
Virginia Beach, VA 23450

**This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.**



EQUAL HOUSING
LENDER

Goodbye RESPA - ACH Transfer NBK, 04242019

LTR-026alt

If Ditech Financial LLC has offered you Financial Counseling through Balance of San Francisco and you have already accepted counseling, you may continue working with Balance of San Francisco at Ditech's expense. If you were offered financial counseling through Balance of San Francisco, and you have not accepted Financial Counseling, you have until June 1, 2019 to accept this service at Ditech's expense. You may contact Balance of San Francisco at 1-888-412-2227, between Monday - Thursday 8:00 am to 8:00 pm, Friday 8:00 am to 5:00 pm PST.

Under Federal law, during the 60-day period following the effective date of the transfer of the account servicing, an account payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Ditech                                    May 15, 2019
Present Servicer                          Date

If you use a third party bill pay provider for your payments, please make arrangements to notify them of your new servicer's contact information. If you are interested in establishing automatic payments with LoanCare, LLC, please contact them after the transfer effective date.



NewRez' June 28, 2019 "Welcome to NewRez" Letter

**EXHIBIT 6**



4000 Chemical Road, Suite 200
Plymouth Meeting, PA 19462

## Important Account Information Enclosed

Joseph Ozormoor
469 La Belle Rd
Grosse Pointe Farms. MI 48236-2830

Hasler
0181-135C2050
29D8550
US POSTAGE
$00.40
06/28/2019
PRSRT FIRST CLASS MAIL

6/28/2019
Communication
Re: Cash Out
Option



**NewRez**

4000 Chemical Road, Suite 200
Plymouth Meeting, PA 19462

# Welcome to NewRez

Joseph Ozormoor
469 La Belle Rd
Grosse Pointe Farms, MI 48236-2830

Dear Joseph Ozormoor,

Welcome to NewRez. We're the lending affiliate of New Residential Mortgage LLC, the company that owns the right to service your mortgage loan. We look forward to providing you with exceptional customer service and being your trusted financial partner for your home financing needs.

## Our commitment to you

At NewRez, we're committed to making sure you're aware of all of the home loan and refinancing options available to you. Rest assured, we continuously monitor the market and will be in touch whenever there's a home loan benefit that may be of interest to you. Based on our initial review of your account, you have an estimated **$100,000+\*** in equity available and may want to consider a cash-out refinance.

## A Cash-Out Refinance allows you to:

- Quickly and easily tap into your home's equity

- Pay off credit cards and other high-interest debt

- Make home improvements

- **Receive up to $100,000+\* in cash**

Again, welcome to NewRez. To review all of your cash-out options, please call **833-821-8986** and refer to Reservation # **013-924-486**. A licensed loan officer is waiting for your call and can help you pick the loan that's right for you in just a few minutes.

Sincerely,

**Kevin Harrigan**
**President & CEO**

## We're looking forward to fulfilling your home financing needs now and in the future.



**Current Loan Details**
for Joseph Ozormoor

**Loan Balance:**
$160,116

**Remaining Term:**
31 Years, 0 Months

**Interest Rate:**
4.75%

**Estimated Home Value:**
$339,000

**Estimated Cash Available:**
$100,000+\*



# 833-821-8986

(Please mention
**Reservation #013-924-486**
when you call)



To get started online, visit
**newrezonline.com**

© 2019 NewRez LLC. f/k/a New Penn Financial, LLC. Corp NMLS#: 3013 (www.nmlsconsumeraccess.org). Equal Housing Lender. All Rights Reserved. Doing business as NewRez Mortgage in the states of Arkansas and Texas. Website approval pending with the New York Department of Financial Services. Please see the reverse side of this letter for important licensing and disclosure information. Please note that NewRez LLC is not the servicer of your current mortgage loan account. If you have any questions about your mortgage loan account, please contact your mortgage servicer.

**EXHIBIT 8**

Emailed Requests to NewRez / LoanCare
to Correct Errors in Loan Principal Balance

Case 2:24-cv-11434-LJM-KGA ECF No. 1-1, PageID.67 Filed 05/30/24 Page 58 of 103

12/4/22, 9:35 PM      Xfinity Connect RE_ Request for Correct Outstanding Balance of HAMP Modified Mortgage (Ticket _ 1002020192) Printout

Payment Research <paymentresearch@myloancare.com>         12/17/2020 4:18 PM

# RE: Request for Correct Outstanding Balance of HAMP Modified Mortgage (Ticket # [          ])

To JOE OZORMOOR <jtozormoor@comcast.net>

| This message was sent securely using Zix® |
| --- |

Thank you for contacting us! Your inquiry has been forwarded to the team of specialists experienced in resolving your issue. Our hours of operation are from Monday-Friday 8:00 A.M.- 6:00 P.M. Eastern time. We will provide you a response as quickly as possible. For your reference the ticket number is [          ]. Sincerely Customer Communications Department NMLS ID 2916

**From:** JOE OZORMOOR [jtozormoor@comcast.net]
**Sent:** Thursday, December 17, 2020 04:12 PM
**To:** Research, Payment
**Subject:** Request for Correct Outstanding Balance of HAMP Modified Mortgage (Ticket # [          ])

IMPORTANT NOTICE - This message sourced from an external mail server outside of the Company.

Dear NewRez / LoanCare Customer Office Manager:

Please find attached to this email a request for a determination of the correct outstanding principal balance of my HAMP modified mortgage. The balance stated in the mortgage statements since the modification on July 1, 2010 is inconsistent with the principal balance of the mortgage as of February 1, 2010, and does not reflect monthly payments totaling $5766.66 made between February 1, 2010 and June 18, 2010, the principal balance shown on June 18, 2010, and the $10,000.00 reduction in the principal balance required as HAMP incentive benefit in the first six years following the modification.

I have the relevant mortgage statements and checkbook and bank records of the payments made between February 1, 2010 and June 30, 2010, as well as the mortgage statements from July 1, 2010 to December 1, 2016, that support this request for determination of the correct outstanding principal balance. .

Your verification of the correct principal balance of the referenced HAMP mortgage is urgently requested and needed for a refinancing of the HAMP modified mortgage currently under way. Thank you for your cooperation.

Sincerely,

Joseph Ozonmoor

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you
are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all
copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

---

This message was secured by Zix®.

Payment Research <paymentresearch@myloancare.com>                                    3/3/2021 11:12 PM

# RE: Urgent Request to LoanCare Customer Payment Research (Ticket # ▮▮▮▮▮▮▮▮ )

To JOE OZORMOOR <jtozormoor@comcast.net>

| This message was sent securely using Zix |
| --- |

Thank you for contacting us! Our office is currently closed. Your inquiry will be forwarded to the team of specialists experienced In resolving your issue when our office reopens. Our hours of operation are from Monday-Friday, 8:00 A.M.- 6:00 P.M. Eastern time. We will provide you a response as quickly as possible.
Sincerely,
Customer Communications Department
NMLS ID 2916

**From:** JOE OZORMOOR [jtozormoor@comcast.net]
**Sent:** Wednesday, March 3, 2021 11:08 PM
**To:** Research, Payment
**Subject:** Urgent Request to LoanCare Customer Payment Research (Ticket # ▮▮▮▮▮▮▮ )

IMPORTANT NOTICE – This message sourced from an external mail server outside of the Company.

Hello LoanCare Customer Payment Research Director;

Please respond to the enclosed request for an investigation of accounting errors in the principal balance of my HAMP-modified home loan (Loan #  ) as detailed in the attached letter and for a determination of the correct outstanding principal balance of the loan with requisite seriousness and urgency it demands.

Respectfully,

Joe Ozormoor

469 LaBelle Road

Grosse Pointe Farms, MI 48236

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

This message was secured by Zix®.

**JOSEPH T. OZORMOOR**
469 La Belle Road, Grosse Pointe Farms, MI 48236
Phone: (313) 924-5319. jtozormoor@comcast.net

March 3, 2021

NEWREZ / LOANCARE, LLC
ATTN: Payment Research Office of the Customer
P.O. Box 8068
Virginia Beach, VA 23450

Re:   <u>Second Request for Urgent Determination of the Correct
Principal Balance of My Home Loan, No.:</u> ███████

Dear LoanCare Customer Payment Research Office Director;

LoanCare promised in its December 16, 2020 response to my urgent request for a determination of the correct outstanding principal balance of my home mortgage that it was going to investigate errors uncovered in the accounting of the principal balance. The correct outstanding balance of the mortgage was urgently needed to refinance the mortgage during the prevailing low mortgage rates.

As of today, March 3, 2021, three more mortgage payment periods since my request, LoanCare has still not investigated the errors in the accounting of the principal balance. The failure of LoanCare to determine the correct outstanding balance of the mortgage has frustrated and impeded my efforts to refinance the mortgage while mortgage rates are much lower than my current mortgage rate.

The errors in the accounting of the principal balance of the mortgage originated from the modification of the mortgage in 2010 under the federal Homeowners' Affordable Modification Program (HAMP). GMAC Mortgage (GMAC) approved the application for modification of the mortgage under the HAMP in January 2010 after the month's mortgage payment, the 2009 city summer property tax and the quarterly installment of the hazard insurance had been paid (Exhibit 1). GMAC acknowledged that the mortgage payment was current and instructed that the February mortgage payment be skipped in order to qualify for the HAMP modification.

GMAC instituted a temporary repayment workout plan to begin on March 1, 2010, with a monthly payment of $1,155.07 and a principal balance of $218,076.71. (Exhibit 2 –(ii)). After five payments under the temporary repayment workout plan between March 1, 2010 and July 1, 2010, totaling $5,775.89 (last payment was $1155.61), the mortgage modification became effective on July 1, 2010 with the first payment of $1,020.43 and subsequent monthly payments, including escrow for tax and insurance, of $1,088.02.

Under the HAMP, homeowners whose mortgage was modified were eligible to earn incentive benefits of $1,000 a year in the first five years and $5,000 in the sixth year for making their monthly mortgage payments on time and never late beyond 90 days. The

HAMP incentive benefits are applied in repayment of the outstanding principal balance. This entitled the homeowners to a reduction in their outstanding principal balance of as much as $10,000, (Exhibit 3).

The errors in the principal balance consist of (i) unaccounted-for payments made under the temporary repayment workout plan between March 1 and July 1, 2010; (ii) overstated principal balance after application of the deferred principal in the amount of $28,472.43 required under the HAMP upon modification of the mortgage; and (iii) accrued HAMP incentive benefits of $5,166.66 not applied to reduce the principal balance between February 28, 2011 and February 28, 2016 (Exhibit 3). The errors contained in the principal balance suggest that excessive interest has been and is being assessed on the mortgage since the effective date of the HAMP modification, July 1, 2010.

An estimate of the errors in the accounting of the principal balance of the mortgage, including interest collected due to such errors up till March 31, 2021 is attached to this letter (*Attachment I*). Also attached to this letter to aid the investigation of the errors in the accounting of the principal balance are exhibits of the property tax and hazard insurance payments (Exhibit 1), copies of GMAC Mortgage Statements for January - July 1, 2010 (Exhibit 2), a letter regarding accrued HAMP Incentive Benefits (Exhibit 3), Bank Statements showing mortgage payment checks between January 1 and July 1, 2010 (Exhibit 4), and GMAC Mortgage 2010 Statement of Account (Exhibit 5),.

I request LoanCare to expeditiously conduct an investigation of the errors in the accounting of the principal balance of the HAMP-modified mortgage to determine the correct amount of the outstanding principal balance of my home loan.

Yours respectfully,

Joe. Ozormoor

**EXHIBIT 10**

Excerpts of MHA Directive 09-01 and MHA Directive 14-05

 **Home Affordable Modification Program**

## Supplemental Directive 09-01                    April 6, 2009

## Introduction of the Home Affordable Modification Program

### Background

On February 18, 2009, President Obama announced the Homeowner Affordability and Stability Plan to help up to 7 to 9 million families restructure or refinance their mortgages to avoid foreclosure. As part of this plan, the Treasury Department (Treasury) announced a national modification program aimed at helping 3 to 4 million at-risk homeowners – both those who are in default and those who are at imminent risk of default – by reducing monthly payments to sustainable levels. On March 4, 2009, the Treasury issued uniform guidance for loan modifications across the mortgage industry. This Supplemental Directive provides additional guidance to servicers for adoption and implementation of the Home Affordable Modification program (HAMP) for mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac (Non-GSE Mortgages).

Under the HAMP, a servicer will use a uniform loan modification process to provide a borrower with sustainable monthly payments. The guidelines set forth in this document apply to all eligible mortgage loans secured by one- to four-unit owner-occupied single-family properties.

In order for a servicer to participate in the HAMP with respect to Non-GSE Mortgages, the servicer must execute a servicer participation agreement and related documents (Servicer Participation Agreement) with Fannie Mae in its capacity as financial agent for the United States (as designated by Treasury) on or before December 31, 2009. The Servicer Participation Agreement will govern servicer participation in the HAMP program for all Non-GSE Mortgages. Servicers of mortgage loans that are owned or guaranteed by Fannie Mae or Freddie Mac should refer to the HAMP announcement issued by the applicable GSE.

The HAMP reflects usual and customary industry standards for mortgage loan modifications contained in typical servicing agreements, including pooling and servicing agreements (PSAs) governing private label securitizations. As detailed in the Servicer Participation Agreement, participating servicers are required to consider all eligible mortgage loans unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements. Participating servicers are required to use reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties in order to carry out any modification under the HAMP.

have this capacity must implement an escrow process within six months of signing the Servicer Participation Agreement. However, the servicer must ensure that the trial payments include escrow amounts and must place the escrow funds into a separate account identified for escrow deposits.

Servicers are encouraged to perform an escrow analysis prior to establishing the trial period payment. When performing an escrow analysis, servicers should take into consideration tax and insurance premiums that may come due during the trial period. When the borrower's escrow account does not have sufficient funds to cover an expense and the servicer advances the funds necessary to pay an expense to a third party, the amount of the servicer advance that is paid to a third party may be capitalized.

In the event the initial escrow analysis identifies a shortage – a deficiency in the escrow deposits needed to pay all future tax and insurance payments – the servicer must take steps to eliminate the shortage. Any actions taken by the servicer to eliminate the escrow shortage must be in compliance with applicable laws, rules and regulations, including, but not limited to, the Real Estate Settlement Procedures Act and the Truth in Lending Act.

## Compliance with Applicable Laws

Each servicer (and any subservicer it uses) must be aware of, and in full compliance with, all federal, state, and local laws (including statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions) – including, but not limited to, the following laws that apply to any of its practices related to the HAMP:

- Section 5 of the Federal Trade Commission Act, which prohibits unfair or deceptive acts or practices.
- The Equal Credit Opportunity Act and the Fair Housing Act, which prohibit discrimination on a prohibited basis in connection with mortgage transactions. Loan modification programs are subject to the fair lending laws, and servicers and lenders should ensure that they do not treat a borrower less favorably than other borrowers on grounds such as race, religion, national origin, sex, marital or familial status, age, handicap, or receipt of public assistance income in connection with any loan modification. These laws also prohibit redlining.
- The Real Estate Settlement Procedures Act, which imposes certain disclosure requirements and restrictions relating to transfers of the servicing of certain loans and escrow accounts.
- The Fair Debt Collection Practices Act, which restricts certain abusive debt collection practices by collectors of debts, other than the creditor, owed or due to another.

payments and brings the loan current, the annual compensation provided would be for ten months. The two months of compensation associated with the period of delinquency is not recoverable).

***Additional Data Requirements***

Additional data elements must be collected and reported as specified in Exhibit D. Some of these elements must be collected for all completed modifications regardless of the date of completion; guidance for collecting these elements will be forthcoming shortly. The requirement to collect these elements for trial modifications and for loans evaluated for a modification will be phased in as specified in Exhibit D.

## Reporting to Mortgage Insurers

Servicers must maintain their mortgage insurance processes and comply with all reporting required by the mortgage insurer for loans modified under the HAMP. Servicers should consult with the mortgage insurer for specific processes related to the reporting of modified terms, payment of premiums, payment of claims, and other operational matters in connection with mortgage loans modified under the HAMP.

Servicers are required to report successful HAMP modifications and the terms of those modifications to the appropriate mortgage insurers, if applicable, within 30 days following the end of the trial period and in accordance with procedures that currently exist or may be agreed to between servicers and the mortgage insurers.

Servicers must include the mortgage insurance premium in the borrower's modified payment, and must ensure that any existing mortgage insurance is maintained. Among other things, the servicer must ensure that the mortgage insurance premium is paid. In addition, servicers must adapt their systems to ensure proper reporting of modified loan terms and avoid impairing coverage for any existing mortgage insurance. For example, in the event that the modification includes principal forbearance, servicers must continue to pay the correct mortgage insurance premiums based on the gross UPB, including any principal forbearance amount, must include the gross UPB in their delinquency reporting to the mortgage insurer, and must ensure any principal forbearance does not erroneously trigger automatic mortgage insurance cancellation or termination.

## Transfers of Servicing

When a transfer of servicing includes mortgages modified under the HAMP, the transferor servicer must provide special notification to the transferee servicer. Specifically, the transferor servicer must advise the transferee servicer that loans modified under the HAMP are part of the portfolio being transferred and must confirm that the transferee servicer is aware of the special requirements for these loans, and agrees to assume the additional responsibilities associated with servicing them. A required form of assignment and assumption agreement must be used and is a part of the Servicer Participation Agreement.

### Borrower's Incentive Compensation

To provide an additional incentive for borrowers to keep their modified loan current, borrowers whose monthly mortgage payment (principal, interest, taxes, all related property insurance and homeowner's or condominium association fees but excluding mortgage insurance) is reduced through the HAMP by six percent or more and who make timely monthly payments will earn an annual "pay for performance" principal balance reduction payment equal to the lesser of: (i) $1,000 ($83.33/month), or (ii) one-half of the reduction in the borrower's annualized monthly payment for each month a timely payment is made. A borrower can earn the right to receive a "pay for performance" principal balance reduction payment for payments made during the first five years following execution of the Agreement provided the loan continues to be in good standing as of the date the payment is made. The "pay for performance" principal balance reduction payment will accrue monthly but will be applied annually for each of the five years in which this incentive payment accrues, prior to the first payment due date after the anniversary of the month in which the Trial Period Plan was executed. This payment will be paid to the mortgage servicer to be applied first towards reducing the interest bearing UPB on the mortgage loan and then to any principal forbearance amount (if applicable). Any applicable prepayment penalties on partial principal prepayments made by the government must be waived. Borrower incentive payments do not accrue during the Trial Period; however, on the first month of the modification, the borrower will accrue incentive payments equal to the number of months in the trial period.

If and when the loan ceases to be in good standing, the borrower will cease to be eligible for any further incentive payments after that time, even if the borrower subsequently cures his or her delinquency. The borrower will lose his or her right to any accrued incentive compensation when the loan ceases to be in good standing.

### Investor Payment Reduction Cost Share and Up Front Incentives

If the target monthly mortgage payment ratio is achieved, investors in Non-GSE Mortgages are entitled to payment reduction cost share compensation. This compensation equals one-half of the dollar difference between the borrower's monthly payment under the modification at the target monthly mortgage payment ratio and the lesser of (i) what the borrower's monthly payment would be at a 38 percent monthly mortgage payment ratio; or (ii) the borrower's pre-modification monthly payment. Payment reduction cost share compensation shall accrue monthly as the borrower makes each payment so long as the loan is in good standing as defined in these guidelines. This compensation will be provided for up to five years or until the loan is paid off, whichever is earlier.

Additionally, investors will receive a one-time incentive of $1,500 for each Agreement executed with a borrower who was current prior to the start of the Trial Period Plan. The one-time incentive is conditional upon at least a six percent reduction in the borrower's monthly mortgage payment.



Help for America's Homeowners

**Supplemental Directive 14-05**                     *November 26, 2014*

**Making Home Affordable® Program – MHA Program Updates**

In February 2009, the Obama Administration introduced the Making Home Affordable (MHA) Program to stabilize the housing market and help struggling homeowners obtain relief and avoid foreclosure. In March 2009, the U.S. Department of the Treasury (Treasury) issued uniform guidance for loan modifications by participants in MHA across the mortgage industry and subsequently updated and expanded that guidance. On March 3, 2014, Treasury issued version 4.4 of the Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages (*Handbook*), a consolidated resource for guidance related to the MHA Program for mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac (Non-GSE Mortgages).

This Supplemental Directive provides program updates to the Home Affordable Modification Program® (HAMP), Treasury Federal Housing Administration HAMP (Treasury FHA-HAMP) and Rural Development HAMP (RD-HAMP). Servicers that are subject to the terms of a servicer participation agreement and related documents (SPA) must follow the guidance set forth in this Supplemental Directive. This Supplemental Directive amends and supersedes the notated portions of the *Handbook* and, except as stated herein, the guidance set forth in this Supplemental Directive is effective April 1, 2015.

This guidance does not apply to mortgage loans that are owned or guaranteed by Fannie Mae or Freddie Mac (each, a GSE), insured or guaranteed by the Department of Veterans Affairs, and except as noted herein, insured or guaranteed by the Department of Agriculture's Rural Housing Service or the Federal Housing Administration.

This Supplemental Directive covers the following topics:

- Enhancement of Borrower "Pay for Performance" Incentives under HAMP, Treasury FHA-HAMP and RD-HAMP
- Recast of Loans Modified Under HAMP

**Enhancement of Borrower "Pay for Performance" Incentives under HAMP, Treasury FHA-HAMP and RD-HAMP**

Section 13.2 of Chapter II of the *Handbook* states that an eligible borrower in a HAMP Tier 1 permanent modification will earn a "pay for performance" principal balance reduction payment, payable annually for each of the first five years after the anniversary of the month in which the HAMP Tier 1 trial period plan effective date occurred, as long as the loan is in good standing and has not been paid in full at the time the incentive is paid.   Effective immediately, this Supplemental Directive provides that the HAMP Tier 1 "pay for performance" principal balance reduction payment is extended for one year and increased to $5,000 in year six.   In addition, borrowers in HAMP Tier 2 permanent modifications will earn a one-time "pay for performance" principal balance reduction payment of $5,000 in year six.

The $5,000 principal balance reduction payment will be payable the month after the sixth anniversary of the month in which the HAMP trial period plan effective date occurred, as long as the loan is in good standing and has not been paid in full, without regard to the number of current payments or whether the monthly mortgage payment was reduced through HAMP by six percent or more.

Section 3.2.2 of Chapter VI of the *Handbook* has also been updated to provide that the "pay for performance" principal balance reduction payment for permanent modifications under Treasury FHA-HAMP and RD-HAMP has also been extended for one year and increased to $5,000 in year six, in the same manner as above.

Effective April 1, 2015, servicers must provide written notice of the enhancement of "pay for performance" incentives to all HAMP borrowers in good standing on or before the fifth anniversary of their permanent modification effective date.   HAMP borrowers in good standing who have passed the fifth anniversary of their modification effective date prior to April 1, 2015 must be provided with this notice no later than April 1, 2015.   This notice need not be a separate notice and may be included with or incorporated into another notice sent to the borrower. Evidence of such written notice must be documented in the mortgage file and/or servicing system.

Updated HAMP payment processes implementing the terms of this Supplemental Directive are currently under development by the Program Administrator.   Upon implementation of the new payment processes, a true-up of incentives will be paid as appropriate for modifications that have passed the sixth anniversary.   Subsequent guidance on such processes will be provided on HMPadmin.com.

**Recast of Loans Modified Under HAMP**

This Supplemental Directive provides that, subject to investor guidelines, servicers must offer to re-amortize or "recast" an eligible HAMP Tier 1 borrower's unpaid principal balance (excluding deferred principal) over the remaining term of the loan.   Such offer must be made in writing, to all borrowers in good standing at the time of the offer, and may be conditioned on the loan being

current at the time of recast. Servicers may, but are not required to, offer to recast the loan if the loan was recast within the previous 12 months. The recast offer must be provided to the borrower at least 60 calendar days, but no more than 90 calendar days, prior to the sixth anniversary of the HAMP Tier 1 permanent modification effective date. Servicers must provide the recast at no additional charge or expense to the borrower. Servicers must notify borrowers of the recast and any changes to their monthly principal and interest payments subject to applicable law.

In addition, servicers may, but are not required to, offer to recast the unpaid principal balance for HAMP Tier 2 borrowers in good standing after the application of borrower incentives in year six in accordance with the guidance in this Supplemental Directive.

Each servicer must develop and implement a policy that specifies the action a borrower must take to be eligible for and to accept the recast offer, and this policy must be consistently applied across all similarly situated borrowers. In addition, servicers must provide sufficient time for the borrower to take such action, which must be no fewer than 30 calendar days from the date of the notice. The recast offer must specify the monthly principal and interest payment, as well as the total interest to be paid over the life of the loan as of the month following the sixth anniversary of the HAMP permanent modification, both with and without the effect of the recast. Upon a borrower's request, servicers must also provide amortization schedules. Servicers must maintain evidence of the recast offer provided to each borrower in the mortgage file and/or servicing system, as well as evidence of the borrower's acceptance or other response, if any.

Servicers are required to maintain reports of the recast offer acceptance and updated payment information with the effect of the recast, which must be provided to Treasury upon request. Servicers must also maintain such information as is necessary to monitor the borrower's performance under the modified loan after having received the recast. Updated processes implementing the terms of this Supplemental Directive are currently under development by the Program Administrator. Subsequent guidance on such processes will be provided on HMPadmin.com.

MHA Supplemental Directive 10-11 of September 21, 2010

**EXHIBIT 11**

**Help for America's Homeowners** 

## Supplemental Directive 10-11                    September 21, 2010

## Making Home Affordable Program – Dodd-Frank Certification Requirement

In February 2009, the Obama Administration introduced the Making Home Affordable (MHA) program, a plan to stabilize the housing market and help struggling homeowners get relief and avoid foreclosure. This Supplemental Directive provides guidance to servicers participating in MHA with respect to mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac on compliance with Section 1481(d) of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203) (the "Dodd-Frank Certification").

The Dodd-Frank Certification requirement provides that no person is eligible to begin receiving assistance under the MHA program if such person, in connection with a mortgage or real estate transaction, has been convicted within the last 10 years of any of the following:

- felony larceny, theft, fraud, or forgery;
- money laundering; or
- tax evasion.

The Dodd-Frank Certification requirement becomes effective today, September 21, 2010. Accordingly, subject to the note below, a servicer must obtain a completed Dodd-Frank Certification from each borrower in accordance with the guidance set forth in Exhibit A. The Interim Period described in Exhibit A is the period from September 22, 2010 through December 31, 2010. The Final Period described in Exhibit A is the period beginning January 1, 2011.

**Note: All HAMP and 2MP trial period plans, permanent HAMP, 2MP, Treasury FHA-HAMP and RD-HAMP modifications, offers relating to such trial period plans and permanent modifications, and HAFA short sale and deed in lieu of foreclosure (DIL) offers outstanding as of the date of this Supplemental Directive are not impacted by the Dodd-Frank Certification requirement.**

A form of the Dodd-Frank Certification is attached to this Supplemental Directive as Exhibit B and is available on www.HMPadmin.com. Further guidance on servicer obligations related to the Dodd-Frank Certification will be issued in a subsequent Supplemental Directive.

**EXHIBIT A**
**REQUIREMENTS FOR OBTAINING**
**DODD-FRANK CERTIFICATION**

| Program | Interim Period Requirement | Final Period Requirement |
|---|---|---|
| HAMP | Obtain completed Dodd-Frank Certification prior to permanent HAMP modification | Obtain completed Dodd-Frank Certification as part of Initial Package prior to offering HAMP trial period plan to borrower<br><br>For bankrupt borrowers where trial period is waived, obtain completed Dodd-Frank Certification prior to permanent HAMP modification |
| 2MP | If not obtained in connection with related HAMP evaluation, obtain completed Dodd-Frank Certification prior to permanent 2MP modification or extinguishment | If not obtained in connection with related HAMP evaluation, obtain completed Dodd-Frank Certification prior to offering 2MP trial period plan or prior to permanent 2MP modification or extinguishment, as applicable |
| HAFA | If not obtained in connection with related HAMP evaluation, obtain completed Dodd-Frank Certification prior to closing HAFA short sale or DIL | If not obtained in connection with related HAMP evaluation, obtain completed Dodd-Frank Certification prior to closing HAFA short sale or DIL |
| Treasury FHA-HAMP | Obtain completed Dodd-Frank Certification prior to reporting Treasury FHA-HAMP modification to Program Administrator | Obtain completed Dodd-Frank Certification prior to reporting Treasury FHA-HAMP modification to Program Administrator |
| RD-HAMP | Obtain completed Dodd-Frank Certification prior to reporting RD-HAMP modification to Program Administrator | Obtain completed Dodd-Frank Certification prior to reporting RD-HAMP modification to Program Administrator |
| FHA2LP | See applicable requirements published by FHA | See applicable requirements published by FHA |

May 27, 2021 LoanCare's Response to Second Notice of Error

**EXHIBIT 12**

 **LOANCARE**

3637 Sentara Way, Virginia Beach, VA 23452

May 27, 2021

Joseph T Ozormoor
Nenita Ozormoor
469 Labelle Rd
Grosse Pointe Farms MI 48236-2830

Re:  Loan number ████████████

Dear Mr. and Ms. Ozormoor:

Thank you for contacting us about your concerns. We are committed to providing exceptional service and seek to resolve your concerns to your satisfaction. The purpose of this letter is to provide you with an explanation of the issues raised in your correspondence.

Our records indicate that we previously responded to your concerns on January 15, 2021.  We have enclosed a copy of the prior response for your records.

Pursuant to your loan modification documents enclosed, the deferred balance included past due interest, escrow shortages, and fees.  A portion of the capitalized amount was for the past due principal.

Regarding incentives from the Home Affordable Modification Program (HAMP), as we previously advised, your prior servicer sent the enclosed letter dated June 9, 2016 regarding the incentive.  In this letter it listed prior incentives applied, as well as the requirements for the 6th year HAMP incentive.  These notifications were sent to you both on June 16, 2015, as well as July 11, 2015.

As indicated in both notifications, in order to receive the 6th year incentive, you were required to return the completed Dodd-frank Certification (Form 720) which was enclosed with the notification, or you would be at risk of losing eligibility for the incentive.  Due to not receiving the required form, the 6th year incentive was not credited toward the principal balance.

If you have further questions or concerns, or would like to request additional documents used in our research, please do not hesitate to contact me in the Office of the Customer, Monday through Friday from 8:00 a.m. to 5:00 p.m., Eastern Standard Time at (800) 919-5631 extension 8108.

Sincerely,

Denise Hoggard
Office of the Customer

Enclosures

**EXHIBIT 13**

July 6, 2021 Notice of Sale of Ownership to JP Morgan

July 06, 2021

˙ 0555020 000002646 09R4L2 092LLLL
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS, MI 48236



## Notice of Sale of Ownership of Mortgage Loan

Under federal law, borrowers are required to be notified in writing whenever ownership of a mortgage loan secured by their principal dwelling is sold, transferred or assigned (collectively, "sold") to a new creditor. This Notice is to inform you that your prior creditor has sold your loan (described below) to us, the new creditor identified below.

**\*\*NOTE: The new creditor identified below is not the servicer of your loan. The servicer (identified below) acts on behalf of the new creditor to handle the ongoing administration of your loan, including the collection of mortgage payments. Please continue to send your mortgage payments as directed by the servicer, and NOT to the new creditor. Payments sent to the new creditor instead of the servicer may result in late charges on your loan and your account becoming past due. Neither the new creditor nor the servicer is responsible for late charges or other consequences of any misdirected payment.**

**SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET FORTH BELOW. The servicer is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform the new creditor of your request and communicate to you any decision with respect to such request. \*\***

Please note that the sale of your loan to us may also result in a change of servicer. If this occurs, you will receive a separate notice, required under federal law, providing information regarding the new servicer.

### LOAN INFORMATION

| | |
|---|---|
| Date of Loan: | 10/24/2003 |
| Original Amount of Loan: | $250,000.00 |
| Date Your Loan was Sold to the New Creditor: | 06/17/2021 |
| Prior Loan Number: | ▮▮▮▮▮▮▮▮ |
| Address of Mortgaged Property: | 469 LABELLE RD<br>GROSSE POINTE FARMS, MI 48236 |

### SERVICER INFORMATION

| | |
|---|---|
| Name:<br>Mailing Address: | LoanCare, LLC<br>P.O. Box 8068<br>Virginia Beach, VA 23450 |
| Telephone Number (Toll free): | 800-274-6600 |
| Website: | |

Scope of responsibilities: The servicer is responsible for all ongoing administration of your loan, including receipt and processing of payments, resolution of payment related issues, and response to any other inquiries you may have regarding your loan.

## NEW CREDITOR INFORMATION

**Please be advised that all questions involving the administration of your loan (including questions related to payments, deferrals, modifications or foreclosures) should be directed to the servicer at the number above and/or the agent (if any) of the new creditor identified below, and not to the new creditor. The new creditor does not have access to information relating to the administration of your loan, and will not be able to answer most loan-related questions.**

Name:                                       J.P. Morgan Mortgage Acquisition Corp.

Mailing Address (not for payments):         383 Madison Avenue
                                            New York, NY 10179

Telephone Number:                           877-846-3631

Scope of responsibilities: The above-named new creditor holds legal title to your loan and is authorized to receive legal notices and to exercise (or cause an agent on its behalf to exercise) certain rights of ownership with respect to your loan.

**Partial Payments**

Your lender

_____   May accept payments that are less than the full amount due (partial payments) and apply them to your loan

X   May hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan

_____   Does not accept any partial payments

If this loan is sold, your new lender may have a different policy.

The transfer of the lien associated with your loan is currently recorded, or in the future may be recorded, in the public records of the local County Recorder's office for the county where your property is located. Ownership of your loan may also be recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.



LOAN
AQ200

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.



**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

**Notice of Error Resolution & Information Request Procedures**
The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

**If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:**

**Rushmore Loan Management Services LLC**
P.O. Box 52262
Irvine, California 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**EXHIBIT 15**

August 5, 2021 Rushmore's "Welcome" and Confirmation of NOE Letters



P.O. Box 55004
Irvine, CA 92619-2708
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

August 05, 2021

+ 0564666 000002131 09C0L7 00766673
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LA BELLE RD
GROSSE POINTE FARMS MI 48236-2830

**Your New Loan Number:** ▮▮▮▮▮▮
Property Address: 469 LABELLE RD
GROSSE POINTE FARMS, MI 48236

### NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING

Dear Mortgagor(s):

Welcome to Rushmore Loan Management Services. Our intention is to meet your loan servicing needs with efficient, prompt, and courteous service. Below you will find important information regarding how to contact us, make payments and set-up your online account. We encourage you to visit our website at www.rushmorelm.com and create an account after receiving this letter.

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from LoanCare, LLC to Rushmore Loan Management Services LLC (Rushmore), effective 08/02/2021. The transfer of the servicing of your mortgage does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your previous servicer send you this notice at least 15 days before the effective date of transfer. As your new servicer, we must also send you this notice no later than 15 days after this effective date or at closing.

Your previous servicer was LoanCare, LLC. The previous servicer's address is as follows: P.O. Box 8068, Virginia Beach, VA 23450. If you have any questions regarding the transfer of servicing from your previous servicer, call LoanCare, LLC Customer Service at 1-800-274-6600 between Monday - Friday 8 A.M. - 10 PM EST, Saturday 8 A.M. - 3 P.M., EST. This is a toll free number.



**Rushmore will be your new servicer. The business addresses for your new servicer are as follows:**

**Correspondence Address**
Rushmore Loan Management Services LLC
15480 Laguna Canyon Rd., Suite 100
Irvine, CA 92618

**Payment Address**
Rushmore Loan Management Services LLC
P.O. Box 514707
Los Angeles, CA 90051-4707

If you have any questions related to the transfer of servicing to Rushmore, call our Customer Care Department at **888-504-6700 between Monday through Thursday, 6 a.m. to 7 p.m., Friday 6 a.m. to 6 p.m. Pacific.** Please have your new loan number available when calling.

Rushmore offers several convenient ways to make your monthly payment. You can make your payment by phone at **888-504-6700** (a small fee may apply) or for free through our website at **www.rushmorelm.com**. Click on the upper banner titled **ACCOUNT LOGIN** and you can make a payment or sign-up for **Auto Draft Payments (ACH)**. Rushmore highly recommends this option, as it helps to prevent you from being late on any of your very important mortgage payments. You may also use Western Union Quick Collect (**Code City: Rushmore Code State: CA**). Western Union may charge a fee for this service.

The date that your present servicer LoanCare, LLC will stop accepting your payments is 08/01/2021. The date that Rushmore will begin accepting payments from you is 08/02/2021. Send all payments due on or after that due date to your new servicer. A billing statement from Rushmore will be mailed to you within 15 to 30 days.

If you are currently making your mortgage payment through a third-party entity (e.g., your on-line banking, government allotment, biweekly, or bill service), please take the necessary steps to advise them of your new loan number and change the payee to your new servicer. In the event of a payment change, it is your responsibility to notify the third-party of the new payment amount and new address to send the payments.

Rushmore Loan Management Services LLC requests that you make every effort to remit your monthly payments on the contractual due date shown on the note and your payment coupon.

If you wish to speak with a Housing Counseling Agency certified by the U.S. Department of Housing and Urban Development (HUD), please call the following toll-free number: (800) 569-4287.

For a full list of Rushmore's standard fees, please visit our website at https://www.rushmorelm.com/standard-fees/.

Important note: If you entered into an approved loss mitigation plan with your previous loan servicer, or if you had a loss mitigation application in process with your previous servicer, please call Rushmore immediately, toll-free, at 888-504-7300, to confirm that the loss mitigation plan information, or application and documentation, were properly transferred to Rushmore.

You should also be aware of the following information, which is referred to in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC §2605).

During the 60-day period following the effective date of transfer of the loan servicing, a loan payment received by your previous servicer before its due date may not be treated by the new servicer as late, and a late charge fee may not be assessed.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way:

Rushmore does not collect and remit any type of optional insurance to your insurance company. Any premiums for any such optional policy that was being collected and remitted by your previous servicer will be discontinued by Rushmore as of the effective date of the transfer of servicing. If you wish to retain such optional insurance, you should contact your optional product service provider about your ability to continue such insurance and how to make premium payments.

Should you have any questions, please contact our Customer Care Department at toll-free 888-504-6700, Monday through Thursday, 6 a.m. to 7 p.m., Friday 6 a.m. to 6 p.m. Pacific.

Sincerely,

Rushmore Loan Management Services LLC

**Please keep this document for your records.**

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

If you have any other mortgage loans secured by the same property not serviced by Rushmore, please contact your other servicer directly to discuss any possible loss mitigation options that may be available to you.

If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**LEGAL NOTIFICATION:** Rushmore Loan Management Services LLC may report information about your account to credit bureaus, Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### Notice of Error Resolution & Information Request Procedures
The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC (RLMS). Please keep this document for your records.

**If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:**

Rushmore Loan Management Services LLC
P.O. Box 52262
Irvine, California 92619-2262

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error or a request for specific information regarding the servicing of your loan
5. Current contact information so we may follow up with you

All written requests for specific information will be handled within 30 days of receipt. We will determine whether an error occurred within 30 days after receiving your notice of error and will correct any error promptly (Notices of error on payoff statements will be handled within 7 days). If additional time is needed to investigate your complaint or request, we may take up to 45 days but we will notify you of the extension within the original 30 days. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.



### HUD STATEMENT

Pursuant to section 169 of the Housing and Community Development Act of 1987, you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD approved housing counseling agencies by calling the HUD nationwide toll free telephone at 1-800-569-4287.

### Equal Credit Opportunity Act Disclosure

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

Rev 04/21

15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

08/05/2021

JOSEPH T OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS, MI 48236

RE:     Mortgagor(s) – JOSEPH T OZORMOOR & NENITA OZORMOOR
        Property Address – 469 LABELLE RD, GROSSE POINTE FARMS, MI 48236
        Loan Number – ████████

Dear JOSEPH T OZORMOOR,

Rushmore Loan Management Services LLC (Rushmore) is in receipt of your inquiry regarding the property
address referenced above dated 07/25/2021 and received by our office on 07/28/2021.

Your inquiry is currently under review. We realize the urgency of your inquiry and appreciate your patience.
We anticipate having a response issued to you within the next 30 business days.

Our records indicate that J.P. Morgan Mortgage Acquisition Corp. is the current owner of the loan. The
address of the owner of the loan is as follows:

J.P. Morgan Mortgage Acquisition Corp.

383 Madison Avenue
New York ,NY 10179

Should you have any questions, please contact us at the following phone number:

Customer Service Department
Monday through Thursday, 6:00 a.m. to 7:00 p.m. PST
Friday, 6:00 a.m. to 6:00 p.m. PST
Toll-free number: 1.888.504.6700

Sincerely,

Customer Correspondence Department
Rushmore Loan Management Services LLC

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that
purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt
against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation. If you
are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information
purposes only and does not constitute personal liability with respect to the debt.



**EXHIBIT 19**

May 10, 2022 Rushmore's 2nd Response to April 18, 2022 NOE



15460 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

May 10, 2022

Joseph T. Ozormoor
469 Labelle Rd
Grosse Pointe Farms, MI 48236

RE:     Mortgagor(s) – Joseph T. Ozormoor and Nenita Ozormoor
        Property Address – 469 Labelle Road, Grosse Pointe Farms, MI 48236
        Loan Number – ████████

Dear Joseph T. Ozormoor

Rushmore Loan Management Services LLC ("Rushmore") is responding to your inquiry dated
April 18, 2022, and received by our office on April 26, 2022, regarding the mortgage loan account
referenced above. We appreciate the opportunity to provide you with this written response.

Rushmore has determined that your correspondence is a Duplicative Notification, which we
complied with our obligation to respond on April 11, 2022. In our prior response, we advised the
new unpaid principal balance was $221,161.14, of which, $28,472.43 was deferred as a non
interest bearing balance to the end of the loan. This resulted in the post-modification principal
balance in the amount of $192,688.71, which consist of the unpaid principal balance in the amount
of $188,779.90, the delinquent interest in the amount of $3,184.79, and the negative escrow
balance of $742.02. In addition, we advised that the prior servicers, Ditech Financial addressed
your concerns with their response on June 9, 2016, and LoanCare on January 15, 2021, regarding
the HAMP incentive. We have enclosed the April 11, 2022, response for your reference.

Additionally, please contact your attorney for assistance on filing the lawsuit related to the HAMP
modification issues. As Rushmore is unable to assist you regarding this matter.

As of the date of this correspondence, the account is contractually due for the June 1, 2022,
monthly installment in the amount of 1,477.80. Should you have any additional questions, please
do not hesitate to contact us.

Customer Service Department
Monday through Friday, 8:00 a.m. to 6:00 p.m. Central Standard Time
Toll-free number: 1.888.504.6700

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that
purpose. If this debt is in or has been discharged in a bankruptcy proceeding, he advised this communication is not an attempt to collect the debt
against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation. If
you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for
information purposes only and does not constitute personal liability with respect to the debt.



15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2700 fax
www.rushmorelm.com

Sincerely,

Customer Correspondence Department
Rushmore Loan Management Services LLC

Enclosures (1)
By USPS

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation. If you are a confirmed Successor-in-Interest who has not assumed the mortgage loan obligation under State Law, this letter is being sent for information purposes only and does not constitute personal liability with respect to the debt.

**EXHIBIT 21**

Oct. 31, 2022 Shellpoint's "Welcome to Shellpoint" Letter

Shellpoint Mortgage Servicing
P.O. Box 619063
Dallas TX 75261-9063
DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS

October 31, 2022



 2-811-22995-0000788-001-1-000-010-000-000

JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LA BELLE RD
GROSSE POINTE FARMS MI 48236-2830

| CONTACT INFORMATION | |
| --- | --- |
| Correspondence: | P.O. Box 10826 Greenville, SC 29603 |
| Business Hours: | Monday – Friday 8:00AM-9:00PM Saturday 10:00AM-2:00PM |
| Phone: | 800-365-7107 |
| Fax: | 866-467-1137 |
| Website: | www.shellpointmtg.com |

Loan Number:
Property Address:   469 LABELLE ROAD
                    GROSSE POINTE FARMS MI 48236

Dear Homeowner(s):

Shellpoint Mortgage Servicing ("Shellpoint") welcomes you! We're pleased that the owner of your mortgage loan has entrusted us to service your account.

The servicing of your mortgage is being transferred. Effective October 25, 2022, the servicing of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Rushmore Loan Management Services LLC to Shellpoint.

Making your payments. Starting on October 25, 2022, make your mortgage payments payable to Shellpoint Mortgage Servicing at the address shown on the attached payment coupon. Your prior servicer, Rushmore Loan Management Services LLC, will stop accepting payments on October 25, 2022. Shellpoint will start accepting mortgage payments on October 25, 2022. Please use the attached coupon to mail us a check for your first payment. Starting with your next payment, we will send you regular monthly statements that include payment coupons.

Other payment options. Don't want to write monthly checks? Our other payment options include:
- Free automatic withdrawal from your bank account (also called "ACH").
- Online payments (via our website).
- Pay by phone (using either our automated phone system or by speaking with a live Customer Care representative).

Manage your mortgage online. To help you manage your mortgage account, we've created a set of easy-to-use online tools. Just use your computer, tablet, or phone to visit our website. If you haven't already done so, visit shellpointmortgageservicing.com and create an account with us. After you've set up your account, you can make payments, view and print statements, get answers to common questions, chat with a live representative, and more.

Call us if you need to at 800-365-7107. Our automated phone system gives you 24-hour access to your account, so you can make payments, check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with someone, our Customer Care Team is available Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM (Eastern time).

Were you working on a loss mitigation plan? If you were engaged in a loss mitigation plan or evaluation with your previous servicer – or if you applied for such a plan – please call us right away. Dial 866-825-2174 so we can make sure your plan information has been properly transferred to us. If necessary, we will contact your previous servicer to obtain missing documents.

10-M 101 Loan Number:           Version Date: 09202022

¿Hablas español? Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 800-365-7107.

Welcome to Shellpoint! We look forward to serving you, and we're committed to providing you with an excellent mortgage-servicing experience.

 Based on information we received, you recently had an escrow analysis which may have caused your payment to change. Please review your escrow information on the "Helping You Manage Your Mortgage" page.

Sincerely,

**Customer Care Team**
**Shellpoint Mortgage Servicing**
P.O. Box 10826
Greenville, SC 29603
800-365-7107

10-M 101 Loan Number: ███████ Version Date: 09202022

Detach and return with payment.

# shellpoint
A DIVISION OF NEWREZ

First payment due date: 11/01/2022
Monthly payment: $1,448.61

Loan ID: 0680165206
JOSEPH T OZORMOOR
NENITA OZORMOOR

Amount enclosed: $ _____

Enter the amount enclosed, and mail your payment check with this coupon to:
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊⑊

**EXHIBIT 26**

Jan. 3, 2023 Shellpoint's Response to Oct. 25, 2022 NOE



75 Beattie Place, Suite 300
Greenville, SC 29601

Toll Free Phone: 1-800-365-7107
Toll Free Fax: 1-866-467-1187

*Hours of Operation*
Monday-Friday 8:00AM 10:00PM
Saturday 8:00AM-3:00PM

January 03, 2023

Joseph T Ozormoor
Nenita Ozormoor
469 Labelle Rd
Grosse Pointe Farms, MI 48236

RE:     Reference #:
        Account #:
        Property:        469 Labelle Road
                         Grosse Pointe Farms, MI 48236

Dear Joseph T Ozormoor and Nenita Ozormoor:

We received your inquiry regarding the above referenced mortgage loan, and we have provided the requested information below.

BINOM Securitzation Trust 2022-RPL1 is currently the owner of the account number ending in 4308. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on the behalf of the owner referenced above on or about October 25, 2022. As of the date of this response, the unpaid principal balance is $150,030.71. Note that interest, payments, credits, and other allowable charges may cause the loan's balance to vary daily; therefore, you should contact Shellpoint at (866) 316-4706 to determine the exact balance.

Shellpoint has received your correspondence dated November 21, 2022, and December 08, 2022. In review of your correspondence and the correspondence provided by the prior servicer, Shellpoint's records show this issue has been addressed. In order to complete additional research, Shellpoint will require new information or supporting documentation in dispute of a prior response.

However, in regard to your prior request regarding your Homeowners Affordable Modification Program Incentive. Shellpoint has received documentation that your Prior Servicer attempted to reach you regarding a required Dodd-Frank Certificate that HAMP required. Shellpoint cannot guarantee that HAMP will still accept and issue this incentive. The approval and disbursement of the incentive is not the Servicer's determination. However, we will submit the request to HAMP, on your behalf. Please complete and return the enclosed Dodd-Frank Certificate so we may initiate the request on your behalf. We cannot submit the request to HAMP for approval and disbursement of your incentive without the completed form.

As the servicer, Shellpoint is not required to respond to inquiries related to origination, underwriting, subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan. Shellpoint is also not required to provide the original wet ink documents, nor the name and location of the document custodian. The information in the Assignment of Mortgage and Pooling and Servicing Agreement are matters of public record and you may be able to find it at www.sec.gov or through your county recorder's office. We are not required to provide documents relied upon that constitute confidential, proprietary, or privileged information.

1. The current owner of this loan is BINOM Securitzation Trust 2022-RPL1 and their address is:
   a. Mailing Address:  c/o Blackstone 601 Lexington Avenue New York, NY 10022
2. This loan was originated with GMAC Mortgage Corporation and was originated on October 24, 2003.
3. The Mortgage Electronic Registration System Mortgage Identification Number is 1000375-0558363701-5.
4. A Payoff Quote has been ordered and will be mailed to you within Five (5) to Seven (7) business days.

You have the right to request documentation supporting our determination that no error has occurred in the servicing of the loan.

Jan.11, 2023 Reply to Shellpoint with Renewed NOE/QWR

**EXHIBIT 27**

**JOSEPH T. OZORMOOR**
469 La Belle Road, Grosse Pointe Farms, MI 48236
Phone: (313) 924-5319. jtozormoor@comcast.net

January 11, 2023

Shellpoint Mortgage Servicing
ATTN: Escalation Department
P.O. Box 10826
Greenville, SC 29603

RE:     <u>**Notice of Error & Qualified Written Request**</u>
          <u>**HAMP-Modified Home Mortgage, Loan No.:** ███</u>
          <u>**Shellpoint Mortgage Servicing Account No.:** ███</u>

Dear Escalation Dept. Mgr.:

This is to acknowledge the correspondence from Shellpoint Mortgage Servicing (Shellpoint) dated January 3, 2023 and received on January 9, 2023 in connection with the Notice of Error (NOE) and Qualified Written Request (QWR) served on Shellpoint on November 21, 2022 relating to the servicing of the above loan, Loan No. 0037475084, secured by property at 469 LaBelle Road, Grosse Pointe Farms, MI 48236.

Shellpoint had previously responded to this inquiry with correspondence dated November 22, 2022 and received December 5, 2022 in which Shellpoint identified BINOM Securitization Trust 2022 RPL1 (BST) as the current holder of the loan, without disclosing the address and phone number of the said holder. Regarding the issue of the earned HAMP pay-for-performance incentives not credited to the principal balance when they were due, Shellpoint indicated that it has documentation that the prior Servicer attempted to reach me regarding a Dodd-Frank Certificate (DFC) required by HAMP.

In my letter dated December 8, 2022 in reply to Shellpoint's correspondence received on December 5, 2022, it was pointed out that Shellpoint did not provide the address and phone number of BST as requested in the QWR. I also stated that a DFC is not needed to credit the earned HAMP pay-for-performance incentives to the-modified loan principal balance because the HAMP-modified loan is not subject to the DFC requirement.

On December 14, 2022 Shellpoint sent a letter with a local Detroit, MI area P.O. Box address and provided a Greenville, SC P.O. Box address for BST. Shellpoint indicated it was working to gather the rest of the information requested in the QWR and would forward the information as soon as possible.

On December 30, 2022, a baffling "Dear Executor" letter dated December 21, 2022 was received from Shellpoint expressing its "deepest sympathies for your recent loss" and stating "in order to process your request on the above referenced account serviced by Shellpoint Mortgage Servicing, we ask that you forward a copy of the death certificate to us." and demanding recorded instrument showing proof of tenancy by the entirety and joint

tenancy, affidavit of heirship, property agreement incident to a divorce, and evidence of quitclaim deed transferred from living spouse or parent. I still cannot discern the reason for or the purpose of this correspondence from Shellpoint. *See enclosed copy.*

On January 3, 2023, another letter was received from Shellpoint dated December 27, 2022 addressed to "Dear Homeowners" and stating that the letter was in response to a recent inquiry regarding the referenced account serviced by Shellpoint on behalf of BINOM Securitization Trust 2022 RPL1. The letter stated that Shellpoint is working to gather the information requested in the inquiry and will forward it as soon as possible.

This last correspondence from Shellpoint dated January 3, 2023 and received on January 9, 2023 states that documentation supporting Shellpoint's "determination that no error has occurred in the servicing of the loan" can be requested from Shellpoint. Consequently, I hereby respectfully request from Shellpoint the documentation supporting its determination that no error occurred in the servicing of the subject HAMP-modified mortgage loan and that all HAMP pay-for-performance incentives due on the HAMP-modified mortgage were duly and fully applied to reduce the principal balance and the interest payments on the modified mortgage have been accurate and free of error, and that the monthly mortgage statements have been accurate and free of error.

I have enclosed in this correspondence a letter from Ditech that establishes that less than the required $1,000 in annual earned pay-for-performance incentive amount was credited to the subject HAMP-modified loan principal balance in March 2011 and 2014, and that the 6th Year incentive amount of $5,000 due in March 2016 was not credited to the principal balance. These unpaid incentive amounts have up to this date not been accounted for and have resulted in the error complained of in the principal balance and in inaccurate interest payments and monthly mortgage statements.

I have also enclosed in this correspondence, a copy of the Treasury Department's MHA Supplemental Directive 10-11 that implemented the DFC requirement for new HAMP borrowers effective September 21, 2010. The Supplemental Directive explicitly exempted from its impact HAMP mortgage modifications that were already completed prior to its effective date. Supplemental Directive 09-01 of April 5, 2009 (*not provided in this correspondence*) requires Servicers and Sub-servicers of HAMP-modified mortgage loans to be aware of and comply with all the guidelines and rules that relate to HAMP-modified mortgage loans.

Consequently, I demand that Shellpoint correct the error pointed out above in the principal balance of my HAMP-modified mortgage loan and account for excess interest payments resulting from the error in the principal balance. Otherwise, I will have no other choice than to take the matter to court.

Sincerely,

Joseph Ozormoor

**EXHIBIT 28**

Shellpoint's Demands for Death Certificate in Response to NOE

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



## shellpoint
A DIVISION OF NEWREZ

Phone Number: 800-365-7107
Fax: 866-467-1137
www.shellpointmtg.com
Mon – Thurs: 8:00AM-9:00PM
Fri: 8:00AM-9:00PM
Sat: 10:00AM-2:00PM



Loan Number: ███████

01/17/2023

S-SFRECS20 L-108 R-101
PHCEX600202521 - 728272780 I05815
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS MI 48236-2830

Dear Executor:

Please accept our deepest sympathies for your recent loss.

In order to process your request on the above referenced account serviced by Shellpoint Mortgage Servicing, we ask that you forward a copy of a death certificate to us. You may fax the requested document to (866) 467-1137 or mail to the below address:

> Shellpoint Mortgage Servicing
> Attn: Special Servicing Operations
> P.O. Box 10826
> Greenville, SC 29603-0826

If the deceased customer had a home loan for a property in California or Washington, it is important that you provide the death certificate within 30 days from the date of this letter.

If you are a successor in interest for the deceased party for this account, we ask that you also provide one of the following set of documents.

1. Death certificate and executed will or court order.
2. Recorded instrument showing proof of tenancy by the entirety and joint tenancy (in a jurisdiction where probate not required to establish successor).
3. Affidavit of heirship and death certificate (in a jurisdiction where probate not required to establish successor).
4. Property agreement incident to a divorce proceeding (in a jurisdiction that doesn't require a deed conveying the interest) and divorce decree and executed separation agreement.
5. Evidence of quitclaim deed transferred from living spouse or parent.

Once we receive this information, we will be able to discuss the account and the options available to you as the successor in interest.

For further assistance, you may contact us at 800-365-7107. Our representatives are available Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM EST.

Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero 800-365-7107.

Sincerely,

Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001 A 0688165286 0160,0MR0



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**Phone Number:** 800-365-7107
Fax: 866-467-1137
www.shellpointmtg.com
Mon - Thurs: 8:00AM-9:00PM
Fri: 8:00AM-9:00PM
Sat: 10:00AM-2:00PM



S-SFRECS20 L-108 R-101
PHHWMX00203971 - 731020131 I09180
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS MI 48236-2830

| Loan Number: | ██████████ |

02/14/2023

Dear Executor:

Please accept our deepest sympathies for your recent loss.

In order to process your request on the above referenced account serviced by Shellpoint Mortgage Servicing, we ask that you forward a copy of a death certificate to us. You may fax the requested document to (866) 467-1137 or mail to the below address:

> Shellpoint Mortgage Servicing
> Attn: Special Servicing Operations
> P.O. Box 10826
> Greenville, SC 29603-0826

If the deceased customer had a home loan for a property in California or Washington, it is important that you provide the death certificate within 30 days from the date of this letter.

If you are a successor in interest for the deceased party for this account, we ask that you also provide one of the following set of documents.
1. Death certificate and executed will or court order.
2. Recorded instrument showing proof of tenancy by the entirety and joint tenancy (in a jurisdiction where probate not required to establish successor).
3. Affidavit of heirship and death certificate (in a jurisdiction where probate not required to establish successor).
4. Property agreement incident to a divorce proceeding (in a jurisdiction that doesn't require a deed conveying the interest) and divorce decree and executed separation agreement.
5. Evidence of quitclaim deed transferred from living spouse or parent.

Once we receive this information, we will be able to discuss the account and the options available to you as the successor in interest.

For further assistance, you may contact us at 800-365-7107. Our representatives are available Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM ET.

Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero 800-365-7107.

Sincerely,

Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P 000001 A-0580165208 0102.inam

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED





Phone Number: 800-365-7107
Fax: 866-467-1137
www.shellpointmtg.com
Mon – Thurs: 8:00AM-9:00PM
Fri: 8:00AM-9:00PM
Sat: 10:00AM-2:00PM



|ₗₗₗ||¹ₗₗₗ·ₗ||||ₗₗₗ|ₗ·ₗ|¹ₗₗₗₗ|·ₗₗₗ|||||¹ₗ||||ₗₗₗ·ₗₗ·ₗₗₗ¹ₗₗ|ₗ|ₗ|
S-SFRECS20 L-108 R-101
PHMUAX00203643 - 734029146 I08106
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS MI 48236-2830

Loan Number: ▮▮▮▮▮▮▮▮

03/13/2023

Dear Executor:

Please accept our deepest sympathies for your recent loss.

In order to process your request on the above referenced account serviced by Shellpoint Mortgage Servicing, we ask that you forward a copy of a death certificate to us. You may fax the requested document to (866) 467-1137 or mail to the below address:

> Shellpoint Mortgage Servicing
> Attn: Special Servicing Operations
> P.O. Box 10826
> Greenville, SC 29603-0826

If the deceased customer had a home loan for a property in California or Washington, it is important that you provide the death certificate within 30 days from the date of this letter.

If you are a successor in interest for the deceased party for this account, we ask that you also provide one of the following set of documents.

1. Death certificate and executed will or court order.
2. Recorded instrument showing proof of tenancy by the entirety and joint tenancy (in a jurisdiction where probate not required to establish successor).
3. Affidavit of heirship and death certificate (in a jurisdiction where probate not required to establish successor).
4. Property agreement incident to a divorce proceeding (in a jurisdiction that doesn't require a deed conveying the interest) and divorce decree and executed separation agreement.
5. Evidence of quitclaim deed transferred from living spouse or parent.

Once we receive this information, we will be able to discuss the account and the options available to you as the successor in interest.

For further assistance, you may contact us at 800-365-7107. Our representatives are available Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM ET.

Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al número 800-365-7107.

Sincerely,

Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P 1090001  A 00891652U6 0102J0400

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**shellpoint**

Phone Number: 800-365-7107
Fax: 866-467-1137
www.shellpointmtg.com
Mon – Thurs: 8:00AM-9:00PM
Fri: 8:00AM-9:00PM
Sat: 10:00AM-2:00PM



S-SFRECS20 L-108 R-101
PHRR3R00301427 - 736740074 I03549
JOSEPH T OZORMOOR
NENITA OZORMOOR
469 LABELLE RD
GROSSE POINTE FARMS MI 48236-2830

| Loan Number: | ▮▮▮▮▮ |

04/07/2023

Dear Executor:

Please accept our deepest sympathies for your recent loss.

In order to process your request on the above referenced account serviced by Shellpoint Mortgage Servicing, we ask that you forward a copy of a death certificate to us. You may fax the requested document to (866) 467-1137 or mail to the below address:

> Shellpoint Mortgage Servicing
> Attn: Special Servicing Operations
> P.O. Box 10826
> Greenville, SC 29603-0826

If the deceased customer had a home loan for a property in California or Washington, it is important that you provide the death certificate within 30 days from the date of this letter.

If you are a successor in interest for the deceased party for this account, we ask that you also provide one of the following set of documents.
1. Death certificate and executed will or court order.
2. Recorded instrument showing proof of tenancy by the entirety and joint tenancy (in a jurisdiction where probate not required to establish successor).
3. Affidavit of heirship and death certificate (in a jurisdiction where probate not required to establish successor).
4. Property agreement incident to a divorce proceeding (in a jurisdiction that doesn't require a deed conveying the interest) and divorce decree and executed separation agreement.
5. Evidence of quitclaim deed transferred from living spouse or parent.

Once we receive this information, we will be able to discuss the account and the options available to you as the successor in interest.

For further assistance, you may contact us at 800-365-7107. Our representatives are available Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM ET.

Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero 800-365-7107.

Sincerely,

Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P 1068001 A-0680166706-0110260400



**PRESS FIRMLY TO SEAL**

9589 0710 5270 0884 7239 86

*Retail*

U.S. POSTAGE PAID
PM
GROSSE POINTE FARMS
MI 48236
APR 27, 2024

$17.90

29601

RDC 03

R2305P151076-82

**PRIORITY MAIL**

★ MAIL ★

- DATE OF DELIVERY SPECIFIED*
- USPS TRACKING™ INCLUDED*
- INSURANCE INCLUDED *
- PICKUP AVAILABLE
  * Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

**PRIORITY MAIL ★**

UNITED STATES
POSTAL SERVICE ®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**FROM:**

Joseph T. Ozormoor
469 LaBelle Road
Grosse Pointe Farms, MI 48236

**TO:**

Shellpoint Mortgage Servicing
ATTENTION: Legal Department
75 Beattie Place, Ste 300
Greenville, SC 29601

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

UNITED STATES
POSTAL SERVICE ®



★ MAIL ★

FROM:

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PM
GROSSE POINTE FARMS
MI 48236
APR 27, 2024
29601
$17.90
R2305P151076-62

📅 DATE OF DELIVERY SPECIFIED*

📶 USPS TRACKING™ INCLUDED*

$ INSURANCE INCLUDED*

🚚 PICKUP AVAILABLE

* Domestic only

PRIORITY® MAIL ★

UNITED STATES POSTAL SERVICE®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

Joseph T. Ozormoor
469 LaBelle Road
Grosse Pointe Farms, MI 48236

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

TO:

New Rez, LLC
ATTENTION: Legal Department
75 Beattie Place, Suite 300
Greenville, SC 29601

VISIT US   Label 228, March 2016   FOR DOMESTIC AND INTERNATIONAL USE   UNITED STATES
ORDER FREE SUPPLIES ONLINE   POSTAL SERVICE®

# Register of Actions

## Case No. 24-004233-CZ

| Party Information | | |
|---|---|---|
| | | Attorneys |
| Defendant | **J.P. MORGANMORTGAGE ACQUISITION CORP.** | |
| Defendant | **LOANCARE, LLC A/K/A NEW RESIDENTIAL MORTGAGE, LLC, A DIVISION OF NEW REZ, LLC** | |
| Defendant | **NEW RESIDENTIAL MORTGAGE INVESTMENT CORP. A/K/A RITHM CAPITAL CORP.** | |
| Defendant | **NEW REZ, LLC, A DIVISION OF NEW RESIDENTIAL MORTGAGE INVESTMENT CORP.** | |
| Defendant | **RUSHMORE LOAN MANAGEMENT SERVICES, LLC** | |
| Defendant | **SHELLPOINT MORTGAGE SERVICING, DBA FOR NEW REZ, LLC** | |
| Defendant | **U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR BINOM SECURITIZATION TRUST 2022 RPL1** | |
| Plaintiff | **OZORMOOR, JOSEPH** | Pro Se |

### Events & Orders of the Court

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 03/20/2024 | **Complaint, Filed** |
| 03/20/2024 | **Service Review Scheduled** |
| 03/20/2024 | **Status Conference Scheduled** |
| 03/20/2024 | Case Filing Fee - Paid |
| 05/14/2024 | Proof of Service, Filed |
| 05/14/2024 | Proof of Service, Filed |
| 05/14/2024 | Proof of Service, Filed |
| 05/14/2024 | Proof of Service, Filed |
| 05/23/2024 | Proof of Service, Filed |
| 05/23/2024 | Proof of Service, Filed |
| 06/20/2024 | **Status Conference** (8:00 AM) (Judicial Officer Gillis, John H., Jr.) |

### Financial Information

| | | | |
|---|---|---|---|
| **Plaintiff** OZORMOOR, JOSEPH | | | |
| Total Financial Assessment | | | 175.00 |
| Total Payments and Credits | | | 175.00 |
| **Balance Due as of 05/30/2024** | | | **0.00** |
| 03/20/2024 | Transaction Assessment | | 175.00 |
| 03/20/2024 | eFiling | Receipt # 2024-20625 | Joe Ozormoor | (175.00) |