UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DOUTHERN DIVISION

| | |
|---|---|
| JOSEPH OZORMOOR ) | **AMENDED COMPLAINT** |
| ) | |
| Plaintiff in Pro Per ) | Case No.: 2:24-cv-11434-LJM-KGA |
| v ) | |
| ) | HON. LAURIE J. MICHELSON |
| SHELLPOINT MORTGAGE SERVICING, A DBA FOR ) | |
| NEW REZ, LLC; ) | |
| ) | |
| U.S. BANK TRUST NATIONAL ASSOCIATION AS ) | |
| TRUSTEE  FOR BINOM SECURITIZATION TRUST ) | |
| 2022 RPL1; ) | |
| ) | |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC, ) | |
| AGENT OF JP MORGAN MORTG ACQUISIITON CORP) | |
| ) | |
| J.P. MORGAN MORTGAGE ACQUISITION CORP.; ) | |
| ) | |
| LOANCARE, LLC A/K/A NEW RESIDENTIAL ) | |
| MORTGAGE, LLC, A DIVISION OF NEW REZ , LLC; ) | |
| ) | |
| NEW REZ, LLC, A DIVISION OF NEW RESIDENTIAL ) | |
| INVESTMENT CORP; AND ) | |
| ) | |
| NEW RESIDENTIAL INVESTMENT CORP. A/K/A ) | |
| RITHM CAPITAL CORP. ) | |
| ) | |
| Joint and Several Defendants ) | |
| ) | |

Joseph Ozormoor, Plaintiff *Pro Se*
469 LaBelle Road
Grosse Pointe Farms, MI 48236
(313) 924-5319 / (313) 949-2656 (mobile)
jtozormoor@comcast.net

J. Travis Mihelick (P73050)
755 West Big Beaver Road, Suite 1900
Troy, MI 48084
(248) 203-1655 / (248) 647-5210 (fax)
travis.mihelick@dinsmore.com

Attorney for Defendants

**PRELIMINARY STATEMENT**

    **1.**    Plaintiff Joseph Ozormoor (Plaintiff) brings this lawsuit pro se to recover

compensatory, exemplary, and statutory damages and for injunctive relief against Shellpoint

Mortgage Servicing, U.S. Bank Trust National Association as sole trustee of BINOM Securitization Trust 2022 RPL1, Rushmore Loan Management Services, LLC, J.P. Morgan Mortgage Acquisition Corp, LoanCare, LLC, New Rez, LLC, and New Residential Investment Corp. a.k.a. Rithm Capital Corp. (collectively "Defendants"), jointly and severally, for violations of law and Plaintiff's contractual rights that have caused financial and emotional harm to Plaintiff in the servicing of his home mortgage loan modified under the Home Affordable Modification Program ("HAMP").

2.      This action involves the willful and knowing failure by Defendants to credit to Plaintiff's modified mortgage loan account more than half of the $10,000 HAMP pay-for-performance principal-balance-reduction incentives (HAMP incentives) he is entitled to by virtue of his mortgage loan never becoming delinquent after modification, resulting in inaccurate principal balance which prevented Plaintiff from refinancing the modified loan when mortgage rates fell well below the HAMP-fixed rate of 4.75% due to Defendants' failure  to provide an accurate estimate of the payoff balance.

3.      Plaintiff brings this action to recover compensatory and exemplary damages for breach of contract and the covenant of good faith and fair dealing against Defendants for non-compliance with the terms of Plaintiff's mortgage loan Modification Agreement.

4.       Plaintiff brings this action also to recover compensatory and statutory damages for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. (as amended) and the implementing regulations, 12 C.F.R. § 1024.35,  which require mortgage servicers to respond to borrower's communications about errors in his account within 30 days by either correcting the errors in the accounts or explaining why the account information was not in error. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35.

5.      Plaintiff brings this action also to recover compensatory and statutory damages for

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. and the Michigan Collections Practices Act ("MCPA"), MCL 445.252, both of which prohibit debt collectors from using any false, deceptive or misleading representations or means in connection with the collection of any debt.

6.      Plaintiff brings this action also to recover compensatory and statutory damages for violations of the Michigan Mortgage Brokers, Lenders and Servicers Licensing Act ("MBLSLA"), MCL § 445.1651 which prohibits fraud, deceit, or material misrepresentation in connection with a mortgage transaction by a broker, lender or servicer.

7.      Plaintiff brings this action also to recover compensatory and exemplary damages for fraudulent misrepresentation and concealment by Defendants of the amount of HAMP incentives to which Plaintiff is entitled and Plaintiff's eligibility to receive the sixth year HAMP incentives, and for conversion of Plaintiff's HAMP incentives to Defendants' use and benefit.

8.      Plaintiff brings this action also to recover compensatory and exemplary damages for unjust enrichment of Defendants at Plaintiff's expense due to HAMP incentives not credited to Plaintiff's loan and extra interest collected and accruing on the loan as a result, and for injunctive relief enjoining Defendants from carrying forward the errors in Plaintiff's loan account.

9.      Proximate damages sustained by Plaintiff as a result of Defendants' willful and knowing conduct described herein include: (i) loss of $5,166.66 in HAMP incentives not applied to reduce the principal balance of Plaintiff's modified mortgage loan resulting in a higher principal balance; (ii) extra interest cost due to the amount of incentives not applied to reduce the principal balance, totaling about $2,068.47 as of the filing date of this action; (iii) prevented reduction in interest cost of the modified loan, estimated at $142,279.26 at maturity, due to Defendants' failure to provide an accurate estimate of the payoff balance to refinance the loan in January 2021 at a rate

3

of 2.5%, compared to the HAMP-fixed rate of 4.75%; and (iv) emotional distress manifested by extreme frustration and anger in being prevented by Defendants from significantly reducing the interest cost of the modified loan through refinancing while rates were much lower than the HAMP-fixed rate of 4.75%, and unsettling anxiety about the errors in the principal balance becoming permanent without remediation and restitution for interest overpayments because of frequent transfers of ownership and servicing of the mortgage that thwarted, frustrated and impeded Plaintiff's efforts to bring action against Defendants to remediate the errors.

## JURISDICTION AND VENUE.

10.     The Court has original subject matter jurisdiction of this case pursuant to 28 USC § 1331 as the Complaint involves claims under federal law under the Real Estate Settlement Procedures Act (RESPA) and Regulation X, (12 U.S.C. § 2601 *et seq*. and 12 C.F.R. § 1024,35); the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.; and the federal Home Affordable Modification Program (HAMP). The court also has supplemental jurisdiction over state law claims related to the federal claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in the Eastern District of Michigan pursuant to 28 USC § 1391(b)(2) because the property that is the subject of the instant action is situated within this District.  .

## PLAINTIFF

12.     Plaintiff Joseph Ozormoor is a citizen of the state of Michigan and a signatory on a promissory note for a loan from GMAC Mortgage, LLC for the purchase of a residential property located at 469 LaBelle Road in Grosse Pointe Farms, Michigan, 48236 (the "Property").

13.     Plaintiff is a natural person and consumer as defined in RESPA, § 2602(5), the FDCPA, § 1692a(3); and the Michigan Collections Practices Act, MCL 445.251(d).

## DEFENDANTS

14.     Defendant Shellpoint Mortgage Servicing ("Shellpoint"), a servicing dba of New Rez, LLC a/k/a NewRez, is a nationwide residential mortgage servicer with its business address as P.O. Box 10826, Greenville, SC 29603-0826. Shellpoint has been servicing Plaintiff's HAMP modified mortgage loan since October 25, 2023.

15.     Defendant U.S. Bank Trust National Association (USBTNA) is a Delaware Corporation  with its headquarters in St. Paul, MN. USBTNA is the current holder of Plaintiff's mortgage loan since about October 25, 2022 in its sole capacity as trustee of BINOM Securitization Trust 2022 RPL1 (BINOM), a Delaware statutory loan securitization trust.  At all times relevant to this litigation,  USBTNA retained Shellpoint to service Plaintiff's loan.

16.     Defendant Rushmore Loan Management Services, LLC ("Rushmore") is a nationwide residential mortgage servicer based in Irvine, CA. At all times pertinent in this Complaint, Rushmore was the servicer of Plaintiff's mortgage loan until October 25, 2022.

17.     Defendant J.P. Morgan Mortgage Acquisition Corp (JP Morgan) is a New York corporation in the mortgage banker and loan correspondence business, based in New York, NY 10179. Upon information and belief, J.P. Morgan purchased the legal title to Plaintiff's modified mortgage loan on June 17, 2021. At all times relevant in this Complaint,  J.P. Morgan retained Rushmore to service Plaintiff's mortgage loan from August 2, 2021 until October 25, 2022.

18.     Defendant LoanCare, LLC (LoanCare) a/k/a New Residential Mortgage, LLC, a division of New Rez, LLC (NewRez) with its headquarters in Virginis Beach, VA and serviced Plaintiff's HAMP-modified mortgage loan from June 1. 2019 till August 2, 2021.

19.     Defendant New Rez, LLC a/k/a NewRez, dba Shellpoint Mortgage Servicing, is a wholly-owned subsidiary and an alter ego of New Residential Investment  Corporation (NRIC) and

a nationwide mortgage originator and servicer with its headquarters in Fort Washington, PA. Upon information and belief, on June 1, 2019, NewRez acquired the assets of Ditech Financial Services which acquired the assets of Ally Financial f/k/a GMACM, the original owner of Plaintiff's mortgage loan, and thereby became the owner of Plaintiff's HAMP-modified mortgage loan.

20.     Defendant New Residential Investment Corp. (NRIC) is a mortgage investment trust. Upon information and belief, NRIC changed its name to Rithm Capital Corp. (RCC) effective August 2, 2022.

21.     Defendants Shellpoint, LoanCare, NewRez and NRIC a/k/a RCC are affiliated entities and at various times pertinent to this litigation operated as   NRIC a/k/a RCC "umbrella enterprise" with regard to the servicing of Plaintiff's HAMP-modified mortgage loan. Thus, an act by any of the entities with regard to Plaintiff's loan constitutes an act by the "umbrella enterprise".

22.     Upon information and belief, at all times relevant in this litigation, Defendants Shellpoint, Rushmore, and LoanCare were acting as agents of the respective holders of Plaintiff's mortgage loan who retained them as servicers of the mortgage loan and were acting within the course and scope of their agency with the full knowledge and consent of the respective principals.

23.     At all times relevant in this litigation, Shellpoint, Rushmore, NewRez and LoanCare transacted business in the State of Michigan by use of the mail as "servicers" of Plaintiff's HAMP-modified "federally related mortgage loan" as those terms are defined in RESPA, 12 U.S.C. §§ 2602(1) & 2605(i)(2), and the MBLSLA, MCL 445.1651a, and as "debt collectors" of the Plaintiff's mortgage "debt" as those terms are defined in the FDCPA, 15 U.S.C. §§ 1692a(5) and (6) and the MCPA, MCL 445.251(b).

## BACKGROUND FACTS

24.     On October 1, 2003, Plaintiff obtained a $250,000 loan from GMAC Mortgage, LLC

(GMACM) for the purchase of a residential property in the City of Grosse Pointe Farms in Wayne County, Michigan. The loan was secured by a mortgage on the property.

25.     In June 2009, Plaintiff applied to GMACM for a modification of the mortgage loan under the federal Home Affordable Modification Program (HAMP) governed by the Treasury's Making Homes Affordable Guidelines Supplemental Directive 09-01 (MHA Directive 09-01).

26.     GMACM approved Plaintiff's mortgage for a HAMP modification in January 2010 while the mortgage was current with a principal balance of $218,076.71 and suspended the original monthly mortgage payment of $1478.85, effective February 1, 2019 and instituted a Trial Period Plan (TPP) monthly payment of $1155.07, effective March 1, 2010.

27.     On June 9, 2010, GMACM offered Plaintiff a permanent HAMP Modification Agreement ("HMA" or the Agreement) that extended the maturity date of the modified loan from November 1, 2033 to June 1, 2050, and increased the unpaid principal balance by $3084,43 from $218,076.71 to $221,161.14. The Agreement does not explain how the TPP monthly payment of $1155.07, slightly less than the original monthly mortgage payment of $1478.85 by only $323.78, resulted in an increase of $3084.43 in the principal balance after four TPP payments.

28.     A "Summary" of the modified mortgage attached to the Agreement guarantees under the heading of "BORROWER INCENTIVES" that:

> "As long as your mortgage does not become 90 days delinquent, we will apply your monthly accrued benefit to your mortgage loan and reduce your principal balance after the first through the fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current."

The amount of the monthly or annual HAMP accrued benefit was not specified in the Summary. Plaintiff and GMACM signed the Agreement to become effective on July 1, 2010, with the written-

in stipulation that the Agreement is subject to the HAMP guidelines and applicable law. (*Exhibit 1: HAMP Modification Agreement*).

29.     On February 1, 2013, GMACM sold the right to service Plaintiff's modified mortgage loan to Green Tree Servicing, LLC (Green Treen), which later merged with Ditech Mortgage Corporation, f/k/a Ally Financial f/k/a GMACM, to form Ditech Financial Services, LLC (Ditech), effective August 31, 2015.

## GENERAL ALLEGATIONS

30.     On April 8, 2016, Ditech sent Plaintiff the 2015 year-end history of his HAMP-modified mortgage showing an unpaid principal balance of $169,188.28, greater than the unpaid principal balance of $168,421.47 in the April 2016 mortgage statement issued on March 11, 2016 by the year-to-date three principal payments of $766.71 (*Exhibit 2: 2015 Year-End History of Modified Loan and April 2016 Mortgage Statement*), but not providing any information on HAMP incentives applied to the loan principal. Consequently, Plaintiff requested Ditech for information regarding the HAMP pay-for-performance incentives applied to reduce the principal balance of his modified loan, since the modified loan was never delinquent after the HAMP modification. (*Exhibit 3: Ditech's Acknowledgment of Receipt of HAMP Incentives Inquiry*).

31.     Ditech responded to Plaintiff's inquiry with a letter dated June 9, 2016, (*Exhibit 4: Ditech's June 9, 2016 Response to HAMP Incentives Inquiry*), stating that a review of the modified loan account indicated that HAMP benefits were credited to the account in the amount of $916.67 on the 1st and 4th anniversaries of the TPP execution date and in the amount of $1,000 on the 2nd, 3rd and 5th TPP anniversaries. Ditech also stated that the record indicates that notification of the 6th year incentive was sent on June 16 and July 11, 2015 to inform Plaintiff that in order to receive the 6th year incentive, he was required to complete and return a Dodd Frank Certification (DFC)

8

form enclosed with the notification, but that the DFC form was never received and the incentive was not credited to Plaintiff's account.

32.     Plaintiff protested to Ditech customer service office that he had never received communications from his loan servicers regarding the HAMP incentives and that the only condition required in his loan Modification Agreement for eligibility to receive the HAMP incentives is that the modified loan must not become 90 days delinquent. Plaintiff demanded that Ditech honor the terms of his loan Modification Agreement and the HAMP guidelines governing the HAMP incentives.

33.     On May 15, 2019 Ditech notified Plaintiff that the servicing of his HAMP-modified loan was being transferred to LoanCare, LLC, effective June 1, 2019, and that any questions about the account should be directed to LoanCare in Virginia Beach, VA. (*Exhibit 5: May 15, 2019 Notice of Servicing Transfer to LoanCare, LLC*).

34.     On June 28, 2019, soon after the notice of servicing transfer to LoanCare, LLC. New Rez, LLC a/k/a NewRez sent Plaintiff a "Welcome to NewRez" letter (*Exhibit 6: NewRez' June 28, 2019 "Welcome to NewRez" Letter*) that identified NewRez as the lending affiliate of New Residential Mortgage, LLC, the company that owns the right to service Plaintiff's mortgage loan, previously identified by Ditech as LoanCare, LLC. Thus, New Rez, LLC confirmed in its June 28, 2019 letter to Plaintiff that LoanCare, LLC is a/k/a New Residential Mortgage, LLC, a division of New Rez, LLC for purposes of servicing Plaintiff's HAMP-modified mortgage loan.

35.     In December 2020, Plaintiff sought to refinance his HAMP-modified loan at the prevailing historically low mortgage rates to reduce the interest cost of the loan. Accordingly, Plaintiff secured offers for a refinance rate of 2.5% / 2.875% from mortgage lenders (*Exhibit 7: Dec. 2020 to Aug. 2021 Refinance Rate Quotes from Lenders*), which would reduce the interest cost

of his loan at the HAMP-fixed rate of 4.75%  by at least $142,300 at maturity on June 1, 2050.

36.     Consequently, on December 17, 2020, Plaintiff sent an urgent request by email to NewRez / LoanCare for a determination of the correct principal balance of his mortgage loan needed to refinance the mortgage. NewRez/LoanCare acknowledged receipt of the email and stated that it had forwarded the request to its specialists experienced in resolving Plaintiff's issue. On March 3, 2021, when no further response was received from NewRez/LoanCare, Plaintiff sent a second urgent request by email to NewRez/LoanCare to demand a determination of the correct principal balance of his HAMP-modified loan. (*Exhibit 8*: *Dec. 2020 and Mar, 2021 Requests to NewRez / LoanCare to Correct Errors in Loan Principal Balance*).

37.     Early on March 5, 2021, Plaintiff received a letter dated January 15, 2021 from Elton Spruill of LoanCare's Office of the Customer asserting that Ditech's letter of June 9, 2016 to Plaintiff indicated that previous incentives were applied to Plaintiff's account and that notices of the 6th year incentive were sent to Plaintiff in June and July 2015 with an enclosed DFC form to fill out and return, but that the completed DFC form was not returned. (*Exhibit 9. Jan. 15, 2021 LoanCare's Response to NOE*)

38.     The assertion in Elton Spruill's letter that submission of a completed DFC form is a condition for eligibility to receive the 6th year HAMP incentive prompted Plaintiff to research MHA guidelines on HAMP loan modifications. The research revealed that MHA Directive 09-01 guaranteed HAMP borrowers a specified annual HAMP incentive of $1,000 from the first through the fifth anniversary of the TPP execution date if the modified loan did not become 90 days delinquent, and that MHA Directive 14-05 increased the incentive to $5,000 for the sixth year, as long as the modified loan remained current throughout the year. (*Exhibit 10: Excerpts of MHA Directive 09-01 and MHA Directive 14-05*).

39.     Additionally. Plaintiff discovered in his research of the MHA guidelines that MHA Directive 10-11 issued on September 21, 2010 implemented a DFC requirement as a condition for new HAMP borrowers to receive financial assistance from the MHA programs, but exempted HAMP modifications in existence prior to the implementation of the DFC requirement from the impact of the requirement. (*Exhibit 11: MHA Directive 10-11*).

40.     Consequently, on March 5, 2021, Plaintiff responded to Elton Spruill's letter dated January 15, 2021 to notify LoanCare that according to MHA Supplemental Directive 10-11 HAMP loan modifications existing prior to the implementation of the DFC requirement on September 21, 2010 are not subject to the DFC requirement and that Plaintiff's Modification Agreement became effective as of July 1, 2010 before the implementation of the DFC requirement and is as such not subject to the DFC requirement.

41.     On May 27, 2021, Denise Hoggard of LoanCare's Office of the Customer responded to Plaintiff and repeated Elton Spruill's assertion that the predecessor servicer (Ditech) indicated in its letter of June 9, 2016 that earlier incentives were applied to Plaintiff's loan account and that "in order to receive the 6th year incentive, Plaintiff was required to submit a DFC . . . "; and that "due to not receiving the required DFC, the 6th year HAMP incentive was not credited toward Plaintiff's principal balance". *Exhibit 12: May 27, 2021 LoanCare's Response to Second NOE*).

42.     Shortly thereafter, Plaintiff received notice from J.P. Morgan Mortgage Acquisition Corp (J.P. Morgan) that Plaintiff's mortgage loan has been sold to J.P. Morgan effective June 17, 2021, but that Plaintiff should continue to send the mortgage payments to the current servicer, LoanCare. (*Exhibit 13: July 6, 2021 Notice of Sale of Ownership to JP Morgan*).

43.     About a month later, LoanCare sent Plaintiff notice dated July 15, 2021 stating that the servicing of Plaintiff's HAMP-modified mortgage loan was being transferred to Rushmore Loan

Management Services, LLC (Rushmore) effective August 2, 2021. (*Exhibit 14: July 15, 2021 Notice of Servicing Transfer to Rushmore*.

44.     On July 25, 2021, Plaintiff sent notice by certified mail to Rushmore in advance of the proposed transfer of servicing to warn Rushmore that there was an outstanding NOE served on LoanCare concerning errors in the principal balance of Plaintiff's HAMP-modified loan and that Rushmore should discuss the NOE with LoanCare and obtain copies of correspondences exchanged between Plaintiff and LoanCare regarding the NOE.

45.     On August 5, 2021 Rushmore sent Plaintiff a "Welcome" letter to confirm the transfer of the servicing of Plaintiff's mortgage loan to Rushmore effective August 2, 2021 and another letter to acknowledge the receipt of Plaintiff's letter of July 25, 2021 regarding the outstanding NOE served on LoanCare that promised a response to the NOE within 30 days. Rushmore also identified J.P. Morgan as the current owner of Plaintiff's loan. (*Exhibit 15: Aug. 5, 2021 Rushmore's "Welcome" and Confirmation of NOE Letters*).

46.     On September 30, 2021, Rushmore responded to the NOE served on LoanCare on July 25, 2021 and acknowledged that Plaintiff's "loan was approved for the HAMP" and that "the conditions within the modification advised that as long as the modified loan does not become 90 days delinquent, accrued monthly benefits would be applied to reduce the principal balance after each of the first through fifth anniversaries of the month in which the TPP agreement was executed". Rushmore indicated that additional information was needed to complete investigation of Plaintiff's concerns and that they had reached out to the prior servicer to escalate the matter for further review. (*Exhibit 16: Sept. 30, 2021 Rushmore's Response to July 25, 2021 NOE*).

47.     After not hearing further from Rushmore since September 30, 2021, Plaintiff sent a renewed NOE to Rushmore on February 21, 2022 to request an investigation and correction of the

errors in the principal balance of his mortgage loan due to the failure to credit all of the accrued HAMP incentives to Plaintiff's loan principal balance and to determine the amount of interest overpayments due to the failure to apply the HAMP incentives to reduce the loan principal balance. Plaintiff informed Rushmore in the letter that MHA Directive 10-11 that implemented the DFC requirement for MHA programs on September 21, 2010 exempted from the DFC requirement HAMP mortgage loan modifications in existence prior to the implementation date and that Plaintiff's loan modification was already in existence before September 21, 2010.

48.     On April 11, 2022, Rushmore responded to Plaintiff's  NOE of February 21, 2022 and stated that their record shows that a predecessor servicer, Ditech, had addressed Plaintiff's concerns with their response of June 9, 2016 that indicated that HAMP incentives were received and applied towards the principal balance according to the HAMP Agreement, and additionally that a DFC required  from Plaintiff was not received by Ditech and, therefore,  the sixth year HAMP incentive was not applied to Plaintiff's modified loan Principal balance. (*Exhibit 17: April 11, 2022 Rushmore's Response to Feb. 21, 2022 NOE*).

49.     On April 18, 2022, Plaintiff responded to Rushmore's April 11, 2022 letter and disputed Rushmore's explanation of why the 6th year HAMP incentive was not credited to Plaintiff's loan account. Plaintiff insisted that according to MHA Directive 10-11 the DFC requirement does not apply to Plaintiff's HAMP modification.

50.      On April 28, 2022 Rushmore acknowledged receipt of Plaintiff's April 18, 2022 letter disputing Rushmore's April 11,  2022 response to Plaintiff. Rushmore  indicated that Plaintiff's inquiry was under further review.  (*Ex. 18: Rushmore's Resp. to April 18, 2022 NOE*).

51.     On May 10, 2022, Rushmore replied further to Plaintiff's April 18, 2022 letter and stated that Plaintiff's letter was duplicative of his NOE of April 11, 2022 and that Rushmore had

13

fully complied with their obligation to respond to Plaintiff's NOE on April 11, 2022 and that Plaintiff should contact his attorney for assistance on filing a lawsuit related to the HAMP modification issues as Rushmore is unable to assist him regarding the matter. (*Exhibit 19: May 10, 2022 Rushmore's 2nd Response to April 18, 2022 NOE*).

52.     On October 12, 2022, Rushmore notified Plaintiff that the servicing of his mortgage loan was being transferred to Shellpoint Mortgage Servicing (Shellpoint), with its business headquarters in Greenville, SC, effective October 25, 2022. (*Exhibit 20: Oct. 4, 2022 Rushmore's Notice of Transfer of Servicing to Shellpoint*).

53.     On October 22, 2022, the Plaintiff sent notice to Shellpoint in advance of the transfer of the servicing of his HAMP-modified mortgage loan to it, to inform it of an outstanding NOE concerning the principal balance of the mortgage loan about to be transferred to Shellpoint from Rushmore and suggested that Shellpoint should ask Rushmore for all the correspondence exchanged with Plaintiff regarding the NOE.

54.     On October 31, 2022, Shellpoint, identifying itself as a division of NewRez, sent Plaintiff a letter from a Dallas, TX office confirming that the owner of Plaintiff's mortgage loan has entrusted Shellpoint to service the loan and that the transfer to Shellpoint from Rushmore Loan Management Services became effective October 25, 2022. (*Exhibit 21: October 31, 2022 Shellpoint's "Welcome to Shellpoint" Letter*).

55.     On November 21, 2022, Plaintiff sent Shellpoint a detailed NOE/QWR pursuant to RESPA, 12 U.S.C. 2605(e), regarding errors in Plaintiff's loan principal balance due  to accrued HAMP principal-balance-reduction incentives not credited to Plaintiff's loan account. and demanded an investigation to determine the correct principal balance of the loan account and the amount of excess interest collected on the loan due to the accrued HAMP incentives not credited to

14

the principal balance, as well as the correct monthly mortgage statement and the correct pay off balance of the loan. Plaintiff also asked for the identity of the current and previous holders of the loan, and the date each holder obtained their ownership of the loan.

56.     On November 22, 2022 Shellpoint's office in Greenville, SC responded to Plaintiff's letter of October 22, 2022 regarding the outstanding NOE/QWR served on the prior servicer and claimed that a review of the correspondence with the prior servicer indicated that the issue had been addressed, and that in order to complete additional research, it would require new information or supporting documentation in dispute of the prior servicer's response. Regarding the 6th year HAMP incentive of $5,000, Shellpoint stated that it received documentation that a prior servicer attempted to reach Plaintiff regarding a DFC form required by HAMP. Shellpoint said it could not guarantee that HAMP will still accept the DFC form and issue the incentive. Shellpoint asked Plaintiff to complete and return a DFC form enclosed in the letter to initiate a request for the incentive on Plaintiff's behalf.  (*Exhibit 22: Nov. 22, 2022 Shellpoint's Response to Oct. 22, 2022 Letter*).

57.     On December 8, 2022 Plaintiff replied to Shellpoint's letter of November 22, 2022 with copies of correspondences exchanged with prior servicers of his loan, including Ditech, NewRez/LoanCare, and Rushmore, regarding the HAMP incentives not credited to Plaintiff's mortgage loan.  Plaintiff informed Shellpoint that the DFC requirement does not apply to Plaintiff's HAMP modification according to  MHA Directive 10-11 which implemented the DFC requirement and exempted HAMP modifications in existence prior to the implementation from its requirement, and that Plaintiff's loan modification was effected on July 1, 2010 prior to the implementation of the DFC requirement on September 21, 2010 and accordingly not subject to the DFC requirement.

58.     On December 14 and 16, 2022, Shellpoint's Livonia, Michigan office sent letters to Plaintiff acknowledging receipt of Plaintiff's unidentified "recent inquiry". The letters identified

BINOM Securitization Trust 2022 RPL1 as the current holder of Plaintiff's mortgage loan and indicated they were working to gather the rest of the information requested in Plaintiff's inquiry and would forward the information to as soon as possible. (*Exhibit 23: Dec. 14 & 16, 2022 Shellpoint's Responses to Dec. 8, 2022 NOE*).

59.      On December 21, 2022, Shellpoint's Livonia, Michigan office sent another letter to Plaintiff that was addressed to "Dear Executor" and expressed "deepest sympathies for your recent loss", and demanded that in order to process the request on the account serviced by Shellpoint the death certificate should be forwarded to Shellpoint. (*Exhibit 24: Dec. 21, 2022 Letter from Shellpoint's Office in Livonia, MI*).

60.      On December 27, 2022, Shellpoint's Livonia, MI office sent Plaintiff another letter, said to be in response to unidentified "recent inquiry' regarding the account serviced by Shellpoint on behalf of BINOM, and indicated that Shellpoint is "working to gather the requested information and will forward it as soon as possible".   (*Exhibit 25: Dec. 27, 2022 Letter from Shellpoint's Office in Livonia, MI*).

61.      On January 3, 2023, Shellpoint's Greenville, SC office sent Plaintiff a letter acknowledging receipt of Plaintiff's correspondences dated November 21 2022 and December 8, 2022. The letter stated that Shellpoint had reviewed documentation indicating that a prior servicer attempted to reach Plaintiff regarding a DFC form required by HAMP. The letter stated that Shellpoint cannot guarantee that HAMP will still accept and issue the 6th year HAMP incentive but that Shellpoint will submit a request on behalf of Plaintiff. Shellpoint asked Plaintiff to complete and return the DFC form. (*Exhibit 26: Shellpoint's Response to Nov. 21 & Dec. 8, 2022 NOE*).

62.      On January 11, 2023, Plaintiff responded to the January 3, 2023 letter of Shellpoint from the Greenville, SC office with a renewed NOE/QWR concerning errors in the principal

balance of his HAMP-modified mortgage loan. Plaintiff enclosed a copy of Ditech's June 9, 2016 letter showing that some HAMP incentives due on Plaintiff's modified loan were not credited in to Plaintiff's loan principal balance on the first, fourth and sixth anniversaries of the TPP execution date and resulted in errors in the loan principal balance. Plaintiff attached a copy of MHA Directive 10-11 which exempts HAMP loan modifications in existence prior to the implementation of the DFC requirement from the requirement. Plaintiff pointed out to Shellpoint that Plaintiff's HAMP modification took effect on July 1, 2010 prior to the implementation of the DFC on September 21, 2010 and is therefore not subject to the DFC requirement. Plaintiff requested Shellpoint to take immediate action to correct the errors in Plaintiff's loan principal balance and to reimburse the interest overpayments due to the failure to fully credit the earned HAMP incentives to the principal balance. (*Exhibit 27: Jan. 11, 2023 Reply to Shellpoint with Renewed NOE/QWR*).

63.     Shellpoint willfully failed to correct the errors in Plaintiff's mortgage loan and instead began on January 17, 2023 to send Plaintiff frivolous demands for "a death certificate in order to  process the request" to correct the errors in Plaintiff's loan balance (*Exhibit 28: Shellpoint's Demands for Death Certificate in Response to NOE*), and in the meantime Shellpoint willfully and knowingly continues to send to Plaintiff' through the mail inaccurate monthly mortgage statements and to collect through the mail higher monthly payments on the HAMP-modified loan from Plaintiff than it should.

64.     MHA Directive 09-01 requires that each servicer (and any sub-servicer it uses) must be aware of, and in full compliance with, all federal, state, and local laws including, but not limited to, the RESPA and the FDCPA that apply to any of its practices related to the HAMP. See *Exhibit 10. Pg. 12*.

65.     MHA Directive 09-01 provides that when a transfer of servicing includes mortgages modified under the HAMP, the transferor servicer must advise the transferee servicer that loans modified under the HAMP are part of the portfolio being transferred and must confirm that the transferee servicer is aware of the special requirements for these loans, and agrees to assume the additional responsibilities associated with servicing them. See *Exhibit 10, pg. 21*.

66.     Plaintiff tried numerous times unsuccessfully to resolve the errors in the accounting of the principal balance of his HAMP-modified loan in good faith reliance on Defendants' professional expertise, contractual obligations under the loan Modification Agreement and statutorily imposed duties under the MHA HAMP guidelines.

67.     Defendants as successor owners and/or servicers of Plaintiff's HAMP-modified mortgage willfully and knowingly failed to honor their contractual obligations under the Modification Agreement, and their statutory duties under the HAMP incorporated into the Modification Agreement by stipulation of the parties to the agreement, by not applying all the earned HAMP incentives to the principal balance of Plaintiff's loan and by misrepresenting the condition for his eligibility to receive the 6th year HAMP incentive.

68.     As a result of Defendants' willful and knowing failure to make appropriate corrections of errors in Plaintiff's loan account despite Plaintiff's NOEs/QWRs clearly describing the errors in the loan principal balance, Plaintiff suffered and continues to suffer economic and emotional harm which entitles him to seek damages against Defendants, jointly and severally.

69.     Plaintiff's effort to bring action against Defendants was continuously thwarted and frustrated by Defendants' frequent transfers of the servicing of his loan that compelled Plaintiff to keep repeating NOE/QWR requests with successor servicers. Accordingly, Defendants are estopped from asserting the statute of limitations as defense to any cause of action in this Complaint.

## COUNT I
## Breach of Contract and the Covenant of Good Faith and Fair Dealing

(Claim jointly and severally against Shellpoint Mortgage Servicing; U.S. Bank Trust National Association; Rushmore Loan Management Services; J.P. Morgan Mortgage Acquisition Corp; LoanCare; New Rez; and New Residential Investment Corp a/k/a Rithm Capital Corp.)

70.     Plaintiff herein incorporates by refence the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

71.     At all times pertinent to this litigation, Defendants, as successors in interest in the HAMP Modification Agreement   (HMA) and/or successor-servicers of the HAMP-modified mortgage loan, were in a contractual relationship with Plaintiff and owed him a duty of good faith and fair dealing with regard to the servicing of his HAMP-modified loan.

72.     As set out in ¶ 28 the HMA guaranteed to Plaintiff HAMP benefits specified in the MHA Directives (¶ 38) consisting of a fixed annual incentive of $1,000 on the first five anniversaries of the TPP execution date and an additional $5,000 incentive on the 6th anniversary of the TPP, as long as the modified loan does not become 90 days delinquent.

73.     As set out in ¶¶ 64-65, MHA Directive 09-01, incorporated into the HMA by stipulation, requires each servicer and its sub-servicer to be aware of and in full compliance with all the laws that apply to its practices related to the HAMP and to advise a transferee servicer that HAMP-modified loans  are part of the portfolio being transferred and to confirm that the transferee servicer is aware of the special requirements for these loans, and agrees to assume the additional responsibilities associated with servicing them.

74.     As disclosed in Ditech's June 9, 2016 letter described in ¶ 31 above, only $916.67 of the $1,000 annual HAMP incentives specified in MHA Directive 09-01was credited to the principal balance of Plaintiff's modified loan by the first and the fourth anniversaries of the TPP on March 28, 2011 and February 28, 2014, and the 6th year HAMP incentive of $5,000 granted to

HAMP borrowers by MHA Directive 14-05 was not credited to the loan by March 31, 2016.

75.     Defendants and/or their predecessors breached on a continuing basis their contractual obligations to Plaintiff and the covenant of good faith and fair dealing with him by failing to apply all of the accrued HAMP incentives guaranteed to Plaintiff in the HMA to reduce the principal balance of his HAMP-modified loan.

76.     As a proximate result of the breach of the HMA, by Defendants and their predecessors in interest, Plaintiff sustained significant financial losses consisting of $5,166.66 in HAMP incentives never applied to reduce the principal balance of the loan, the continuing interest assessed on the incentives never applied to reduce the principal balance, thus far totaling over $2,100.00 as of the date of filing this Complaint (exact amount to be determined at trial) and prevented reduction in interest cost of the loan due to the failure of Defendants to provide an accurate principal balance needed to refinance the loan in January 2021 at a fixed rate of 2.5%, compared to the HAMP-fixed rate of 4.75%, totaling $142,309.00 by June 1, 2050 (exact amount to be determined at trial).

77.     Michigan law, MCL 600.5807(5), provides a period  of limitations of 10 years for action to recover damages founded on a covenant in a deed or mortgage of real estate. Accordingly, Plaintiff can maintain his action against Defendants as successors to the Agreement for the continuing breach of contract and the covenant of good faith and fair dealing since March 19, 2014.

78.     Accordingly, Defendants are jointly and severally liable to Plaintiff in compensatory damages of not less than $149,500.00 (exact amount to be determined at trial) for breach of contract and the covenant of good faith and fair dealing, and in exemplary damages of not less than $149,500.00 for disregarding the provisions of MHA guidelines in servicing Plaintiff's HAMP-modified mortgage loan,  plus the costs for bringing this action.

**COUNT II**
**Violation of RESPA 12 U.S.C. § 2605 et seq. and**
**Implementing Regulations X, 12 C.F.R. 1024.35(a)**

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; Rushmore Loan Management Services; LoanCare, LLC and New Rez, LLC dba Shellpoint Mortgage Servicing)

79.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

80.    RESPA, 12 U.S.C.§2605(e)(2),  requires that no later than 30 days after the receipt from any borrower of any qualified written request (QWR) that includes a statement of the reasons for the belief of the borrower that the account of the borrower is in error, the mortgage loan servicer shall: (A) make appropriate corrections in the account of the borrower and transmit to the borrower a written notification of such correction, which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower; or (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) a statement of the reasons why the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an employee or  office or department of the servicer who can provide assistance to the borrower.

81.    RESPA implementing regulation, Regulation X (Reg. X), 12 C.F.R. §1024.35(a), provides in pertinent part that a qualified written request (QWR) that asserts an error relating to the servicing of a mortgage loan is a notice of error (NOE) and a servicer must comply with requirements applicable to a notice of error with respect to such QWR. Reg. X defines error to include the failure to provide an accurate payoff balance amount upon a borrower's request, §1024.35(b)(6); the failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer, §1024.35(b)(8); and any other error

21

relating to the servicing of a borrower's mortgage loan, §1024.35(b)(11).

82.    Reg. X, 12 C.F.R. §1024.35(e)(1), requires that a servicer must respond to a borrower's NOE by either: (A) correcting the error(s) identified by the borrower and providing the borrower with a written notification of the correction, or (B) conducting a reasonable investigation and providing the borrower with a written notification that includes the statement that no error has occurred, a statement of the reason(s) for this determination, §1024.35(e)(1)(i),

83.    Reg. X,  12 C.F.R. §1024.35(e)(3)(i)(C), requires that a servicer must comply with the requirements of §1024.35(e)(1) no later than 30 days, excluding legal public holidays, Saturdays and Sundays, after the servicer receives the NOE.

84.    As set out in ¶¶ 36, 47, 55, 57 and 62 in this Complaint, Plaintiff sent Defendants detailed QWR/NOE regarding errors in the principal balance of his HAMP-modified loan and excess interest assessed on the principal balance due to Defendants' failure to apply accrued HAMP incentives totaling $5,166.66 to reduce the principal balance of the modified loan, as confirmed by Ditech's letter described in  ¶ 31 of this Complaint.

85.    Defendants violated RESPA, 12 U.S.C.§2605(e)(2)(A), and Reg. X,  12 C.F.R. §1024.35(e)(3)(i)(C), by failing to make appropriate correction of the errors in Plaintiff's modified loan account clearly identified in his NOE/QWR and by failing to provide the correct principal balance of the modified loan upon request and make necessary adjustments in the account to ensure that Plaintiff will not continue to pay excess interest on his loan.

86.    Defendants violated RESPA, 12 U.S.C.§2605(e)(2)(B), and Reg. X,  12 C.F.R. §1024.35(e)(3)(i)(C), by failing to provide Plaintiff after receiving the NOE/QWR with any explanation of the reason(s) to believe Plaintiff's loan account is correct as stated by Defendants.

87.    Section 2605(f) of RESPA provides that whoever fails to comply with any provision

of the section shall be liable to the borrower for each such failure in the following amounts: (1)  In the case of any action by an individual, in an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section in an amount not to exceed $2,000; plus, in the case of a successful action under the section, the costs of the action.

88.     As a result of Defendants' violations of RESPA, 12 U.S.C.§2605(e) and Reg. X, Plaintiff sustained substantial financial damages, including the loss of accrued HAMP incentives in the amount of $5166.66, excess interest payment assessed on the incentives not applied to reduce the principal balance totaling not less than $2,100.00 from March 31, 2011 up till the date of filing of this Complaint (exact amount to be determined at trial) and prevented reduction in interest cost of the loan totaling not less than $142,300.00 at the loan maturity date on June 1, 2050 (exact amount to be determined at trial) as a result of Defendants' failure to provide accurate principal balance needed to refinance the loan in January 2021 at a fixed rate of 2.5%, compared to the HAMP-fixed rate of 4.75%.

89.     Defendants' failures to correct the errors in the principal balance of Plaintiff's HAMP-modified mortgage loan after being served with his NOE/QWR clearly describing the errors demonstrate a pattern and practice of conduct of non-compliance with the servicer provisions of RESPA and Reg. X in willful disregard for Plaintiff's rights under RESPA, thus entitling Plaintiff to recovery of a statutory penalty of $2,000 pursuant to 12 U.S.C. 2605(f)(1)(B).

90.     RESPA provides in 12 U.S.C. 2614 that an action pursuant to 12 U.S.C.§2605 may be brought within 3 years from the date of the occurrence of the violation. In addition, Michigan law, MCL 600.5807(5),  provides a period of limitations of 10 years for any action to recover

damages founded on a covenant in a deed or mortgage of real estate. Furthermore, the statute of limitations for an action under RESPA has been held to be subject to equitable tolling. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). Equitable tolling applies to a statute of limitations period when inequitable circumstances prevent a plaintiff from suing before the statutory period runs.  Defendants' practice of frequent transfers from one servicer to another of the servicing of Plaintiff's modified mortgage loan frustrated and thwarted Plaintiff's efforts to bring action sooner against Defendants, thus entitling Plaintiff to equitable tolling of the statute of limitations for this RESPA action against all Defendants.

91.     Accordingly, Plaintiff brings this action against Defendants, jointly and severally, pursuant to 12 U.S. C. § 2605(f) for violations of RESPA, 12 U.S.C.§2605(e)(2), and 12 C.F.R. § 1024.35 to recover (1) compensatory damages against Defendants, jointly and severally, of at least $149,500.00 (exact amount to be determined at trial) sustained as a result of the violations of RESPA; (2) statutory penalty of $2,000 against Defendants, jointly and severally, for a pattern and practice of willful noncompliance with the servicer provisions of RESPA in response to Plaintiff's NOEs/QWRs; and (3) the costs incurred in bringing this action.

**<u>COUNT III</u>**
**Violation of the Fair Debt Collection Practices Act (FDCPA),**
**15 U.S.C. §§ 1692-1692P, and Michigan Collection Practices Act**
**(MCPA), MCL 445.251 *et seq*.**

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing;, New Rez LLC dba Shellpoint Mortgage Servicing  and Rithm Capital Corp. a/k/a New Residential Investment Corp as Alter Ego of New Rez LLC dba Shellpoint Mortgage Servicing .)

92.     Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

93.     The FDCPA, 15 U.S.C. § 1692d(2) provides that a debt collector may not engage in

any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; and  §1692e(2) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.". Specifically, §1692e(2)(A) provides that a debt collector may not falsely represent the character, amount, or legal status of the debt.

94.     The Michigan Collections Practices Act (MCPA), MCL 445.252(e)  prohibits a debt collector from making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt.

95.     The MCPA, MCL 445.252(f)(ii) prohibits a debt collector from misrepresenting in a communication with a debtor the legal rights of the debtor.

96.      Since resuming the servicing of Plaintiff's HAMP-modified mortgage loan on October 25, 2022, Defendants have continuously violated the FDCPA, 15 U.S.C. 1692e(2)(A), and the MCPA, MCL 445.252(e), by willfully and knowingly continuing to send Plaintiff through the mail inaccurate monthly mortgage statements stating inaccurate principal and interest payments in excess of amounts properly and correctly due on the accurate loan account, and collecting from Plaintiff through the mail inaccurate monthly principal and interest payments in excess of the amounts properly and correctly due from him.

97.     Since resuming the servicing of Plaintiff's HAMP-modified mortgage loan on October 25, 2022, Defendants violated the FDCPA, 15 U.S.C. 1692e(2)(A), and the MCPA, MCL 445.252(f)(ii) by willfully and knowingly using harassing, oppressive and annoying communications and making misleading representations in written monthly responses to Plaintiff's NOE/QWR, from January 17, 2023 to April 17, 2023  (see ¶ 63) that Plaintiff has to forward to Defendants the death certificate of alleged deceased customer in order to process his NOE/QWR

regarding the HAMP  incentives not credited to his HAMP modified mortgage account.

98.     As a result of Defendants' willful and knowing violations of the FDCPA and the MCPA, Plaintiff suffered financial losses of not less than $149,500.00 (exact amount to be determined at trial),  consisting of (i) HAMP incentives in the amount of $5,166.66 not credited to reduce the principal balance of Plaintiff's modified loan and the excess interest assessed on the HAMP incentives not credited to reduce the principal balance of the loan, from October 25, 2022 till the time of filing this Complaint, exact amount to be determined at trial.

99.     FDCPA § 1692k provides that a debt collector who fails to comply with any provision of the FDCPA  with respect to any person is liable to such person in an amount equal to the sum of: (i) any actual damages sustained by such person as a result of such failure, (ii) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000, and (iii)  in the case of any successful action to enforce the foregoing liability, the costs of the action.

100.     Michigan Collection Practices Act (MCPA), MCL §445.257, provides that: (1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of the act may bring action for damages or other equitable relief; (2) In an action brought pursuant to subsection (1), if the court finds for the petitioner, recovery shall be in the amount of the actual damages or $50.00, whichever is greater. If the courts finds that the method, act, or practice was a willful violation, the court may assess a civil fine of not less than 3 times the actual damages or $150.00, whichever is greater, and shall award court costs incurred in connection with the action.

101.     The FDCPA, 15 U.S.C. §1692n, provides that the act does not annul, alter, or affect or exempt any person subject to the act from complying with state laws with respect to debt

collection practices, except to the extent that those laws are inconsistent with any provision of the act and then only to the extent of the inconsistency. For purposes of this section, a state law is not inconsistent with the act if the State law affords the consumer greater protection than the FDCPA.

102.    Accordingly, Plaintiff brings this action pursuant to the FDCPA, 15 U.S.C. §1692n, and MCPA, MCL §445.257(2), for: (1) a judgment against Defendants, jointly and severally, for willful and knowing violations of the FDCPA and the MCPA alleged in this Complaint; (2) a permanent injunction against future violations of the FDCPA and the MCPA by Defendants; (3) statutory fines pursuant to MCPA. MCL §445.257(2) against Defendants of not less than three times the actual damages sustained by Plaintiff, exact amount to be determined at trial, for willful violations of MCL 445.252(e) and (f)(ii); and recovery of the costs of bringing this action.

**COUNT IV**
**Violation of the Michigan Mortgage Brokers, Lenders and**
**Servicers Licensing Act (MBLSLA), MCL 445.1672(b)**

(Claim against Defendants Shellpoint Mortgage Servicing; Rushmore Loan Management Services; LoanCare, LLC; New Rez, LLC and New Residential Investment Corp. a/k/a Rithm Capital Corp as Alter Ego of NewRez.)

103.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

104.    The MBLSLA, MCL 445.1672(b) prohibits fraud, deceit, or material misrepresentation in connection with any transaction governed by the act.

105.    Since Defendant NewRez/LoanCare a/k/a New Residential Mortgage, LLC acquired the assets of Ditech, including Plaintiff's HAMP-modified mortgage, on June 1, 2019, (see ¶19, ¶33 & ¶34), Defendants, as successor-servicers of the HAMP-modified mortgage loan,  on several occasions in written communications of January 15, 2021 (¶ 37), May 27, 2021 (¶ 41), April 11, 2022 (¶ 48),  November 22, 2022 (¶ 56), and January 3, 2023 (¶ 61)  willfully and knowingly made

false and misleading representations to Plaintiff that all the accrued HAMP incentives in the first five years of his mortgage loan modification were applied to Plaintiff's principal balance and that Plaintiff's eligibility to receive the 6th year HAMP incentive amount of $5,000 depends on his submission of a DFC required by the HAMP, contrary to MHA Directive 10-11 that implemented the DFC requirement on September 21, 2010 and exempted HAMP loan modifications existing before the implementation, such as Plaintiff's loan modification, from the DFC requirement. Defendant's communications were false and misleading and constitute material misrepresentations in the servicing of Plaintiff's mortgage loan in violation of the MBLSLA, MCL 445.1672(b).

106.    Defendants willfully and knowingly communicated to and collected from Plaintiff inaccurate  monthly mortgage payments based on inaccurate mortgage principal balance, despite having been given notice by Plaintiff of errors in the principal balance due to accrued HAMP incentives not credited to the principal balance, which constitutes material misrepresentation in the servicing of Plaintiff's mortgage loan in violation of the MBLSLA, MCL 445.1672(b)

107.    As a result of Defendants' violations of the MBLSLA, MCL 445.1672(b), Plaintiff suffered financial damages of not less than $149,500.00 (exact amount to be determined at trial), consisting of the loss of $5166.66 in accrued HAMP incentives not credited to the loan principal balance and interest paid on the HAMP incentives not credited to the principal balance, resulting in interest overpayments of $2,100.00 (exact amount to be determined at trial) from March 31, 201 until the time of the filing of this Complaint, plus prevented reduction in interest cost of the loan of not less than $142,300.00 at the maturity of the loan on June 1, 2050 (exact amount to be determined at trial), due to lost opportunity to refinance the modified loan in January 1, 2021 at a fixed rate of 2.5%, compared to the HAMP fixed rate of 4.75%, as a result of Defendants' failure to provide an accurate estimate of the loan principal balance needed to refinance the loan.

108.    The MBLSLA, MCL 445.1681(1), provides that any person may bring an action to

obtain (a) a declaratory judgment that a method, an act or practice is a violation of this act; (b) an

injunction against a person who is engaging in or is about to engage in a method, act or practice in

violation of the act; and (c) recover actual damages or $250, whichever is greater, together with the

costs of bringing the action. MCL 445.1681(1)(c).

109.    Michigan law, MCL 600.5813, provides a 6-year statute of limitations for fraud.

Accordingly, Plaintiff brings this action against Defendants, jointly and severally, pursuant to the

MBLSLA, MCL 445.1681(1), for (a) a declaratory judgment that Defendants' actions described

above are in violation of the MBLSLA, MCL 445.1672(b); (b) an order enjoining Defendants from

continuing the actions described above in  violation of the MBLSLA; and (c) recovery of actual

damages of not less than $149,500.00 (exact amount to be determined at trial) sustained by Plaintiff

as a result of Defendants' violations of  MCL 445.1672(b), plus (c) the costs incurred in bringing

this action.

### COUNT V
**Fraudulent Misrepresentation and Concealment**

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; Rushmore Loan
Management Services; LoanCare,  New Rez, LLC dba Shellpoint Mortgage Servicing and New
Residential Investment Corp. a/k/a Rithm Capital Corp as Alter Ego of NewRez.).

110.    Plaintiff incorporates herein by reference the allegations contained in the preceding

paragraphs as if set forth herein and further alleges as follows:

111.    At all times relevant in this litigation, Defendants owed Plaintiff a duty as servicers

of his HAMP-modified mortgage loan to not conceal or fraudulently misrepresent material facts in

communications to him about the mortgage loan.

112.    Defendants breached that duty on more than one occasion as described in ¶ 105

above in responding to Plaintiff's QWR/NOE regarding the HAMP incentives not credited to his

29

modified loan account, by willfully and intentionally not acknowledging that the accrued HAMP incentives applied to Plaintiff's loan on the first and fourth anniversaries of the TPP were less than the guaranteed amount and that Plaintiff's loan modification is exempt from the DFC requirement tin order to receive the HAMP incentives, which constitutes willful concealment and fraudulent misrepresentation of material facts about the incentives guaranteed by the HMA.

113.   Defendants knew by virtue of Ditech's letter of June 9, 2016 (¶ 31) that their representations to Plaintiff about the HAMP incentives were false when they made them, or made them recklessly without any knowledge of their truth, as positive assertions, and intended Plaintiff to rely on their representations in response to his NOE/QWR to believe there was no error in his loan account to forestall legal action against Defendants.

114.   Defendants concealed and misrepresented material facts about the HAMP incentives with the intention that Plaintiff would rely on their misrepresentations in response to his NOE/QWR to believe that there is no error in his loan account and the monthly mortgage statements to forestall adverse action by Plaintiff against Defendants   and Plaintiff relied upon Defendants' misrepresentations and continued to make higher interest and principal payments on his mortgage than he should have and did not consider legal action until he could find no authority in support of Defendants' representation that the DFC extinguished  his HAMP incentives.

115.   As a result of Defendants' concealment and fraudulent misrepresentations of facts about the  HAMP incentives, Plaintiff incurred financial losses to Defendants' benefit  of not less than $149,500.00 (exact amount to be determined at trial), consisting of $5,166.66 in HAMP incentives not credited to the principal balance and not less than $2.100.00 in interest on the incentives from March 31, 2011 to the date of filing this Complaint, and prevented reduction in the interest cost of the modified loan of $142,300.00 (exact amount to be determined at trial) at maturity

on June 1, 2050, due to Defendants' failure to provide an accurate estimate of the principal balance

to refinance in January 2021 at the rate of 2.5%, compared to the HAMP-fixed rate of 4.75%.

116.    Michigan statue, MCL 600.5813, provides a period of limitations of six years for a

fraud claim, which relates back to claims accruing since 2018. However, where fraudulent

concealment by a defendant is involved, as in the present case, the statute of limitations is subject

to equitable tolling. See *Mills v. Equicredit Corp.*, 294 F.Supp.2d 903, 908

(E.D.Mich.2003); *Borg v. Chase Manhattan Bank*, 247 Fed.Appx. 627, 635 (6th Cir. 2007). In

addition, Defendants' frequent transfers of the servicing of the Plaintiff's mortgage, without

correcting the errors in the mortgage account, compelled Plaintiff to keep sending  QWR/NOE to

each successor servicer and thus frustrated and forestalled Plaintiff's effort to bring action against

Defendants sooner. Therefore, the limitations period for Plaintiff's claim for concealment and

fraudulent misrepresentation is subject to equitable tolling.

117.    Accordingly, Plaintiff brings this action against Defendants, jointly and severally,

for recovery of (1) compensatory damages for fraudulent misrepresentation and concealment of

material facts resulting in financial damages to Plaintiff of not less than $149,500.00 (exact amount

to be determined at trial), and (2) exemplary damages of not less than the compensatory damages,

to compensate Plaintiff for emotional distress and anxiety caused by Defendants' willful, knowing

and deceitful actions in violation of the MHA guidelines in servicing Plaintiff's modified loan.

## COUNT VI
## Statutory Conversion, MCL § 600.2919a

(Claim jointly and severally against Defendants Shellpoint Mortgage Servicing; U.S. Bank Trust
National Association as Trustee of BINOM; Rushmore Loan Management Services; J.P. Morgan
Mortgage Acquisition Corp; LoanCare, LLC; New Rez, LLC dba Shellpoint Mortgage Servicing;
and New Residential Investment Corp. a/k/a Rithm Capital Corp. as Alter Ego of NewRez).

118.    Plaintiff herein incorporates by reference the allegations contained in the preceding

paragraphs as if set forth herein and further alleges as follows:

119.    At all times relevant to this litigation, Defendants owed Plaintiff a duty under Michigan law, MCL 600.2919a, to not convert Plaintiff's property to their own use and benefit.

120.    Defendants breached this duty on more than one occasion by failing to correct the errors in Plaintiff's HAMP-modified mortgage loan account due to their failure to credit all of the earned HAMP incentives to the loan account to promptly and appropriately reduce the principal balance of the loan despite repeated demands in writing by Plaintiff as set out in ¶ 105 above, and by preventing a reduction in the interest cost of the loan due to Defendants' failure to provide the accurate principal balance of the loan needed to refinance the loan at a fixed rate of 2.5%, compared to the HAMP-fixed rate of 4.75%, as alleged in ¶¶ 35-37 above.

121.    Defendants' failure to correct the errors in Plaintiff's HAMP-modified loan, resulting in a higher principal balance and higher interest cost for the use and benefit of Defendants at the expense of Plaintiff, constitutes an unlawful conversion of Plaintiff's property to Defendants' own use and benefit.

122.    Michigan law, MCL 600.2919a(1)(a), provides in pertinent part that a person damaged as a result of another person's converting property to the other person's own use may recover three times the actual damages sustained,  plus costs.

123.    MCL 600.2919a(2) provides that the remedy by this section is in addition to any other right or remedy the person may have at law or otherwise.

124.    Accordingly, pursuant to MCL 600.2919a(1)(a), Plaintiff brings this action for statutory conversion of Plaintiff's property against Defendants, jointly and severally, to recover statutory damages against Defendants in an amount not less than three times the sum of (i) the amount of the uncredited HAMP incentives of $5,166.66, (ii) the interest on the uncredited

incentives of $2,100.00 (exact amount to be determined at trial) from March 31, 2011 up to the time of the filing of this complaint, and prevented reduction in interest cost of the mortgage in the amount of $142,100.00  from January 1, 2021 till the maturity date of the modified loan on June 1, 2050 (exact amount to be determined at trial), or  a total of not less than $448,500.00 (exact amount to be determined) in statutory damages; plus the cost incurred in bringing this action.

## COUNT VII
### Unjust Enrichment

(Claim jointly and severally against Defendants Shellpoint; U.S. Bank Trust National Association as Trustee of BINOM; Rushmore; J.P. Morgan Mortgage Acquisition Corp; LoanCare, LLC; New Rez, LLC dba Shellpoint Mortgage Servicing; and New Residential Investment Corp. a/k/a Rithm Capital Corp. LLC)

125.    Plaintiff herein incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein and further alleges as follows:

126.    At all times pertinent in this action, Defendants as successor in interest in the HMA and/or servicers of Plaintiff's modified mortgage loan owed a legal duty to Plaintiff of good faith and fair dealing to not act unduly to take advantage of him or commit wrongful acts  with respect to the servicing of his mortgage loan in order to unjustly enrich themselves at the expense of Plaintiff's financial interest.

127.    According to MHA Directive 09-01 and the HAMP guidelines incorporated into the HMA by stipulation of the parties, Plaintiff was entitled to $10,000 in HAMP pay-for-performance principal-balance-reduction incentives to be applied to reduce the principal balance of his modified mortgage loan by virtue of the loan remaining current through the sixth anniversary of the TPP execution month of March  2016.

128.    As disclosed in Ditech's letter of June 9, 2016, more than half of the accrued HAMP

incentives totaling 5,166.66 due on Plaintiff's modified loan account was not applied to reduce the principal balance of the loan resulting in higher interest payments and enriching Defendants at Plaintiff's expense.

129.    In December 2020 Plaintiff demanded that Defendants correct the errors identified in his mortgage loan account to provide the correct principal balance needed to refinance the modified mortgage loan (see ¶ 36).

130.    Defendants failed to correct the errors in Plaintiff's loan account and prevented Plaintiff from refinancing his modified mortgage loan at a fixed rate of 2.5% in January 2021 to reduce the interest cost of the loan, compared to the HAMP fixed rate of 4.75%.

131.    As a result of Defendants' failure to correct the error in the principal balance of Plaintiff's mortgage loan which continues to date, Defendants unjustly enriched themselves at the expense of Plaintiff by the sum of (i) $5,166.66 in accrued HAMP incentives not applied to reduce the principal balance of the modified loan, (ii) the interest on the HAMP incentives not applied to reduce the principal balance amounting to not less than $2,100.00 to date (exact amount to be determined at trial), and (iii) prevented reduction in the interest cost of the modified loan amounting to $142,100.00 at maturity of the loan on June 1, 2050 (exact amount to be determined at trial), as a result of Defendants' failure to provide an accurate estimate of the payoff balance needed to refinance the loan in January 2021 at 2.5%, compared to the HAMP-fixed rate of 4.75%.

132.    Under Michigan doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Krammer Asphalt Paving Co., Inc. v. East China Twp. Sch*., 443 Mich. 176, 185; 504 N.W.2d 635 (1993).

133.    Michigan law, MCL 600.5807(5), provides a period of limitations of 10 years for an

action to recover damages founded on a covenant in a deed or mortgage of real estate, as in the present case. Accordingly, Plaintiff can bring this action for recovery of compensatory damages against Defendants for their unjust enrichment at Plaintiff's expense in the servicing of Plaintiff's HAMP-modified mortgage loan since March 31, 2016.

134.    Accordingly, Plaintiff brings this action for unjust enrichment against Defendants, jointly and severally, for recovery of compensatory damages in an amount not less than $149,500.00 (exact amount to be determined at trial); and the cost incurred in bringing this action.

## PRAYER FOR F RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court for the following relief:

1)    Grant judgment in favor of Plaintiff and against Defendants, jointly and severally, on Counts I-VII of the Complaint.

2)    Enjoin Defendants from continuing to act in further violation of RESPA, the FDCPA,  the MBLSLA,  and Plaintiff's rights and interests in his HAMP-modified mortgage loan.

3)    Award statutory penalty in favor of Plaintiff against Defendants, jointly and severally, in the amount of $2,000 pursuant to RESPA,12 U.S.C. §2605(f)(1)(B) for willful disregard for Plaintiff's rights under RESPA in Count II of the Complaint

4)    Award compensatory damages in Counts I-II, IV-V and VII of the Complaint in favor of Plaintiff against Defendants, jointly and severally, of not less than $149,500.00 (in accordance with proof) for Plaintiff's losses sustained due to Defendants' actions.

5)    Award exemplary damages in Counts I and V against Defendants, jointly and severally, of not less than $149,500.00 (in accordance with proof) to compensate Plaintiff for emotional distress and anxiety caused by Defendants' willful, knowing and deceitful actions in disregard of provisions of the MHA guidelines in servicing Plaintiff's HAMP-modified mortgage loan.

6)    Award statutory damages in in Counts III and VI in favor of Plaintiff against Defendants, jointly and severally, of not less than $448,500.00 (in accordance with proof) pursuant to FDCPA, 15 U.S.C. §1692n and MCPA. MCL §445.257(2), for willful violations of MCPA. MCL 445.252(e) and (f)(ii) and pursuant to MCL 600.2919a for statutory conversion of Plaintiff's property.

7)    Award in favor of Plaintiff against Defendants, jointly and severally, the cost for bringing this action to be determined at trial, plus any other relief the court deems appropriate and just under the circumstances

Respectfully submitted:

s/ Joseph T. Ozormoor (P42462)
Plaintiff Pro Per
469 LaBelle Road
Grosse Pointe Farms, MI 48236
(313) 924-5319 / (313) 949-2656 (mobile)
jtozormoor@comcast.net

Dated August 1, 2024